Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone: 503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Northwest Success, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST SUCCESS, INC., an Oregon domestic nonprofit corporation, | Case No. 3:25-cv-970 |
| Plaintiff, | COMPLAINT |
| vs. | (1) Declaratory judgment |
| CITY OF PORTLAND, a municipal corporation, | (2) 42 U.S.C. § 1983 |
| | (3) Promissory Estoppel |
| Defendant. | (4) Implied Duty of Good Faith and Fair Dealing |

In March 2020, the City of Portland passed a resolution requiring only those City contractors performing janitorial, unarmed security, and industrial laundry services to obtain a "labor peace agreement" from a union representing those categories of employees in Oregon or Washington. As far as we know, only one such union represents all three: SEIU Local 49. City records indicate that the resolution was created to regulate labor relations and to give SEIU, or other qualified unions that might later exist, "in roads" (the City's words) into non-unionized contractors. Neither the United States Constitution nor state law tolerates this local labor regulation.

## PARTIES

1. Plaintiff Northwest Success, Inc. ("Plaintiff") is an Oregon nonprofit corporation headquartered in Northeast Portland, Oregon. Plaintiff is an Oregon Forward contractor. The Oregon Forward Program creates a continuous market of goods made, and services performed, by persons experiencing disabilities. The Oregon Department of Administrative Services has exclusive authority to set prices of all services offered by Oregon Forward contractors such as Plaintiff. Public entities such as the City who wish to procure certain goods or services must attempt to do so, in the first instance, from Oregon Forward Contractors. Plaintiff provides janitorial services to the City.[1]

2. Defendant City of Portland is a municipal corporation.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the United States Constitution and the laws of the United States, including the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and 42 U.S.C. § 1983.

4. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1337(a), which provides, among other things, "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." *Capital Serv. Inc. v. NLRB*, 347 U.S. 501, 504 (1954). Pursuant to that statute, federal courts have jurisdiction over claims asserting that local enactments interfere with employee activity that Congress assigned the National Labor Relations Board to regulate. *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 140-41 (1971).

5. The Court has supplemental jurisdiction over related state law counts pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction as all parties are in Multnomah County, Oregon.

---

[1] *See* https://ofp.dasapp.oregon.gov/Search.

Page 2 – COMPLAINT

7. Venue and divisional venue lie in this Court as all parties are located in Multnomah County and the relevant acts or omissions at issue occurred there.

## FACTUAL BACKGROUND

**A.     The City's Labor Peace Requirement.**

8. The City has a Sustainable Procurement Policy,[2] which first was enacted in 2003. It is a "Binding City Policy." City Code 1.07.020 defines that term as "statements of the Council, expressed in a resolution or ordinance, that are directed to future decision-making or procedure and have binding effect or serve as mandatory approval criteria." The Sustainable Procurement Policy is known as ADM-1.09.

9. On March 25, 2020, the Portland City Council adopted Resolution 37483. Among other things, that resolution amended ADM 1.09 to include a "Labor Peace" requirement for all janitorial, security, and industrial laundry service contracts (the "Labor Peace Requirement").

10. The Labor Peace Requirement resulted from several meetings between the City and SEIU Local 49. Indeed, SEIU Local 49 was the only stakeholder involved in creating the Labor Peace Requirement.

11. Public records reveal that the City intended the Labor Peace Requirement to provide "in roads" to unions representing janitorial, unarmed security, and laundry workers, which includes non-party SEIU Local 49. Here is how Derek Bradley, then-Commissioner Hardesty's Policy Director and architect of the Labor Peace Requirement, described the policy (while also indicating that its true purpose should not be disclosed):

> **Here are the notes from Derek's debrief**
>
> Makes it so that when the city contracts out janitorial, laundry, or security , the company must meet 1 of 2 factors
> 1. Workforce must be unionized
> 2. Workforce must sign a labor peace agreement with their employer that working conditions and business practices are fair, safe, non-exploitive, fair work week, etc.
>
> Employer and city agrees they will not strike during duration of contract unless working conditions significantly change. Allows unions to build in roads into non-unionized shops with an assurance that employers won't stand in the way of unionization efforts (Don't include in public message). Unions are neutral arbitrator to help non-organized workforce create agreements with their employer. Our office has been deeply engaged in getting this passed. Message from the city is to focus on promoting this as helpful to maintaining critical services.

---

[2] *Available at* https://www.portlandoregon.gov/citycode/article/24473.

Page 3 – COMPLAINT

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Exhibit 1.[3]

12.  In 2022, the City adopted a resolution that added exceptions to the Labor Peace Requirement. Those exceptions include a contractor's good faith effort to obtain a labor peace agreement even if ultimately unsuccessful (the "Good Faith Exception"). A copy of the Labor Peace Requirement is attached as Exhibit 2 and incorporated herein by this reference.

13.  The Labor Peace Requirement vests in the Mayor's Office sole authority to decide whether a contractor meets an exception.

**B.     The City determined that Plaintiff met the Good Faith Exception and entered into the Contract.**

14.  In 2023, in pursuit of its present contract with the City, Plaintiff engaged in negotiations for a labor peace agreement with SEIU Local 49 (the "Union"). When those negotiations were unsuccessful, Plaintiff offered to mediate pursuant to the Labor Peace Requirement. The Union's position was that mediation was "premature."

15.  Plaintiff informed the City of its efforts to obtain a labor peace agreement, and provided to the City a written plan for continuation of services in the event of economic interference by a labor organization.

16.  On September 26, 2023, the City determined that Plaintiff met the Good Faith Exception and waived the Labor Peace Requirement.

17.  On October 1, 2023, Plaintiff and the City entered into contract no. 30008600 for parks comprehensive custodial services (the "Contract"), which is attached hereto (without the exhibits to the Contract, for the sake of brevity) as Exhibit 3 and incorporated by reference.

18.  The Contract was originally set to expire on June 30, 2024. In April 2024, the parties agreed to amend the Contract to extend the term to June 30, 2025. On June 5, 2025, the City approached Plaintiff about their desire to extend the Contract through August 31, 2025. Plaintiff intends to agree to that extension.

/ / /

---

[3] Although someone else drafted these notes, Mr. Bradley ratified their contents by responding to the email, "Looks good to me!" Ex. 1 at 1.

**C.    The City refused to determine whether Plaintiff met the Good Faith Exception and the Contract will now expire.**

19.    On October 4, 2024, the City communicated to Plaintiff and the Union that it "expect[ed]" the parties to comply with the Good Faith Exception by going to mediation within the next 90 days and, if mediation fails, arbitration within 90 days after that. <u>Exhibit 4</u>.

20.    Plaintiff acted in compliance with the Good Faith Exception and kept the City apprised each step of the way.

21.    Plaintiff went to mediation with the Union and, when that was unsuccessful, Plaintiff offered, on December 23, 2024, to submit the matter to arbitration pursuant to the Good Faith Exception.

22.    On February 3, 2025, the Union requested that the parties return to mediation rather than proceed to arbitration.

23.    On April 21, 2025, Plaintiff offered binding interest arbitration (again) before Eric Lindauer and proposed dates for the same.

24.    The Union, however, remained unwilling to submit to binding interest arbitration, stating that it believed arbitration was "premature."

25.    Nonetheless, the City gave Plaintiff a week-and-a-half to set an arbitration date, otherwise Plaintiff's janitorial services contract would expire.

26.    Plaintiff selected an arbitrator and offered to unilaterally set an arbitration date – which the arbitrator found highly irregular, given that arbitration is a process that requires two willing participants.

27.    On May 1, 2025, the City informed Plaintiff that, because the parties had not provided a date for an arbitration and assurances that the parties will, in fact, go through arbitration, Plaintiff's contract will expire on June 30, and the City will immediately move forward with an emergency procurement.

28.    In doing so, the City acted unfairly. By definition, an arbitration includes at least two parties. Requiring Plaintiff's "participation in" arbitration makes no sense where Plaintiff

offered to submit to arbitration but the other necessary party (the Union) would not agree to participate. The City allowed the Union's intransigence to dictate application of the Good Faith Exception to Plaintiff.

29. In any event, that same day, Plaintiff informed the City that it could have an arbitration date in place by the next day and requested until then to do so.

30. The City declined Plaintiff's one-day extension request.

31. Plaintiff asked the Mayor's office to determine that it met the Good Faith Exception, as explained in the letter attached as <u>Exhibit 5</u> and incorporated here by reference. The Mayor's office declined to respond to that letter.

32. As a result, Plaintiff's contract will expire, and the City deemed Plaintiff ineligible for the next contract for these services, to be awarded under an emergency procurement. The City has already awarded that contract to a different contractor.

33. The foregoing demonstrates that the City intends to enforce the Labor Peace Requirement against Plaintiff.

## **FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment per 28 U.S.C. § 2201)**

**(Count 1 – NLRA preemption)**

34. Plaintiff incorporates and realleges the foregoing paragraphs as though set forth here in full.

35. The Supremacy Clause of the Federal Constitution authorizes Congress to enact legislation preempting state and local laws. The NLRA is one such law. In passing the NLRA, Congress has struck a delicate balance between the rights of private employers, employees, and unions involved in organizational efforts. Congress also established a comprehensive regulatory scheme to ensure that this balance is maintained and enforced under the exclusive jurisdiction of an expert agency: the National Labor Relations Board.

36. A live controversy exists that is ripe for determination and that would be redressable through equitable relief. Through its actions and statements, the City has made clear

that it intends to enforce the Labor Peace Requirement against Plaintiff and other contractors that would provide janitorial, unarmed security, and industrial laundry services to the City.

37. The Labor Peace Requirement conflicts with, regulates, and readjusts the delicate balance of rights Congress struck in the NLRA. It strips employers, employees, and unions of rights they have under the NLRA, and deprives the NLRB of its exclusive jurisdiction to determine whether, when, and how union organizing will take place, and purports to vest in the Mayor the exclusive ability to determine whether an employer meets an exception to the Labor Peace Requirement.

38. The City has taken the position that its Labor Peace Requirement is exempt from NLRA preemption because the requirement is in the "market participant" space. Not so. Among other things, the Labor Peace Requirement broadly regulates three entire industries and, indeed, was enacted to provide "in roads" to unions in those industries. The City's spending power in government contracting may not be used as a pretext for regulating labor relations.

39. The NLRA therefore preempts the Labor Peace Requirement by virtue of the Supremacy Clause of the United States Constitution. Plaintiff seeks a declaration from this Court that the NLRA preempts the Labor Peace Requirement, and that the Labor Peace Requirement therefore is invalid.

40. Plaintiff also seeks temporary, preliminary or permanent injunctive relief enjoining Defendant from enforcing the Labor Peace Requirement or any other policy that requires a "labor peace" agreement.

**(Count 2 – Impermissible condition on Oregon Forward Contractors)**

41. Plaintiff incorporates and realleges all foregoing paragraphs as though set forth here in full.

42. ORS 279.835 to 279.855, and OAR 125-055-0005 to 125-455-0045, which codify the Oregon Forward Program, embody the State's general policy to "encourage and assist individuals with disabilities to achieve maximum personal independence." ORS 279.840 (so stating).

43.    ORS 279.845(2) requires the Oregon Department of Administrative Services ("DAS") to maintain a list of approved Oregon Forward contractors and the products and services they provide in each county.

44.    ORS 279.850(1)(a) mandates: "a public agency that intends to procure a product or service on the procurement list that the Oregon Department of Administrative Services established under ORS 279.845 shall, in accordance with the department's rules, procure the product or service at the price the department establishes from a qualified nonprofit agency for individuals with disabilities, provided that the product or service is of the appropriate specifications and is available within the period the public agency requires."

45.    ORS 279.850(1)(b) provides two exceptions to the mandate of ORS 279.850:

   A. All of the qualified nonprofit agencies for individuals with disabilities on the procurement list that applies to the public agency have a record in the previous three years of repeatedly violating, or are not now in compliance with, applicable local ordinances or resolutions that govern labor standards; and

   B. The person, for a period of 90 days after the person enters into an agreement with the public agency, offers to employ the employees of a qualified nonprofit agency for individuals with disabilities from which the public agency would have procured the product or service but for the failure of the qualified nonprofit agency for individuals with disabilities to comply with an applicable local ordinance or resolution that governs labor standards.

46.    ORS 279.850(2)(a) provides that a public agency "may require in any agreement with [an Oregon Forward contractor] . . . that the [contractor] comply with applicable local ordinances or resolutions that govern labor standards."

47.    ORS 279.850(2)(b) permits a public agency to disqualify an Oregon Forward contractor for three years if the public agency:

   A. Determines that the qualified nonprofit agency for individuals with disabilities

repeatedly violated local ordinances or resolutions that govern labor standards during the term of an agreement with the public agency under ORS 279.835 to 279.855; or

B. Finds that the qualified nonprofit agency for individuals with disabilities has a record in the previous three years of repeatedly violating applicable local ordinances or resolutions that govern labor standards.

48. The City has previously taken the position that it may enforce the Labor Peace Requirement against Oregon Forward contractors because, in the City's view, that requirement is a "local ordinance[] or resolution[] that govern[s] labor standards" under ORS 279.850(2)(a).

49. Plaintiff argues that the text, context, and legislative history of ORS 279.835 to 279.855 demonstrates that the Labor Peace Requirement is not a local ordinance or resolution that governs labor standards because the requirement is not a "labor standard" itself, nor does it "govern" "labor standards." DAS' definition of that statutory phrase, in OAR 125-055-0040(8), is not to the contrary.

50. Plaintiff faces nonrenewal of its contract with the City and the prospect of being disqualified from contracting with the City for three years based on what Plaintiff views as an invalid contracting requirement.

51. Plaintiff respectfully requests a declaratory judgment that the Labor Peace Requirement is not a "local ordinance or resolution that governs labor standards" as that phrase is used in ORS 279.850.

52. Plaintiff also seeks temporary, preliminary and permanent injunctive relief enjoining the City from enforcing the Labor Peace Requirement against Plaintiff.

**(Count 3 – Oregon Constitution Art. 1, Section 20)**

53. Plaintiff incorporates and realleges all prior paragraphs as though set forth here in full.

54. Article 1, section 20 of the Oregon Constitution requires that privileges and immunities be available on an equal basis: "No law shall be passed granting to any citizen or

class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

55. The City enacted the Labor Peace Requirement to provide unions "in roads" to non-unionized contractors. The City lacks legitimate justification for privileging unions over Plaintiff.

56. In previous litigation with DePaul Industries, Inc. (3:21-cv-01792-HL) (the "DePaul Litigation"), the City took the position that it rationally could have decided to benefit unions at the expense of contractors because labor disputes are more likely to disrupt the performance of City contracts than disputes with other private organizations.

57. The City's avoiding-work-stoppage rationale is pretextual. In the DePaul Litigation, the City admitted at that time (2022) that it is not aware of any labor-management conflicts interfering with the provision of services to the City by one of its contractors during the last ten years.

58. As <u>Exhibit 1</u> demonstrates, the purpose and effect of the Labor Peace Requirement is to privilege labor unions over other private organizations by giving them "in roads," and by allowing them to effectively determine who may contract with the City.

59. The Labor Peace Requirement also grants a privilege or immunity to contractors in industries other than the three industries covered by the requirement. That is, those contractors need not obtain a labor peace agreement in order to contract with the City. There is no reasonable ground to impose the Labor Peace Requirement on contractors providing the three covered services but not on contractors providing other services.

60. The Labor Peace Requirement's relationship to its asserted goal (guarantee no work stoppages) is so attenuated that it is arbitrary or irrational, and is further evidence of pretext. The only entity identified in the Labor Peace Requirement as a threat to labor peace is the union itself. Rather than addressing that threat directly, the City's Labor Peace Requirement rewards the union's potential threat of harmful conduct by forcing ***the employer*** to make concessions and surrender its constitutional rights. Moreover, as a condition of contracting with

Case 3:25-cv-00970-AR    Document 1    Filed 06/05/25    Page 11 of 18

the City, the Labor Peace Requirement only requires a prospective contractor to enter into a labor peace agreement with *a single union*. That does not prevent *other unions* from swooping in and disrupting work as they fight for control, especially since the contractor must notify *any and all unions* that represent employees providing similar services in the states of Oregon or Washington to qualify for an exception to the Labor Peace Requirement. The Labor Peace Requirement also does not—because it cannot, consistent with federal law—prevent the contractor's employees from forming their own union and engaging in picketing and other work stoppages.

61. Further, requiring contractors to contact every applicable union *increases* the chance of labor disruption by essentially inviting unions to intervene.

62. Plaintiff respectfully requests a declaratory judgment that the Labor Peace Requirement violates Article 1, section 20 of the Oregon Constitution on one or more of the grounds discussed in this Count 3 and therefore is void.

63. Plaintiff also seeks temporary, preliminary, and permanent injunctive relief enjoining the City from enforcing the Labor Peace Requirement.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**(Count 1 – Violation of the First Amendment to the United States Constitution)**

64. Plaintiff incorporates and realleges all prior paragraphs as though set forth here in full.

65. An employer has a First Amendment right to communicate its views about unionization and about any particular union. An employer may "express opinions or predictions, reasonably based in fact, about the possible effects of unionization on its company." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., (UAW) v. N.L.R.B.*, 834 F.2d 816, 820 (9th Cir. 1987).

66. The requirement to negotiate labor peace agreements with unions and avoid "economic interference" chills expressive activity.

Page 11 – COMPLAINT

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

67. The Labor Peace Requirement mandates that Plaintiff remain neutral regarding unionization, as neutrality is an essential component of a labor peace agreement. It does so as a condition of receiving public funds.

68. An employer cannot remain neutral with respect to unionization while still being free to express its opinions about unionization. Accordingly, the Labor Peace Requirement violates Plaintiff's First Amendment right to free expression.

69. The City has damaged Plaintiff in an amount according to proof but not less than nominal damages.

70. Plaintiff respectfully requests a declaration that the Labor Peace Requirement violates the First Amendment to the federal constitution.

71. Plaintiff also seeks temporary, preliminary and permanent injunctive relief enjoining the City from enforcing the Labor Peace Requirement.

**(Count 2 – Violation of Due Process Clause of the Fourteenth Amendment to the United States Constitution)**

72. Plaintiff incorporates and realleges all prior paragraphs as though set forth here in full.

73. The Labor Peace Requirement violates the due process clause of the Fourteenth Amendment to the Federal Constitution in that it is unconstitutionally vague. Three aspects of the Labor Peace Requirement each individually, and collectively, render it void for vagueness.

74. First, the Labor Peace Requirement is subject to broad and unreasonable interpretation and could include anything demanded by a union. The Labor Peace Requirement allows unions to determine who may contract with the City. There is no way for prospective contractors to know ahead of time what will satisfy the Labor Peace Requirement, including the Good Faith Exception, because the City effectively delegated that authority to the union.

75. Second, the Good Faith Exception lacks the precision and guidance necessary to

ensure that those enforcing the requirement do not act in an arbitrary or discriminatory manner.[4] For example, the Labor Peace Requirement's exceptions do not provide what terms of a labor peace agreement would be considered standard or acceptable in the event dispute resolution failed between Plaintiff and a union. By requiring binding interest arbitration, no one determines, from a legal perspective, whether a contractor has complied with the Labor Peace Requirement.

76. "Good faith" is not objectively defined. There is no guidance on what suffices other than attempting and participating in mediation and arbitration – both of which Plaintiff offered to the Union here (the parties did mediate), and yet the City declined to determine whether Plaintiff met the Good Faith Exception.

77. Sole authority to determine whether a contractor meets an exception is vested in the Mayor's Office. There is no written standard for how this decision must be made, which invites discretionary or discriminatory application. Indeed, by its terms, the Labor Peace Requirement provides exclusive, standardless, and uninhibited discretion to the Mayor's Office. Contractors cannot know in advance whether their conduct will satisfy the City's expectations.

78. Third, the liquidated damages penalty has no clear standards, leaving a contractor without the ability to know in advance what triggers that penalty or how to prevent it. Indeed, much of a union's conduct is out of a contractor's control. Moreover, the term "economic interference," as used therein, is vague and overbroad, which risks discretionary or discriminatory application.

79. The City has damaged Plaintiff in an amount according to proof but not less than nominal damages.

80. Plaintiff respectfully requests a declaration that the Labor Peace Requirement violates the Due Process Clause of the Fourteenth Amendment to the federal constitution in that it is unconstitutionally vague.

81. Plaintiff also seeks temporary, preliminary and permanent injunctive relief

---

[4] Plaintiff understands that the City intends to amend the Good Faith Exception. If and when it is ultimately amended, Northwest Success will reevaluate its allegations and amend them accordingly.

enjoining the City from enforcing the Labor Peace Requirement.

### THIRD CLAIM FOR RELIEF

#### Promissory Estoppel

82. Plaintiff incorporates and realleges all prior paragraphs as though set forth here in full.

83. Prior to expiration of the Contract, the City's communications to Plaintiff expressly or impliedly promised that Plaintiff would receive a waiver under the Good Faith Exception, for purposes of renewal or extension of the Contract, if Plaintiff acted in accordance with the exception. That promise is one the City could lawfully make and perform pursuant to the terms of the Labor Peace Requirement and discretion under the Good Faith Exception. Specifically, the City communicated that it "expect[ed]" Plaintiff (and the Union) to comply with the Good Faith Exception and, to that end, the City "expect[ed]" Plaintiff to engage in mediation within 90 days and, if that failed, arbitration 90 days after that. Exhibit 4.

84. Subsequent City requests for status updates about the Good Faith Exception process reinforced that promise. On May 1, 2025, for example, the City communicated to Plaintiff (and the Union) by email that "the City is at crunch time to either receive assurances of [Plaintiff] completing the final steps needed for the exception (offering and participating in binding interest arbitration) before their contract expires, or to engage in an emergency procurement to ensure continuity of our Parks janitorial services."

85. It is reasonably foreseeable that a government entity's communications about expectations for its contractor would induce the contractor to act in accordance with those expectations. That is especially true here, since the City originally entered into the Contract because the City determined that Plaintiff satisfied the Good Faith Exception.

86. Plaintiff reasonably relied on communications from the City through the City Attorney's Office. The City clothed the City Attorney's office with apparent authority; that office handled all Good Faith Exception discussions related to renewal or extension of the Contract. At the very least, for the same reasons, Plaintiff had no reason to know of the want of

Page 14 – COMPLAINT

actual authority.

87. Plaintiff relied on the City's communications and actions to its detriment. Plaintiff substantially changed its position by spending many thousands of dollars on attorney fees, and time away from its nonprofit mission, to negotiate, mediate, and attempt to arbitrate with the Union in accordance with the City's expectations. In other words, Plaintiff satisfied the Good Faith Exception unilaterally to the best of its ability.

88. But when Plaintiff asked the City to determine that it met the Good Faith Exception, the City declined to even determine *whether* Plaintiff satisfied the Good Faith Exception. This resulted in the expiration of Plaintiff's Contract and the prospect of being ineligible to contract with the City going forward.

89. Plaintiff respectfully requests entry of (1) an award of reliance damages, in the form of attorney fees and expenses related to fulfilling what the City said were its "expectations" for satisfying the Good Faith Exception in an amount according to proof at trial but not less than $25,000; and (2) a judgment that the City is estopped from imposing the Labor Peace Requirement on Plaintiff as a condition of extension or renewal of the Contract.

**FOURTH CLAIM FOR RELIEF**

**Implied duty of good faith and fair dealing**

90. Plaintiff incorporates and realleges all prior paragraphs as though set forth here in full.

91. Every Oregon contract contains an implied duty of good faith and fair dealing.

92. On October 5, 2024, the City sent a letter to Plaintiff and the Union, explaining that it "expects the parties to engage in mediation within the next 90 days" and, if that fails, binding interest arbitration 90 days thereafter.

93. Throughout the Good Faith Exception process, the City inquired about the status and Plaintiff provided status updates to the City.

94. On December 17, 2024, Plaintiff and the Union participated in mediation. That mediation was unsuccessful.

95. As detailed above, Plaintiff offered binding arbitration to the Union, selected an arbitrator, and proposed dates for arbitration.

96. The Union refused to arbitrate within the timeframe provided by the City.

97. On May 1, 2025, the City informed Plaintiff that, because the parties had not provided a date for an arbitration and assurances that the parties will, in fact, go through arbitration, Plaintiff's contract will expire on June 30, and the City will immediately move forward with an emergency procurement.

98. That same day, Plaintiff informed the City that it could have an arbitration date in place by the next day and requested until then to do so.

99. The City declined Plaintiff's one-day extension request.

100. Given the Union's refusal to arbitrate, Plaintiff asked the Mayor's Office to determine that it met the Good Faith Exception, as explained in the letter attached as <u>Exhibit 5</u> and incorporated here by reference. The Mayor's office declined to respond to that letter.

101. The City violated the implied duty of good faith and fair dealing by informing Plaintiff that the City expected Plaintiff to participate in the Good Faith Exception process and, when Plaintiff satisfied the Good Faith Exception unilaterally to the best of its ability, the City declined to make that determination, resulting in the expiration of the Contract and the prospect of being ineligible to Contract with the City going forward.

102. As detailed in paragraph 28 above, the City applied a nonsensical definition of "arbitration," and it did so unfairly. Plaintiff expected that, if the Union did not comply with the Good Faith Exception procedures, Plaintiff would satisfy the exception.

103. The City's need to engage in an *emergency* procurement shows that all parties understood the City would renew the Contract if Plaintiff complied with the Good Faith Exception.

104. The City's conduct indicates that the Good Faith Exception is illusory and/or that the City's refusal to apply the Good Faith Exception is pretext in that the City intended to not renew the Contract all along.

105. Plaintiff reasonably relied on the Good Faith Exception, and the City's communications related thereto, to its detriment.

106. Plaintiff incurred many thousands of dollars in attorney fees and costs to comply with the Good Faith Exception. As a direct result of the City's actions, Plaintiff has been damaged in an amount according to proof at trial.

107. Plaintiff respectfully requests entry of judgment awarding damages in that amount, which is estimated to be not less than $25,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. With respect to Count 1 of the First Claim for Relief, a judgment declaring that the National Labor Relations Act preempts the Labor Peace Requirement, which therefore is invalid;

B. With respect to Count 2 of the First Claim for Relief, a judgment declaring that the Labor Peace Requirement is not a "local ordinance[] or resolution[] that govern[s] labor standards" within the meaning of ORS 279.835-.855;

C. With respect to Count 3 of the First Claim for Relief, a judgment declaring that the Labor Peace Requirement violates Article 1, section 20 of the Oregon Constitution and therefore is void;

D. With respect to Count 1 of the Second Claim for Relief, a judgment declaring that the Labor Peace Requirement violates the First Amendment to the Federal Constitution.

E. With respect to Count 2 of the Second Claim for Relief, a judgment declaring that the Labor Peace Requirement violates the Due Process Clause of the Fourteenth Amendment to the Federal Constitution in that it is unconstitutionally vague.

F. With respect to Counts 1 and 3 of the First Claim for Relief, and to the Second Claim for Relief, a temporary, preliminary, or permanent injunction restraining Defendant and its agents from enforcing the Labor Peace Requirement.

G. With respect to Count 2 of the First Claim for Relief, a temporary, preliminary or

permanent injunction restraining Defendants and their agents from enforcing the Labor Peace Requirement against Oregon Forward contractors such as Plaintiff;

H.   With respect to Count 2 of the First Claim for Relief, reasonable attorney fees based on the substantial benefit a ruling in Plaintiff's favor would confer on all Oregon Forward contractors;

I.   With respect to the Second Claim for Relief, actual damages, nominal damages, reasonable attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

J.   With respect to the Third Claim for Relief, (1) an award of reliance damages in an amount according to proof at trial but not less than $25,000; and (2) a judgment that the City is estopped from imposing the Labor Peace Requirement on Plaintiff as a condition of extension or renewal of the Contract;

K.   With respect to the Fourth Claim for Relief, actual damages in an amount to be proven at trial but not less than $25,000;

L.   An award of costs; and,

M.   Such further relief as the Court deems necessary or just.

DATED this 5th day of June, 2025.                SNELL & WILMER L.L.P.

 s/ Drew L. Eyman
Drew L. Eyman, OSB No. 163762
Jenna M. Teeny, OSB No. 244519
Attorneys for Plaintiff Northwest Success, Inc.

4915-3495-1492