**From:**          Bradley, Derek
**Subject:**       Re: Labor Peace Social Media Statement
**To:**            McNally, Matt
**Cc:**            Au, Lokyee; Morillo, Angelita; Edwards, Karly
**Sent:**          March 25, 2020 9:45 PM (UTC+00:00)

Looks good to me!

Sent from my iPhone

On Mar 25, 2020, at 2:38 PM, McNally, Matt <Matt.McNally@portlandoregon.gov> wrote:

Hey team,

Below is the language Lokyee wrote about the Labor Peace agreement, my notes from Derek's debrief, and my attempt at our social media statement. Please review and let me know ASAP if there should be any changes to the final section, which is the language we will post on social media.

Thanks!

**Here is the language Lokyee wrote from our February Newsletter**

"After months of collaboration, City Council is scheduled to vote on March 25th on a resolution that will require labor peace agreements for all city contracts for janitorial, security, and laundry services. Labor peace agreements are agreements made by the employers that they will not intervene or obstruct employees from unionizing or labor organizations from working with employees to unionize.

*Why labor peace?* Workers in these industries are historically more vulnerable to poverty wages, wage theft, sexual assault in the work place, increased risk of safety and health hazards, retaliation for asserting their rights on the job, and other work-related problems. These high-risk industry jobs deserve to be good jobs that offer living wages and benefits, and ensuring that workers are safe, well compensated, and have adequate benefits results in contracts executed more efficiently, sustainably, and ethically."

**Here are the notes from Derek's debrief**

Makes it so that when the city contracts out janitorial, laundry, or security , the company must meet 1 of 2 factors
1. Workforce must be unionized
2. Workforce must sign a labor peace agreement with their employer that working conditions and business practices are fair, safe, non-exploitive, fair work week, etc.

Exhibit 1
Page 1 of 3

Employer and city agrees they will not strike during duration of contract unless working conditions significantly change. Allows unions to build in roads into non-unionized shops with an assurance that employers won't stand in the way of unionization efforts (Don't include in public message). Unions are neutral arbitrator to help non-organized workforce create agreements with their employer. Our office has been deeply engaged in getting this passed. Message from the city is to focus on promoting this as helpful to maintaining critical services.

**Here is my attempt at a statement on social media statement. I'll also find a good picture to accompany it, like the Commissioner speaking at the labor day picnic.**

After deep engagement from our office and months of collaboration, we are pleased to announce that the Portland City Council has unanimously passed a requirement that there be a labor peace agreement for janitorial, security, and laundry services contracted out by the City of Portland. What this means is that when the city contracts out these services, they must either:

1. Be with a company that has a unionized work force.

   or

2. Be with a company that signs a labor peace agreement with their employees, guaranteeing a high standard of fair and safe working conditions.

This new Labor Peace agreement will ensure that we are taking care of our workers while ensuring vital services continue uninterrupted. Historically, workers in these industries are more vulnerable to poverty wages, wage theft, sexual assault in the work place, increased risk of safety and health hazards, retaliation for asserting their rights on the job, and other work-related problems. These high-risk industry jobs deserve to be good jobs that offer living wages and benefits, and ensuring that workers are safe, well compensated, and have adequate benefits results in contracts executed more efficiently, sustainably, and ethically."

**Matt McNally (He/Him/His) | Community Outreach Coordinator**
Commissioner Jo Ann Hardesty
C: (503) 823-8422
E: matt.mcnally@portlandoregon.gov

Follow us on social media!
Facebook.com/CommissionerHardesty
Twitter.com/JoAnnPDX
Instagram.com/CommissionerHardesty

**EQUAL ACCESS NOTICE:** The City of Portland operates without regard to race, color, national origin, religion, sex, sexual orientation, gender identity, marital status, age or disability according to all applicable non-discrimination laws, Title VI of the Civil Rights Act,

Exhibit 1
Page 2 of 3

and Title II of the ADA. To help ensure equal access to City services, the City will provide translation and interpretation and will reasonably modify policies or procedures and provide auxiliary aids or services to persons with disabilities. For such requests please click here or call (503) 823-4047, TTY 503-823-6868 or Oregon Relay Service: 711.

Exhibit 1
Page 3 of 3

**Attachment 4: Labor Peace**

The City has proprietary interests in avoiding picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational. Therefore, for janitorial, security, and industrial laundry service contracts, a contractor shall, as a condition of being awarded a contract, provide written documentation of "Labor Peace" with a labor organization that represents employees providing similar services in the states of Oregon or Washington and that represents or seeks to represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services to carry out a contract with the City.

"Labor Peace" shall be defined as a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services. The Labor Peace provision must be signed or certified by an authorized representative of the labor organization not more than one year prior to the contractor providing such documentation and must be effective for the duration of the service contract. This Labor Peace requirement expires at the termination of the contract between the City and the contractor.  This Labor Peace requirement applies only to the performance of services to carry out the contract with the City.

Nothing in this section requires a contractor or subcontractor to recognize a particular labor organization or to enter into a collective bargaining agreement establishing the substantive terms and conditions of employment. Nor is this section intended to enact or express any generally applicable policy regarding labor/management relations, or to regulate those relations in any way, or to provide a preference for any outcome in the determination of employee preference regarding union representation.

Any failure to comply with this requirement and any service disruption as a result of a labor dispute will subject a contractor to liquidated damages and possible termination of the service contract.

If a contractor does not meet the Labor Peace requirements set out in this policy, the City may proceed with an award if the contractor can meet one of the following three exceptions:

1. **No labor organization response:** The contractor: 1) does not have an exclusive bargaining representative representing its employees who may be performing work on the service contract; 2) gave written notice to any and all labor organizations that represent employees providing similar services in the states of Oregon or Washington or that represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services of its desire to jointly develop Labor Peace, and the applicable labor organizations failed to respond within three (3) weeks or the applicable labor organizations represented that they are not seeking to become the exclusive representative of the contractor's employees; and 3) certifies that it has no reason to believe a labor dispute will occur for the term of the contract.

2. **Labor organization rejects Labor Peace:** The contractor follows the notification procedures set out in Exception 1 and labor organization(s) respond that they do not wish to negotiate Labor Peace.  The contractor must provide the City with written evidence of the response.  The contractor must demonstrate that it has a written plan for continuation of services in the event of economic

Exhibit 2
Page 1 of 2

interference by a labor organizations.

3. **Good faith effort to obtain Labor Peace**: The contractor demonstrates that it followed the notification procedures in Exception 1 and made good faith efforts to obtain Labor Peace with a labor organization but ultimately could not reach an agreement. A contractor's good faith efforts to obtain Labor Peace with a labor organization must include an offer by the contractor to submit its dispute with the labor organization about the terms of Labor Peace to immediate mediation before a neutral mediator and its participation in that mediation and, if the mediation is unsuccessful, an offer by the contractor to submit the dispute about the terms of Labor Peace to prompt resolution thorough binding interest arbitration before a neutral dispute resolution organization, and its participation in that arbitration. The contractor must demonstrate that it has a written plan for continuation of services in the event of economic interference by a labor organization.

Should the selected contractor meet one of these exceptions, the City may issue the award to the selected contractor and waive the Labor Peace requirement of this policy for up to the duration of the contract. The Mayor's Office or elected's delegee shall be responsible for determining whether a selected contractor meets an exception to this policy.

A party asserting the existence of any written notice required by this section, including a labor organization's assertion that it did respond to the employer's notice, must produce physical evidence that the notice was in fact received by the other party.

Exhibit 2
Page 2 of 2

**CITY OF PORTLAND**

**CONTRACT FOR SERVICES**
**for**
**PARKS COMPREHENSIVE CUSTODIAL SERIVCES**

**Contract Number:  30008600**

As authorized by 5.33.110, this Contract is made effective on October 1, 2023 ("Effective Date") by and between the City of Portland ("City"), a municipal corporation of the State of Oregon, and Northwest Success, Inc. ("Contractor"), an Oregon Nonprofit Corporation, by and through their duly authorized representatives. This Contract may refer to the City and Contractor individually as a "Party" or jointly as the "Parties."

The initial Term of this Contract shall be from the Effective Date through June 30, 2024, with the City's option to extend for up to 1 additional 1-year period.  The total not-to-exceed amount under this Contract for the initial Term shall be $1,000,000.00.

Party contacts and Contractor's and City's Project Manager for this Contract are:

| For City of Portland: | For Contractor: |
|---|---|
| Name: Jamie Sandness | Name: Debra Houston |
| Title: Recreation Support Systems Supervisor | Title: Vice President |
| Address: 1120 SW 5th Avenue | Address: 4950 NE Martin Luther King Blvd |
| City, State: Portland, OR | City, State: Portland, OR |
| e-mail: Jamie.Sandness@portlandoregon.gov | e-mail: dhouston@northwestsuccess.org |
|  |  |
| Copy to: Jarrad Venegas | Copy to: |
| Jarrad.venegas@portlandoregon.gov | The DPI Group |
| 1120 SW 5th Ave. | 4950 NE MLK Jr Blvd |
| Portland OR 97204 | Portland, OR 97211 |

Scope and Consideration
(a)      Contractor shall perform the Services and provide the Deliverables set forth in the Statement of Work by the due dates specified in the Contract.
(b)      Payments shall be made to Contractor according to the schedule identified in Exhibit A, the Contractor's Price.

Recitals:

WHEREAS, under OAR 125-055 and City Code 5.33.100B, the City must engage the services of a, Oregon Forward Firm, formerly the Qualified Rehabilitation Facility (QRF) program, for certain work; and

WHEREAS, Contractor is determined by the Oregon Department of Administrative Services to be a qualified Oregon Forward Firm to perform custodial services; and

WHEREAS, to further its government operations, the City of Portland desires to obtain custodial services (the "Project").

THE PARTIES HEREBY AGREE AS FOLLOWS:

## SECTION 1    DEFINITIONS (10/19)

<u>General Definitions</u>.  (11/18) These definitions apply to the entire Contract, subsequent Amendments, and any Change Orders or Task Orders, unless modified in an Amendment.  If any definition contains a substantive provision conferring rights and/or obligations upon a Party, then effect shall be given to the substantive provision.

"<u>Acceptance</u>" (10/19) means the Deliverable demonstrates to the City's satisfaction that the Deliverable conforms to and operates according to the Acceptance Criteria, and if required, has successfully completed Acceptance review, and for Deliverables not requiring Acceptance Testing that the Deliverable conforms to the Acceptance Criteria or the City's Specifications.

"<u>Acceptance Certificate</u>" (11/18) means a written instrument by which the City notifies Contractor that a Deliverable has been Accepted or Accepted with exceptions, and Acceptance Criteria have been met or waived, in whole or in part.

"<u>Acceptance Criteria</u>" (11/18) means functionality and performance requirements determined by the City, based upon the Specifications, which must be satisfied prior to City's Acceptance of a Deliverable. City and Contractor shall agree upon written Acceptance Criteria.

"<u>Acceptance Date</u>" (11/18) means the date on which the City issues an Acceptance Certificate for the Deliverable(s).

"<u>Affiliates</u>" (11/18) means, for Contractor, any individual, association, partnership, corporation or other entity controlling, controlled by, or under common control.  The term "control" means the power to

direct or cause the direction of the management and policies of an individual or entity, whether through the ownership of voting securities, by contract, agreement or otherwise.

"<u>Amendment</u>" (12/18) means a written document required to be signed by both Parties when in any way altering the Master Terms and Conditions of the Contract, Contract amount, or substantially altering a Statement of Work.

"<u>Business Day</u>" (11/18) means a twenty-four hour day, excluding weekends and City holidays, beginning at midnight and ending at midnight twenty-four hours later.

"<u>Calendar Day</u>" (11/18) means a twenty-four hour day, including weekdays, weekends and holidays, beginning at midnight and ending at midnight twenty-four hours later.

"<u>Change Order</u>" (12/18) means a document, agreed and signed by both Parties, that changes an existing Statement of Work. Change Orders cannot change Contract amount or Master Terms and Conditions.

"<u>Confidential Information</u>" (08/19) means any information that is disclosed in written, graphic or machine-recognizable form and is marked or labeled at the time of disclosure as being Confidential or its equivalent, or, if the information is in verbal or visual form, it is identified as Confidential or proprietary at the time of disclosure, or a reasonable time thereafter. Information shall always be considered Confidential Information, whether or not it is marked or identified as such, if it is described by one or more of the following categories: (1) non-public financial, statistical, personnel, human resources data or Personally Identifiable Information as described in the Oregon Consumer Information Protection Act; (2) business plans, negotiations, or strategies; (3) unannounced pending or future products, services, designs, projects or internal public relations information; (4) trade secrets, as such term is defined by ORS 192.345(2) and the Uniform Trade Secrets Act ORS 646.461 to 646.475; (5) information which is exempt from disclosure per Oregon Public Records Law; (6) attorney/client privileged communications; (7) information which is exempt per federal laws (including but not limited to copyright, HIPAA); and (8) information relating to or embodied by designs, plans, configurations, specifications, programs, or systems including without limitation, data and information systems, any software code and related materials and processes, Customizations, Configurations, Updates, Upgrades; and any Documentation. Confidential Information does not include any information that: is or becomes publicly known through no wrongful or negligent act of the receiving Party; is already lawfully known to the receiving Party without restriction when it is disclosed; is, or subsequently becomes, rightfully and without breach of this Contract or any other agreement between the Parties or of any applicable protective or similar order, in the receiving Party's possession without any obligation restricting disclosure; is independently developed by the receiving Party, as shown by reasonable written documentation, without breach of this Contract; or is explicitly approved for release by written authorization of the disclosing Party.

"<u>Contract</u>" (11/18) means the Master Terms and Conditions including all exhibits, attachments and schedules and their constituent parts listed in the Order of Precedence or incorporated by reference.

"Contract Price" (10/19) means the not-to-exceed price agreed upon by the Parties for all Services.

"Deliverable(s)" (11/18) means the Services, Documentation or documents or tangible work products described in the Statement of Work to be provided to the City by Contractor under this Contract.

"Documentation" ( 10/19) means user manuals and other written materials in any form that describe the features or functions of the Deliverables and Services, including but not limited to published specifications, online instructions and help, marketing materials, technical manuals, and operating instructions provided by Contractor to the City, or readily available to the public, or as required to be produced by Contractor subject to the terms of this Contract.

"Defect" (10/19) means any error, problem, condition, bug, or other partial or complete inability of a Service, Deliverable or component thereof, to operate in accordance with the applicable Specifications.

"Final Acceptance" (11/18) means the City has determined that all Deliverables have successfully completed Acceptance Testing, which demonstrates to the City's satisfaction that all Deliverables conform to and operate according to the Acceptance Criteria, applicable Documentation, and Contractor's representations; and that for Deliverables not requiring Acceptance Testing, that the Deliverables conform to the Acceptance Criteria or the City's specified requirements.

"Force Majeure Event" (04/2020) means an exceptional, unforeseeable and unavoidable occurrence beyond the reasonable control of the affected Party, such as, riots, epidemics, war, government regulations, labor disputes, fire, natural phenomena, or other causes beyond such Party's reasonable control.

"Intellectual Property Rights (IPR)" (11/18) means any patent rights, copyrights, trade secrets, trade names, service marks, trademarks, trade dress, moral rights, know-how and any other similar rights or intangible assets to which rights of ownership accrue, and all registrations, applications, disclosures, renewals, extensions, continuations, or reissues of the foregoing now or hereafter in force.

"Master Terms and Conditions" (11/18) means the body of text from the preamble through the signature page of this Contract.

"Material Breach" (11/18) means any breach of this Contract that causes, caused, or may cause substantial harm to the non-breaching Party or substantially deprives the non-breaching Party of the benefit it reasonably expected under this Contract.

"Personally Identifiable Information (PII)" (11/18) means information that can be used on its own or with other information to identify, contact, or locate a single person, or to identify an individual in context, as described in the Oregon Consumer Information Protection Act.

"Project" (10/19) means the overall delivery of the Services including, without limitation, design, development, integration, implementation, testing, support, and any Deliverables any of which Contractor may be providing in whole or in part.

"Services" (10/19) means ordinary or professional services performed by Contractor under this Contract.

"Specifications" (10/19) means the most current cumulative statement of capabilities, functionality, and performance requirements for the System and its components as set out in the Acceptance Criteria, Change Orders, the Statement of Work, Documentation, Contractor's representations.

"Statement of Work" (SOW) (10/19) means the written detailed specifications of the Services(s) to be delivered to the City by Contractor, including any Change Orders subject to the terms and conditions of this Contract.

"Subcontractor" (11/18) means any person or entity under the control of Contractor, other than an employee of Contractor, utilized by Contractor to perform all or part of this Contract.

"Task Order" (10/19) means any written request or document issued by the City and signed by both Parties for additional Service(s) to be provided under this Contract.  Task Orders shall document the description of Services, price, payment schedule, Project and performance schedule, due dates, milestones and Deliverables.

"Term" (11/18) means the period of time that this Contract is in effect as stated on page one.


## SECTION 2  ORDER OF PRECEDENCE

2.1    Order of Precedence. (09/17) In the event there is a conflict or ambiguity between the terms and conditions of one portion of this Contract with another portion of this Contract, the conflict or ambiguity will be resolved in accordance with the order of precedence below.  This order of precedence designates which portion of the Contract takes precedence over the other for purposes of interpretation.  Contractor's hyperlinks contained herein will not supersede or alter the Master Terms and Conditions.  For the avoidance of doubt, no other terms and conditions will override the Parties' obligations in the Confidentiality, Indemnification, or Choice of Law provisions in these Master Terms and Conditions.   In this Contract the order of precedence shall be:

1. Amendments
2. Master Terms and Conditions
3. Exhibit A, Contractor's Price
4. Change Orders
5. Exhibit B, Statement of Work
6. Exhibit C, DAS Price Approval and Costing Workbooks

## SECTION 3  GENERAL AND ADMINISTRATIVE PROVISIONS

3.1    <u>Term</u>. (09/17) This Contract shall begin on the Effective Date and end upon the expiration date set forth on page one of this Contract unless terminated or extended under the applicable Contract provisions.

3.2    <u>Point of Contact</u>. (09/17) Contractor shall be the sole point of contact for the City with regard to this Contract and the System.

3.2.1    <u>Written Notifications</u>. (10/18) All notices to, and other written communication between the Parties shall be deemed received five (5) Business Days after being sent by first class mail, or upon receipt when sent by courier services, or by e-mail.  All notices and written communications shall be sent to the Parties set forth on page 1 of the Contract, or to such other places as they may designate by like notice from time to time.  Each Party shall provide written notice of any changes to the Party's contacts within thirty (30) Calendar Days.

3.3    Changes to Contract.

<u>Amendment of the Contract</u>. (06/19) Any changes to the provisions of this Contract shall be in the form of an Amendment.  No provision of this Contract may be amended unless such Amendment is approved as to form by the City Attorney and executed in writing by authorized representatives of the Parties.  If the requirements for Amendment of this Contract as described in this section are not satisfied in full, then such Amendments automatically will be deemed null, void, invalid, non-binding, and of no legal force or effect. The City reserves the right to make administrative changes to the Contract unilaterally, such as extending option years and increasing compensation.  An administrative change means a written Contract change that does not affect the substantive rights of the Parties.

When Contractor is initiating a request to amend the Contract whether as a potential Amendment of the Contract or a potential Change Order to the Statement of Work shall identify the specific section or portion of the Contractor Statement of Work that the party seeks to amend or change. The request to amend the Contract or to change the Statement of Work shall be limited to one-page when possible.

3.3.1    <u>Change Orders to a Statement of Work</u>. (12/18) The City and Contractor can agree to make changes, at any time to a Statement of Work in the form of a Change Order.  Contractor agrees to timely alter the delivery of Products or Services accordingly.  If such changes materially increase or decrease Contractor's obligations, the Parties shall execute an Amendment to the Contract, and if the amount of such adjustment is not calculable as a function of hours or tasks, the Parties shall negotiate in good faith a modified amount.

    3.3.2   Change Orders to the Statement of Work which do not increase the City's financial obligation to Contractor can be executed by the Portland Parks & Recreation Director or City Project Manager.

3.4   <u>Time is of the Essence</u>. (06/19) The Parties agree that time is of the essence as to the delivery of Deliverables and performance of Services under this Contract. By executing this Contract and accepting the Statement of Work, Contractor agrees that the time limits specified in the Statement of Work are reasonable. By accepting late or otherwise inadequate performance of Contractor's obligations, the City will not waive its rights to require timely performance of Contractor's obligations thereafter.

    3.4.1   <u>Late Delivery</u>. (10/19) In the event that any specified delivery date is not met, Contractor shall be liable for any loss, expense, or damage resulting from delay in delivery or failure to deliver Deliverables or provide Services which is due to any cause except as set forth in Force Majeure. Contractor understands that this is a non-exclusive services contract. In the event of delivery is not met or cannot be met whether based on refusal to perform or inability to perform or incomplete or unsatisfactory performance, due to any such cause, the City may obtain substitute Services from another source and bill all additional costs directly to Contractor who shall remain financially liable for all additional acquisition costs.

    3.4.2   <u>Best Efforts</u>. (10/19) Contractor shall use best efforts to minimize any delay in the provision of Deliverables or performance of Services. If Contractor anticipates any delay that may prevent timely performance of Contractor's obligations under this Contract, Contractor shall promptly notify the City, including the anticipated length of the delay, the cause of the delay, measures proposed or taken to prevent or minimize the delay, and the timetable for implementation of such measures.

3.5   <u>City Reporting Requirements</u>. (12/18) The City is required to track certain types of contract data for reporting purposes. Items which the City must report on may include, but are not limited to, Subcontractor utilization, Minority, Women, Emerging Small Business, Service-Disabled Veteran Business Enterprise (D/M/W/ESB/SDVBE) participation and Subcontractor/Supplier Payment. The City will enforce all diversity in workforce and D/M/W/ESB/SDVBE subcontracting commitments made by Contractor.

3.6   <u>Payment</u>. (09/17) Payment(s) shall be in accordance with the payment schedule set forth in Exhibit A: Contractor's Price.

Payment shall be issued by the City net thirty (30) Calendar Days from receipt of a complete and acceptable invoice from Contractor. Contractor invoices must contain Contractor's name and address; invoice number; date of invoice; Contract number and date; description of Products and/or Services including the dates of where services were performance, the locations of City locations or facilities where performance was done, and the number of hours performed by Contractor's

employees segregated by differing rates of pay; quantity, unit price, (where appropriate), and total amount; City-required reporting, if any, and the title and phone number of the person to whom payment is to be sent. The City may stipulate how line items are entered on an invoice to ensure compatibility with the City's accounting and financial systems and to facilitate payment to Contractor.

Contractor agrees to provide segregated invoices when requested by the City if services are performed at a location or facility that is used as a temporary emergency shelter, as described in Section 3.7.

Contractor shall in no event seek payment for hours not worked.

3.6.1    The City makes payments via electronic fund transfers through the Automated Clearing House (ACH) network.  To initiate payment of invoices, Contractor shall execute the City's standard ACH Vendor Payment Authorization Agreement.  Upon verification of the data provided, the ACH Vendor Payment Authorization Agreement will authorize the City to deposit payment directly into specified Contractor accounts with specified financial institutions.  All payments shall be made in United States currency.

3.7    Invoicing

Payment shall be approved by Parks, net thirty (30) days unless otherwise specified, upon submission of an electronic invoice at the end of each month, separated out for each building, all on one invoice, to Portland Parks & Recreation, danielle.solomon@portlanoregon.gov. Certified Payroll verification shall be required on a monthly basis. There shall be one (1) invoice each month for **routine services**.

Each invoice shall include the following:
1. Number of custodial service hours per location, and cost;
2. Details (description and cost) of all specially requested and approved services provided;
3. Credits and notes for any uncharged hours (such as sick days that are not made up, etc.) and overpayments
4. Separate line items or separate invoice(s) for added or emergency service, or sub-contractor work, including hours of service, location, and cost
5. Separate line items identifying segregated invoice(s) for services for dates when identified City facilities are used for emergency shelters.

Those additional services not defined by Contractor shall be billed on a separate invoice within thirty (30) days of service and shall include the following:

1. Description of service provided
2. Number of hours and Hourly Rate to complete service (or reference to quote provided)
3. Square Footage (as applicable)
4. Rate per Square Footage (as applicable)

5. Type of equipment used (as applicable)
6. Products description used (name, manufacturer name, sustainability criteria if applicable, and associated cost if applicable)

Delivery of written monthly status reports is a pre-condition in the completeness of Contractor's invoices and the City's obligation to pay.

3.8   <u>Payment of Taxes/Contractor Shall Withhold</u>. (09/17) Contractor shall, at its own expense, timely (a) pay all salaries, wages, and other compensation to its employees; (b) withhold, collect, and pay all applicable federal, state, and local income taxes (domestic or foreign), FICA, Medicare, unemployment insurance and any other taxes or charges in connection with its employees; and (c) provide and pay for workers compensation insurance and any statutory or fringe benefits to employees.  Contractor shall be solely responsible for all such obligations for its employees. Contractor shall also ensure that any Subcontractor shall comply with the foregoing obligations for its employees.  The City shall have no duty to pay or withhold such obligations.

3.9   Records and Audits (06/19)

3.9.1   <u>Records Retention</u>. (06/19) Contractor shall maintain current financial records in accordance with Generally Accepted Accounting Principles (GAAP). Contractor agrees to maintain and retain all financial records, supporting documents, statistical records and all other records pertinent to this Contract during the term of this Contract and for a minimum of six (6) years after the expiration or termination date of this Contract or until the resolution of all audit questions or claims, whichever is longer.

3.9.2   <u>City Audits</u>. (06/19) The City, either directly or through a designated representative, may conduct financial and performance audits of the billings and Products or Services at any time in the course of the Contract and during the records retention period listed above. Audits shall be conducted in accordance with generally accepted auditing standards as promulgated in Government Auditing Standards by the Comptroller General of the United States Government Accountability Office.

3.9.3   <u>Access to Records</u>. (06/19) The City may examine, audit and copy Contractor's books, documents, papers, and records relating to this Contract at any time during the records retention period listed above upon reasonable notice. Copies of applicable records shall be made available upon request.

3.10   <u>Overpayment</u>. (09/17) If an audit discloses that payments to Contractor were in excess of the amount to which Contractor was entitled, then Contractor shall repay the amount of the excess to the City.  Under no circumstances will the payment of previous invoices constitute an acceptance of the charges associated with those invoices.

3.11   <u>Independent Contractor</u>. (09/17) Contractor is independent of the City and, accordingly, this Contract is not entered into as a joint venture, partnership, or agency between the Parties.  No employment or agency relationship is or is intended to be created between the City and any individual representing Contractor. Employees of Contractor and any authorized Subcontractors shall perform their work under this Contract under Contractor's sole control.

3.12   <u>Termination</u>. (06/19) The following conditions apply to termination of this Contract. The City, on thirty (30) Calendar Days' written notice to Contractor, may terminate this Contract for any reason in the City's sole discretion.  In the event of such termination, the City shall pay to Contractor the portion of the not-to-exceed price attributable to all Deliverables Accepted or Services performed and Accepted through the effective date of the termination. In the event of termination all of Contractor's Work Product to date shall be delivered to the City, and it will become and remain property of the City.

3.13   <u>Mutual Agreement</u>. (09/17) The City and Contractor, by mutual written agreement, may terminate this Contract at any time.

3.14   <u>Material Breach</u>. (09/17) Either Party may terminate this Contract in the event of a Material Breach of this Contract by the other. Prior to such termination, however, the Party seeking the termination shall give to the other Party written notice to cure the Material Breach and of the Party's intent to terminate.  If the Party has not entirely cured the Material Breach within thirty (30) Calendar Days of the notice, then the Party giving the notice shall have the option to: (a) terminate this Contract by giving a written notice of termination, (b) seek any remedies in this Contract, in law, or at equity, to the extent not otherwise limited by the terms of this Contract, or (c) any combination thereof.

3.15   <u>Force Majeure</u>. (09/17) Either Party may terminate this Contract due to a Force Majeure event as set forth in Section 5.12, Force Majeure.

3.16   <u>Bankruptcy</u>. (09/17) The City may terminate this Contract if Contractor: (a) becomes insolvent, makes a general assignment for the benefit of creditors; (b) suffers or permits the appointment of a receiver for its business or assets; (c) becomes subject to any proceeding under any bankruptcy or insolvency law whether domestic or foreign, and such proceeding has not been dismissed within a sixty (60) Calendar Day period; or (d) has wound up or liquidated, voluntarily or otherwise.

3.17   <u>Void Assignment</u>. (09/17) In the event that Contractor assigns its obligations under this Contract to a third party in a manner other than as set forth in Section 5.7, Assignment, the City shall have the option to terminate this Contract without any notice or cure period or further obligation to Contractor or the assignee, and promptly receive a refund for fees paid for Products delivered and/or Services performed by the third party.

3.18  <u>Waiver</u>. (09/17) No waiver of any breach of this Contract shall be held to be a waiver of any other or subsequent breach of this Contract.  The failure of either Party to insist upon any of its rights under this Contract upon one or more occasions, or to exercise any of its rights, shall not be deemed a waiver of such rights on any subsequent occasions.

3.19  <u>Severability</u>. (09/17) Any section of this Contract which is held or declared void, invalid, illegal or otherwise not fully enforceable shall not affect any other provision of this Contract and the remainder of this Contract shall continue to be binding and of full force and effect.  This Contract shall be binding upon and inure to the benefit of the City and its successors and assigns.

3.20  <u>Business Tax Registration</u>. (09/17) Contractor shall register for a City of Portland business license as required by Chapter 7.02 of the Code of the City of Portland prior to execution of this Contract. Additionally, Contractor shall pay all fees or taxes due under the Business License Law and the Multnomah County Business Income Tax (MCC Chapter 12) during the full term of this Contract. Failure to be in compliance may result in payments due under this Contract to be withheld to satisfy amount due under the Business License Law and the Multnomah County Business Income Tax Law.

3.21  <u>EEO Certification</u>. (09/17) Contractor shall be certified as an Equal Employment Opportunity Affirmative Action Employer as prescribed by Chapter 5.33.076 of the Code of the City of Portland and maintain its certification throughout the term of this Contract.

3.22  <u>Non-Discrimination in Benefits</u>. (09/17) Throughout the term of this Contract, Contractor shall provide and maintain benefits to its employees with domestic partners equivalent to those provided to employees with spouses as prescribed by Chapter 5.33.077 of the Code of the City of Portland.

3.23  <u>Sustainability</u>. (12 /18) Pursuant to the City's Sustainable City Principles, which direct City Bureaus to pursue long-term social equity, environmental quality, and economic vitality through innovative and traditional mechanisms, Contractor is encouraged to incorporate these Principles into its scope of work with the City wherever possible.  Therefore, in accordance with the Principles and the City's Sustainable Procurement Policy, it is the policy of the City of Portland to encourage the use of Products or Services that help to minimize the human health and environmental impacts of City operations.  Contractor is encouraged to incorporate environmentally preferable Products or Services into its work performance wherever possible. "Environmentally preferable" means Products or Services that have a lesser or reduced effect on human health and the environment when compared with competing products or services that serve the same purpose.  This comparison may consider raw materials acquisition, production, manufacturing, packaging, distribution, reuse, operation, maintenance, or disposal of the Product or Service.

3.24 <u>Packaging</u>. (09/17) All packaging should be minimized to the maximum extent possible without compromising product quality.  The City encourages packaging that is reusable, readily recyclable in local recycling programs, is made from recycled materials, and/or is collected by Contractor for reuse/recycling.

3.25 <u>News Releases and Public Announcements</u>. (09/17) Contractor shall not use the City seal or other representations of the City in its external advertising, marketing, website, or other promotional efforts, nor shall Contractor issue any news release or public announcements pertaining to this Contract or the Project without the express written approval of the City.  Such approval may be withheld in the City's sole discretion.  Contractor shall not use the City seal without specific written permission from the City Auditor.

3.26 <u>Rule of Construction/Contract Elements/Headings</u>. (09/17) This Contract has been drafted by the City in the general format by the City as a convenience to the Parties only and shall not, by reason of such action, be construed against the City.  Section headings are for ease of reference and convenience only and shall not affect or enter into the interpretation of any portion of this Contract.

3.27 <u>Survival</u>. (09/17) All obligations relating to Confidential Information; indemnification; publicity; representations and warranties; remedies; proprietary rights; limitation of liability; and obligations to make payments of amounts that become due under this Contract prior to termination or expiration  shall survive the termination or expiration of this Contract and shall, to the extent applicable, remain binding and in full force and effect for the purposes of  the ongoing business relationship by and between Contractor and the City.

3.28 <u>Labor Peace</u>.  In addition to complying with the City's Sustainable Procurement Policy, ADM 1.09 [https://www.portland.gov/policies/administrative/purchasing/adm-109-sustainable-procurement-policy], Contractor shall comply with the City's Labor Peace Agreement policy (Attachment 4 to ADM 1.09; https://www.portland.gov/sites/default/files/policies/sustainable-procurement-policy-exhibit-a.pdf) by providing written documentation of Labor Peace with a labor organization that represents employees providing similar services in the states of Oregon or Washington and that represents or seeks to represent an group of Contractor's or subcontractor's employees who are or will be involving in providing such services to carry out this Contract.  In lieu of written documentation of Labor Peace, this Contract may be awarded upon the Mayor's or elected delegee's satisfaction that Contractor met one of the three exceptions provided in the Labor Peace Agreement Policy.

## SECTION 4  STATUTORY REQUIREMENTS, PUBLIC RECORDS AND CONFIDENTIALITY

4.1   <u>Governing Law and Jurisdiction</u>. (09/17) This Contract shall be construed according to the laws of the State of Oregon without reference to the conflict of laws' provisions. Any litigation between the City and Contractor arising under this Contract or out of work performed under this Contract shall occur, if in the state courts, in the Multnomah County Circuit Court, and if in the federal courts, in the United States District Court for the District of Oregon.

4.2   <u>Public Records Request</u>. (09/17) Contractor acknowledges that the City of Portland is subject to the Oregon Public Records Act and Federal law. Third persons may claim that the Confidential Information Contractor submitted to the City hereunder may be, by virtue of its possession by the City, a public record and subject to disclosure pursuant to the Oregon Public Records Act. The City's commitments to maintain certain information confidential under this Contract are all subject to the constraints of Oregon and federal laws. All information submitted by Contractor is public record and subject to disclosure pursuant to the Oregon Public Records Act, except such portions for which Contractor requests and meets an exemption from disclosure consistent with federal or Oregon law. Within the limits and discretion allowed by those laws, the City will maintain the confidentiality of information.

4.3   <u>Public Records</u>. (09/17) The City will retain one (1) copy of any public records for the express purposes of complying with State of Oregon and Portland City Code public records and archiving laws.

4.4   Confidentiality.

  4.4.1   <u>Contractor's Confidential Information</u>. (08/19) During the term of this Contract, Contractor may disclose to the City, certain Contractor Confidential Information pertaining to Contractor's business. Contractor shall be required to mark Confidential Information CONFIDENTIAL with a restrictive legend or similar marking. If CONFIDENTIAL is not clearly marked, or the Contractor's Confidential Information cannot be marked with a restrictive legend or similar marking or is disclosed either orally or by visual presentation, Contractor shall identify the Confidential Information as confidential at the time of disclosure or within a reasonable time thereafter. This Contract itself shall not be considered Confidential Information. Subject to Section 4.2, the City shall: (1) limit disclosure of Contractor Confidential Information to those directors, employees, contractors and agents of the City who need to know the Contractor Confidential Information in connection with the City Project and who have been informed of confidentiality obligations at least as strict as those contained in this Contract, and (2) exercise reasonable care to protect the confidentiality of the Contractor Confidential Information, at least to the same degree of care as the City employs with respect to protecting its own proprietary and confidential information.

  4.4.2   <u>City's Confidential Information</u>. (08/19) Contractor shall treat as confidential any City Confidential Information that has been made known or available to Contractor or that

Contractor has received, learned, heard or observed; or to which Contractor has had access. Contractor shall use City Confidential Information exclusively for the City's benefit in the performance of this Contract. Except as may be expressly authorized in writing by the City, in no event shall Contractor publish, use, discuss or cause or permit to be disclosed to any other person such City Confidential Information. Contractor shall (1) limit disclosure of the City Confidential Information to those directors, officers, employees, subcontractors and agents of Contractor who need to know the City Confidential Information in connection with the City Project and who have agreed in writing to confidentiality obligations at least as strict as those contained in this Contract, (2) exercise reasonable care to protect the confidentiality of the City Confidential Information, at least to the same degree of care as Contractor employs with respect to protecting its own proprietary and confidential information, and (3) return immediately to the City, upon its request, all materials containing City Confidential Information, in whatever form, that are in Contractor's possession or custody or under its control. Contractor is expressly restricted from and shall not use the Intellectual Property Rights of the City without the City's prior written consent.

4.4.3    Scope. (09/17) This Contract shall apply to all City Confidential Information previously received, learned, observed, known by or made available to Contractor. Contractor's confidentiality obligations under this Contract shall survive termination or expiration of this Contract.

4.4.4    Equitable Relief. (12/18) Contractor acknowledges that unauthorized disclosure of City Confidential Information will result in irreparable harm to the City. In the event of a breach or threatened breach of this Contract, the City may obtain injunctive relief prohibiting the breach, in addition to any other appropriate legal or equitable relief. The Parties agree that, notwithstanding any other section of this Contract, in the event of a breach or a threatened breach of Contract terms related to Confidential Information or Intellectual Property Rights, the non-breaching Party shall be entitled to seek equitable relief to protect its interests, including but not limited to injunctive relief. Nothing stated herein shall be construed to limit any other remedies available to the Parties.

4.4.5    Discovery of Documents. (06/19) In the event a court of competent jurisdiction orders the release of Confidential Information submitted by one Party, the other Party will notify the Party whose Confidential Information is being requested to be disclosed of the request. The Party receiving the request shall allow the other Party to participate in the response at its own expense. Each Party will comply with any effective court order.

## SECTION 5   CONTRACTOR PERFORMANCE AND WARRANTIES

5.1    General Warranties. (09/17) Contractor makes the following warranties:

5.1.1   <u>Capacity</u>.  (09/17) Contractor warrants it has the legal authority and capacity to enter into and perform this Contract.

5.1.2   <u>Authority to Conduct Business</u>.  (08/19) Contractor warrants it is lawfully organized and constituted and duly authorized to operate and do business in all places where it shall be required to do business under this Contract, and that it has obtained or will obtain all necessary licenses and permits required in connection with this Contract.

5.1.3   <u>Disclosure of Litigation</u>.  (09/17) Contractor warrants that as of the Effective Date there are no suits, actions, other proceedings, or reasonable anticipation thereof, in any judicial or quasi-judicial forum that will or may adversely affect Contractor's ability to fulfill its obligations under this Contract.  Contractor further warrants that it will immediately notify the City in writing if, during the Term of this Contract, Contractor becomes aware of, or has reasonable anticipation of, any lawsuits, actions, or proceedings in any judicial or quasi-judicial forum that involves Contractor or any Subcontractor and that will or may adversely affect Contractor's ability to fulfill its obligations under this Contract.

5.1.4   <u>Conflict of Interest</u>.  (09/17) Contractor warrants it has no present interest and shall not acquire any interest that would conflict in any manner with its duties and obligations under this Contract.

5.1.5   <u>Compliance with Applicable Law</u>.  (09/17) Contractor warrants it has complied and shall comply with all applicable federal, state, and local laws and regulations of its domicile and wherever performance occurs during the term of this Contract.  Contractor warrants it is currently in compliance with all tax laws.

5.1.6   <u>Public Contracts</u>.  (09/17) Contractor shall observe all applicable state and local laws pertaining to public contracts.  ORS Chapters 279A and 279B require every public contract to contain certain provisions.   To the extent applicable, ORS 279B.220, 279B.230 and 279B.235 are incorporated into this Agreement by reference.

5.1.7   <u>Compliance with Civil Rights Act</u>.  (09/17) Contractor warrants it is in compliance with Title VI of the Civil Rights Act of 1964 and its corresponding regulations as further described at: http://www.portlandoregon.gov/bibs/article/446806

5.1.8   <u>Respectful Workplace Behavior</u>.  (09/17) The City   is committed to a respectful work environment, free of harassment, discrimination and retaliation and other inappropriate conduct.  Every individual has a right to work in a professional atmosphere where all individuals are treated with respect and dignity.  The City's HR Rule 2.02 covers all employees of the City as well as contractors, vendors or consultants who provide services to the City of Portland.  Contractor warrants its compliance with terms and conditions HR 2.02 as further described at: https://www.portlandoregon.gov/citycode/27929

5.2     <u>Grant Funding</u>. (02/18).  This Contract is currently not using grant funding.  However, in the event that City acquires or uses grant funding to pay for any portion of this Contract, the City and Contractor agree to Amend the Contract to include the federally required terms and conditions. General grant terms may be found at http://www.portlandoregon.gov/bibs/article/455735

5.3     Compliance with Non-Discrimination Laws and Regulations.

5.3.1     <u>Nondiscrimination</u>. (06/19) Pursuant to all City, State, and federal non-discrimination and civil rights laws, Contractor, with regard to the work performed by it during this Contract, shall not discriminate on the grounds of race, color, national origin, including limited English proficiency, sex, sexual orientation, gender identity, age, religion or non-religion, disability, marital status, family status, or source of income, including in employment practices, the selection and retention of subcontractors, including procurements of materials and leases of equipment.

5.3.2     <u>Solicitations for Subcontractors, Including Procurements of Materials and Equipment</u>. (06/19) In all solicitations either by competitive bidding or negotiation made by Contractor for work to be performed under a subcontract, including procurements of materials or leases of equipment, each potential subcontractor or supplier shall be notified by Contractor of Contractor's obligations under this Contract relative to nondiscrimination on the grounds of race, color, national origin, sex, sexual orientation, age, religion, disability, marital status, or family relationships.

5.3.3     <u>Sanctions for Noncompliance</u>. (09/17) In the event of Contractor's noncompliance with the nondiscrimination provisions of this Contract, the City shall impose such contract sanctions as it or any state or federal agency may determine to be appropriate, including, but not limited to withholding of payments to Contractor under this Contract until Contractor complies, and/or cancellation, termination, or suspension of this Contract, in whole or in part.

5.3.4     <u>ADA Compliance</u>.  (07/18) Contractor shall comply with the Americans With Disabilities Act (ADA), including any duty the ADA may impose on City or Contractor as a result of the Products, Services or activities requested to be provided for City under this Agreement.

At minimum, Contractor shall do the following:

Contractor shall document each ADA request for modification to the Products or Services and Contractor's fulfillment of the request.  If Contractor determines that it is unable to promptly fulfill the request for modification under the ADA, Contractor will contact the City contract manager within the same business day, proving reasons why Contractor is unable to fulfill the request for modification and to identify alternate accessibility options that Contractor can perform.

Within seven (7) Business Days after receipt, City and Contractor shall advise the other Party in writing, and provide the other Party with copies (as applicable) of any notices alleging violation of or noncompliance with the ADA relating to the Agreement, or any governmental or regulatory actions or investigations instituted or threatened regarding noncompliance with the ADA and relating to the Agreement or the programs, Products, Services or activities that Contractor is undertaking for City under this Agreement.

5.3.5    <u>Required Reporting</u>. (05/19) If any person or class of persons files a complaint with Contractor alleging discrimination under Title VI of the Civil Rights Act of 1964 (race, color, or national origin, including limited English proficiency), Contractor will notify the City of Portland of the complaint and cooperate with any investigation related to the complaint. Notifications shall be sent to Title VI Program Manager, 421 SW 6th Ave, Suite 500, Portland, Oregon 97204, or title6complaints@portlandoregon.gov.

5.4    <u>Service(s) and Deliverables Warranties</u>. (10/19) Contractor makes the following warranties:

5.4.1    <u>No Third-Party Conflict or Infringement</u>. (01/19) As of the Effective Date, Contractor warrants the execution and performance of this Contract, shall not contravene the terms of any contracts with third parties or any third-party Intellectual Property Right; and, as of the Effective Date of this Contract, there are no actual or threatened legal actions with respect to the matters in this provision.  Contractor agrees to promptly notify the City, in writing, if during the Term of the Contract, a potential third-party conflict or infringement of third-party Intellectual Property Rights arises.

5.4.2    <u>No Encumbrances</u>. (08/19) All Deliverables provided by Contractor under this Contract shall be transferred to the City free and clear of any and all restrictions of transfer or distribution and free and clear of any and all liens, claims, security interests, liabilities and encumbrances of any kind.

5.4.3    <u>Conformance with Specifications</u>. (01/19) Contractor warrants that the Deliverables and Services shall operate in conformance with the Specifications.

5.4.4    <u>Compliance with Law</u>. (10/19) Contractor warrants that the Deliverables conform to all requirements of applicable law, including all applicable health, safety, privacy, data security and environmental laws and regulations

5.4.5    <u>Industry Standards</u>. (10/19) Contractor warrants that the Services performed under this Contract will meet the standards of skill and diligence normally employed by persons performing the same or similar services.

Contract #30008600
Project #130713

Page **17** of **108**

*CA Approved: April 2020*

Exhibit 3
Page 17 of 25

5.4.6  <u>Substitution or Modification of Products at No Charge</u>. (03/19) In the event that Contractor substitutes or modifies the Deliverables, Contractor shall ensure that the new or modified Deliverables shall conform in all aspects to the Specifications. Such substitutions or modifications shall in no way degrade the performance or functionality of the Deliverables and shall not result in additional cost to the City.

5.5  <u>No Waiver of Warranties or Representation</u>. (10/19) Performance of Services shall not be construed to represent Acceptance nor relieve Contractor from its responsibility under any representation or warranty. If the City makes a payment prior to Final Acceptance, the payment does not grant a waiver of any representation or warranty by Contractor.

5.6  <u>No Third Party to Benefit.</u> (09/17) This Contract is entered into for the benefit of the City and Contractor. Except as set forth herein, nothing in this Contract shall be construed as giving any benefits, rights, remedies or claims to any other person, firm, corporation or other entity, including, without limitation, the general public or any member thereof, or to authorize anyone not a Party to this Contract to maintain a suit for breach of contract, personal injuries, property damage, or any other relief in law or equity in connection with this Contract.

5.7  <u>Assignment</u>. (08/19) Neither Party shall assign, transfer, or delegate all or any part of this Contract, or any interest therein, without the other Party's prior written consent, which shall not be unreasonably withheld. For purposes of this Section, the acquisition, merger, consolidation or change in control of Contractor or any assignment by operation of law shall be considered an assignment of this Contract that requires the City's prior written consent. Notwithstanding the foregoing: (a) in the event that the City's business needs change or the City enters into an agreement with a provider for outsourcing services, Contractor agrees that the City shall have the right to assign this Contract to a successor of all, substantially all, or specified area(s) of the City's business, including an outsourcing provider, upon written notice to the other Party, and (b) Contractor may, without the City's consent, but upon prior written notice to the City, assign its right to payment under this Contract or grant a security interest in such payment to any third party without requiring that the third party be liable for the obligations of Contractor under this Contract. Any attempted assignment or delegation in violation of this Section shall be void.

5.8  <u>Notice of Change in Financial Condition</u>. (09/17) Contractor must maintain a financial condition commensurate with the requirements of this Contract. If, during the term of this Contract, Contractor experiences a change in its financial condition which may adversely affect its ability to perform the obligations of this Contract, Contractor shall immediately notify the City in writing. Failure to notify the City of such a change in financial condition is sufficient grounds for terminating this Contract.

5.9  <u>Notice of Change in Ownership</u>. (09/17) If, during the term of this Contract, Contractor experiences a change in ownership or control, Contractor shall immediately notify the City in

writing.  Failure to notify the City of such a change in ownership or control is sufficient grounds for terminating this Contract.

5.10   <u>Subcontractors</u>. (10/19) Contractor shall not subcontract any work under this Contract without the City's prior written consent.  Contractor shall be fully responsible for the acts and omissions of its Subcontractors, including any Affiliates, at all levels, and of their agents and employees. Contractor shall ensure that all applicable provisions of this Contract (including those relating to Insurance, Indemnification, and Confidentiality) are included in all of its subcontracts.  The City reserves the right to review any agreements between Contractor and its Subcontractors for Services authorized under this Contract.

All D/M/W/ESB/SDVBE (COBID Certified) subcontractors/suppliers identified in Contractor's proposals shall be used in their proposed capacity during Contract performance. If Contractor desires to replace any D/M/W/ESB/SDVBE subcontractors/suppliers under this Contract all substitution requests must have approval from the City's Chief Procurement Officer before such substitutions can be made.  In no event shall Contractor subcontract any work, assign any rights, or delegate any obligations under this Contract without the City's prior written consent.

5.11   <u>Flow-down Clauses</u>. (01/19) Contractor shall include the following clauses, or substantially similar language, in its subcontracts under this Contract:

Section 4.4, Confidentiality
Section 5.3, Compliance with Non-Discrimination Laws and Regulations
Section 6.1, Hold Harmless and Indemnification
Section 6.2, Insurance

5.12   Force Majeure. (01/19)

5.12.1   In the event that either Party is unable to perform any of its obligations under this Contract due to a Force Majeure Event not the fault of the affected Party, the Party who has been so affected immediately shall give notice to the other Party and shall do everything possible to resume performance.  Upon receipt of such notice, the performance obligations affected by the Force Majeure event shall immediately be suspended.

5.12.2   If the period of nonperformance exceeds fifteen (15) Calendar Days from the receipt of notice of the Force Majeure Event, the Party whose ability to perform has not been so affected may, by giving written notice, terminate this Contract or any Statement of Work.

5.12.3   If the period of nonperformance due to a Force Majeure Event does not exceed fifteen (15) Calendar Days, such nonperformance shall automatically extend the Project schedule for a period equal to the duration of such events.  Any Warranty Period affected by a Force Majeure Event shall likewise be extended for a period equal to the duration of such event.

5.12.4  If the period of nonperformance due to Force Majeure Event is longer than fifteen (15) Calendar Days, the Parties shall negotiate options for mitigation of the Force Majeure Event.

5.13  Ownership of Property.  (06/19) All work product produced by the Contractor under this Contract is the exclusive property of the City.  "Work Product" includes, but is not limited to:  research, reports, computer programs, manuals, drawings, recordings, photographs, artwork and any data or information in any form.  The Contractor and the City intend that such Work Product shall be deemed "work made for hire" of which the City shall be deemed the author.  If for any reason a Work Product is deemed not to be a "work made for hire," the Contractor hereby irrevocably assigns and transfers to the City all right, title and interest in such Work Product, whether arising from copyright, patent, trademark, trade secret, or any other state or federal intellectual property law or doctrines.  Contractor shall obtain such interests and execute all documents necessary to fully vest such rights in the City.  Contractor waives all rights relating to work product, including any rights arising under 17 USC 106A, or any other rights of authorship, identification or approval, restriction or limitation on use or subsequent modifications.  If the Contractor is an architect, the Work Product is the property of the Consultant-Architect, and by execution of this Contract, the Contractor-Architect grants the City an exclusive and irrevocable license to use that Work Product.

Notwithstanding the above, all pre-existing trademarks, services marks, patents, copyrights, trade secrets, and other proprietary rights of Contractor are and will remain the exclusive property of Contractor.  Contractor hereby grants to the City a non-exclusive, perpetual, irrevocable license, with the right to sublicense, to disclose, copy, distribute, display, perform, prepare derivative works of and otherwise exploit any pre-existing Intellectual Property Rights incorporated into the Work Product(s).

## SECTION 6   INDEMNIFICATION, INSURANCE, BONDING, LIQUIDATED DAMAGES

6.1    Hold Harmless and Indemnification.  (08/19)

6.1.1    Contractor shall indemnify, defend, and hold harmless the City of Portland, its officers, agents, and employees, from all claims, demands, suits, and actions for all losses, damages, liabilities, costs and expenses (including all attorneys' fees and costs), resulting from or arising out of the actions, errors, or omissions of Contractor or its officers, employees, Subcontractors, or agents under this Contract.

6.1.2    Infringement Indemnity.  (08/19) Contractor shall indemnify, defend, and hold harmless the City, its directors, officers, employees, and agents from and against any and all claims, demands, suits, and actions for any damages, liabilities, losses, costs, and expenses (including reasonable attorney fees, whether or not at trial and/or on appeal), arising out of or in connection with any actual or alleged misappropriation, violation, or infringement of any

proprietary right or Intellectual Property Right of any person whosoever. The City agrees to notify Contractor of the claim and gives Contractor sole control of the defense of the claim and negotiations for its settlement or compromise.

6.1.3    Contractor shall indemnify, defend, and hold harmless the City against any taxes, premiums, assessments, and other liabilities (including penalties and interest) that the City may be required to pay arising from Deliverables and Services provided by Contractor under this Contract. The City of Portland, as a municipal corporation of the State of Oregon, is a tax-exempt unit of local government under the laws of the State of Oregon and is not liable for any taxes.

6.2    <u>Insurance</u>. (08/19) Contractor shall not commence work until Contractor has met the insurance requirements in this section and Contractor has provided insurance certificates approved by the City Attorney. Contractor shall acquire insurance issued by insurance companies or financial institutions with an AM Best rating of A- or better and duly licensed, admitted and authorized to do business in the State of Oregon.

6.2.1    <u>Insurance Certificate</u>. (08/19) As evidence of the required insurance coverage, Contractor shall provide compliant insurance certificates, including required endorsements, to the City prior to execution of the Contract. The certificates shall list the City as certificate holder. Contractor shall maintain continuous, uninterrupted coverage for the Term of this Contract and to provide insurance certificates demonstrating the required coverage for the Term of this Contract. Contractor's failure to maintain insurance as required by this Contract constitutes a Material Breach of this Contract. Contractor must notify the City in writing thirty (30) Calendar Days prior to a cancellation, non-renewal, or changes to the insurance policy.

6.2.2    <u>Additional Insureds</u>. (08/19) For commercial general liability coverage, Contractor shall provide City with a blanket additional insured endorsement form that names the City of Portland, Oregon, and its officers, agents and employees, as an additional insured. The additional insured endorsement must be attached to the general liability certificate of insurance.

6.2.3    <u>Insurance Costs</u>. (08/19) Contractor shall be financially responsible for all premiums, deductibles, self-insured retentions, and self-insurance.

6.2.4    <u>Coverage Requirements</u>. (08/19) Contractor shall comply with the following insurance requirements:

6.2.4.1    <u>Commercial General Liability</u>. (08/19) Contractor shall acquire commercial general liability ("CGL") and property damage insurance coverage in an amount not less than $2 million per occurrence for damage to property or personal injury arising from Contractor's work under this Contract.

☒ Required and attached  ☐ Reduced by Authorized Bureau Director  ☐ Waived by Authorized Bureau Director

6.2.4.2  <u>Automobile Liability</u>. (08/19) Contractor shall acquire automobile liability insurance to cover bodily injury and property damage in an amount not less than $1 million for each accident. Contractor's insurance must cover damages or injuries arising out Contractor's use of any vehicle.

☒ Required and attached  ☐ Reduced by Authorized Bureau Director  ☐ Waived by Authorized Bureau Director

6.2.4.3  <u>Workers' Compensation</u>. (08/19) Contractor shall comply with Oregon workers' compensation law, ORS Chapter 656, as it may be amended. If Contractor is required by ORS Chapter 656 to carry workers' compensation insurance, Contractor shall acquire workers' compensation coverage for all subject workers as defined by ORS Chapter 656 and shall maintain a current, valid certificate of workers' compensation insurance on file with the City for the entire period during which work is performed under this Contract.  Contractor shall acquire workers compensation coverage in an amount not less than $500,000 each accident, $500,000 disease each employee, and $500,0000 disease policy limit.

☒ Required and attached  ☐ Proof of exemption (Complete Independent Contractor Certification Statement)

6.2.5  <u>Insurance Requirements for Subcontractors</u>. (08/19) Contractor shall contractually require its Subcontractors to acquire and maintain for the duration of this Contract insurance equal to the minimum coverage limits required above.

6.3  <u>Rolling Estoppel</u>. (09/17) Unless otherwise notified by Contractor, it shall be understood that the City shall have met all its obligations under this Contract.  The City will be conclusively deemed to have fulfilled its obligations, unless it receives written notification of a failure to meet such obligations in the next status report, or within ten (10) Business Days following such failure, whichever is sooner, and Contractor identifies the specific failure in that notification.  The City's failure to meet obligations must be described in terms of how it has affected the Project schedule or a specific performance requirement of Contractor.

6.3.1  Contractor is estopped from claiming that a situation has arisen that might otherwise justify changes in Project timetable, the standards of performance under this Contract, or the Contract price, if Contractor knew of that problem and failed to provide notification to the City as set forth above or to include it in the applicable status report to the City's project manager.

6.3.2  In the event Contractor identifies a situation that is impairing Contractor's ability to perform for any reason, Contractor's notification should contain Contractor's suggested solutions to the situation.  These suggestions should be in sufficient detail so that the City's Project Manager can make a prompt decision as to the best method of dealing with the problem and continuing the Project in an unimpeded fashion.

6.4   <u>Dispute Resolution</u>. (09/17) Contractor shall cooperate with the City to ensure that all claims and controversies which arise during this Contract will be resolved as expeditiously as possible in accordance with the following resolution procedure:

    6.4.1   Any dispute between the City and Contractor shall be resolved, if possible by the Project Manager or their designee on behalf of the City and Debra Houston on behalf of Contractor.

    6.4.2   If the Project Manager or the Project Manager's designee and Contractor are unable to resolve any dispute within three (3) Business Days after notice of such dispute is given by either Party to the other, the matter shall be submitted to the PP&R Bureau Director on behalf of the City and Debra Houston on behalf of Contractor for resolution, if possible.

    6.4.3   Should any dispute arise between the Parties concerning this Contract that is not resolved by mutual agreement above, it is agreed that such dispute will be submitted to mandatory mediated negotiation prior to any Party's commencing arbitration or litigation.  In such an event, the Parties to this Contract agree to participate in good faith in a non-binding mediation process.  The mediator shall be selected by mutual agreement of the Parties, but in the absence of such agreement each Party shall select a temporary mediator and those mediators shall jointly select the permanent mediator.  All costs of mediation shall be borne equally by the Parties.

    6.4.4   Should an equitable solution not result from the foregoing, the City and Contractor shall be free to pursue other remedies allowed under this Contract.

    6.4.5   Unless ordered by the City to suspend performance of all or any portion of Contractor's Services, Contractor shall proceed with the performance of such Services without any interruption or delay during the pendency of any of the foregoing dispute resolution procedures. During the pendency of any of the foregoing dispute resolution procedures, the City shall continue to make all payments that are not in dispute while having the right to withhold payments that are in dispute.

6.5   <u>Remedies</u>. (09/17) The remedies provided in this Contract are cumulative and may be exercised concurrently or separately.  In the event of any Material Breach by Contractor, which Material Breach shall not have been cured as agreed to between the Parties, the City shall have the ability to pursue the City's rights at law or equity.  The exercise of any one remedy shall not constitute an election of one remedy to the exclusion of any other.

6.6   <u>Cost of Cover</u>. (09/17) In the event of termination of this Contract by the City due to a Material Breach by Contractor, then the City may complete the Project itself, by agreement with another contractor, or by a combination thereof.  After termination, in the event the cost of completing the Project exceeds the amount the City would have paid Contractor to complete the Project under this Contract, then Contractor shall pay to the City the amount of the reasonable excess.

**SIGNATURE PAGE**
(08/19)

Contractor represents that Contractor has had the opportunity to consult with its own independently selected attorney in the review of this Contract. Neither Party has relied upon any representations or statements made by the other Party that are not specifically set forth in this Contract.

This Contract constitutes the entire agreement between the City and Contractor and supersedes all prior and contemporaneous proposals and oral and written agreements, between the Parties on this subject, and any different or additional terms on a City purchase order or Contractor quotation or invoice.

The Parties agree that they may execute this Contract and any Amendments to this Contract, by electronic means, including the use of electronic signatures.

This Contract may be signed in two (2) or more counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same agreement.

IN WITNESS WHEREOF, the Parties hereby cause this Contract to be executed.

CONTRACTOR

*Debra Houston/Reyes*                    10/5/2023
_____        _____
Authorized Signature                          Date

Debra Houston/Reyes        President
_____
Printed Name and Title

Address:    4950 NE Martin Luther King Blvd
                   Portland, OR 97211
Phone:      971-570-4787
Email:       dhouston@northwestsuccess.org



# CITY OF PORTLAND, OREGON

Contract No.   30008600

Contract Description:   PARKS COMPREHENSIVE CUSTODIAL SERVICES

## CITY OF PORTLAND SIGNATURES:

By:      N/A                                    Date:
    Bureau Director

By:      _(signature)_                          Date: 10/16/2023
    Purchasing Agent

By:      N/A                                    Date:
    Elected Official

Approved:

By:      _(signature)_                          Date: 10/18/2023
    Office of the City Auditor

Approved as to Form:

By:      _(signature)_                          Date: 10/09/2023
    Office of City Attorney

Exhibit 3
Page 25 of 25



CITY OF

# PORTLAND, OREGON

OFFICE OF THE CITY ATTORNEY

**Robert Taylor, City Attorney**
1221 SW 4th Avenue, Suite 430
Portland, Oregon 97204
Telephone: (503) 823-4077
Fax: (503) 823-3089

VIA EMAIL ONLY

October 4, 2024

Clifford Davidson
Wilmer & Snell
601 SW 2nd Ave., Ste. 2000
Portland, OR 97204
csdavidson@swlaw.com

Whitney Stark
Albies & Stark
1500 SW First Ave., Ste. 1000
Portland, OR 97201
whitney@albiesstark.com

Re:     NW Success and SEIU Local 49 Labor Peace Agreement

Dear Mr. Davidson and Ms. Stark:

The City of Portland is in receipt of SEIU Local 49's complaints ("SEIU"), and NW Success's response, that NW Success has violated the City's labor peace requirement of our Sustainable Procurement Policy ADM 1.09. Thank you for providing the City with information about compliance with ADM 1.09.

From the information provided, it appears several facts are in dispute between the parties. SEIU has alleged that NW Success failed to engage in mediation as required by the policy. NW Success has responded that the parties were scheduled for mediation on June 4, 2024, but when NW Success determined its contract had been extended until June 2025, it proposed moving the mediation to a later date. NW Success has alleged that SEIU did not object to this proposal. SEIU responded to these allegations by stating that NW Success has never engaged in good faith bargaining and has pushed out the mediation as much as possible. SEIU did not provide information as to whether they agreed or disputed the postponed date of the mediation. Accordingly, there appears to be factual disagreements between the parties about the cause for the delayed mediation. However, what is clear is that mediation has not taken place. The City thus reminds the parties of the obligations under ADM 1.09:

> A contractor's good faith efforts to obtain Labor Peace with a labor organization must include an offer by the contractor to submit its dispute with the labor organization about the terms of Labor Peace to immediate mediation before a neutral mediator and its participation in that mediation and, if mediation is unsuccessful, an offer by the contractor to submit the dispute about the terms of

Exhibit 4
Page 1 of 2

October 4, 2024
Page 2 of 2

> Labor Peace to a prompt resolution through binding interest
> arbitration before a neutral dispute resolution organization, and its
> participation in that arbitration.

The City expects the parties to comply with these requirements, as explained in the policy, "immediately" (for mediation), and for "prompt resolution" (through binding interest arbitration). To assist the parties in meeting these requirements by providing additional guidance on the City's expectations under this policy, the City expects the parties to engage in mediation within the next 90 days. If mediation fails, the City expects the parties to engage in interest arbitration within 90 days following the failed mediation.

Thank you for your attention to these matters.

Sincerely,

Fallon Niedrist de Guzman
Deputy City Attorney
City of Portland

FN/abc

Exhibit 4
Page 2 of 2

# SNELL & WILMER

**Clifford S. Davidson**
**Partner**
O 503.443.6099  |  F 503.624.6888
csdavidson@swlaw.com

May 5, 2025

**VIA E-MAIL**

Mayor Keith Wilson
c/o Fallon Niedrist
fallon.niedrist@portlandoregon.gov

Dear Mayor Wilson:

This firm represents Northwest Success, Inc. ("Northwest Success"), a long-time security contractor with the City of Portland (the "City") through the Oregon Forward Program.

We write to address a <u>time sensitive issue</u> with the City's application of its labor peace requirement in ADM-1.09 – Sustainable Procurement Policy (the "Labor Peace Requirement") to Northwest Success. Despite Northwest Success' good faith efforts to obtain a labor peace agreement, SEIU 49 (the union negotiating with Northwest Success) refuses to submit the dispute about the terms of a labor peace agreement through binding interest arbitration.

Accordingly, Northwest Success qualifies for the good faith effort exception to the City's Labor Peace Requirement (the "Exception"). Following unsuccessful mediation, the Exception requires Northwest Success to "offer . . . to submit the dispute about the terms of Labor Peace to prompt resolution through binding interest arbitration . . . and its participation in that arbitration."[1] As the attached emails show, Northwest Success offered to go to arbitration but the union refused. Accordingly, Northwest Success cannot "participate in that [offered] arbitration" as the Exception further requires.

---

[1] That exception, found at attachment 4 to ADM 1.09, states in full:

> **Good faith effort to obtain Labor Peace:** The contractor demonstrates that it followed the notification procedures in Exception 1 and made good faith efforts to obtain Labor Peace with a labor organization but ultimately could not reach an agreement. A contractor's good faith efforts to obtain Labor Peace with a labor organization must include an offer by the contractor to submit its dispute with the labor organization about the terms of Labor Peace to immediate mediation before a neutral mediator and its participation in that mediation and, if the mediation is unsuccessful, an offer by the contractor to submit the dispute about the terms of Labor Peace to prompt resolution thorough binding interest arbitration before a neutral dispute resolution organization, and its participation in that arbitration. The contractor must demonstrate that it has a written plan for continuation of services in the event of economic interference by a labor organization.

---

# SNELL
# & WILMER

May 5, 2025
Page 2

By definition, an arbitration includes at least two parties. To be sure, it is reasonable for the Exception to require that a contractor both offer and participate in arbitration, so that the offering party must show up and participate in the arbitration too. But that assumes the union is operating in good faith and agrees to go to arbitration. That is not the case here and that is why the Exception should apply; a union's intransigence should not dictate application of the Exception. Otherwise, unions will simply bleed out the clock to force contractors to agree to whatever labor peace terms the union wants – no matter how lopsided, onerous, or unlawful.

Attached hereto are emails showing Northwest Success' good faith efforts, the union's intransigence, and the City's decision to non-renew Northwest Success's contract as a result. As you will see, the City gave Northwest Success a week and a half notice that, despite Northwest Success' offer to arbitrate, it needed to persuade an arbitrator to unilaterally set an arbitration hearing—something that is highly unusual where the parties haven't executed a contract containing an arbitration provision—or the Exception would not apply. Despite the union's refusal to arbitrate, Northwest Success nonetheless offered to unilaterally set an arbitration date with the arbitrator to comply with the Exception if given a one-day extension to do so – which the union objected to and which the arbitrator found highly irregular. But the City declined that extension request, even though Northwest Success told the City that it had identified an appropriate arbitrator with the specialized labor experience specified in the Exception and asked for a single day to obtain an arbitration date if possible.

The Exception vests in the Mayor's Office final say over whether a contractor subject to the Labor Peace Requirement qualifies for the Exception. That is why we write to you today. Northwest Success requests that the Mayor's Office determine that Northwest Success meets the Exception and, accordingly, waive the Labor Peace Requirement for Northwest Success' security contract with the City.

Given the time sensitive nature of the City's non-renewal, Northwest Success requests that the Mayor's Office apply the Exception immediately. Please let us know if any further information would be helpful – including any additional correspondence between the parties. I am available to discuss with you or your representative at your convenience.

Sincerely,

Snell & Wilmer L.L.P.

*/s/ Clifford S. Davidson*

Clifford S. Davidson

CSD

4936-0942-5983

Exhibit 5
Page 2 of 13

**Johnson, Kaia**

| | |
|---|---|
| **From:** | Davidson, Clifford |
| **Sent:** | Monday, April 21, 2025 8:08 AM |
| **To:** | Niedrist de Guzman, Fallon |
| **Subject:** | RE: Update on Arbitration for NW Success/SEIU |

Thanks and certainly. Could we do 10?

**Clifford S. Davidson** (he/him/his)

**O:** 503.443.6099
csdavidson@swlaw.com

## SNELL
## & WILMER
swlaw.com | LinkedIn

**From:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Sent:** Monday, April 21, 2025 8:03 AM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Subject:** Re: Update on Arbitration for NW Success/SEIU

**[EXTERNAL]** fallon.niedrist@portlandoregon.gov

Hi Cliff -

I thought I responded to this email, but apparently I had not! Thank you for the update, and we have taken care of providing direction to Mr. Blade concerning communications about the contract. Sorry for the confusion — he is on a different team than the one we previously discussed.

Do you have some time today to have a quick phone chat?

Thanks!

F

**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)

**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

Exhibit 5
Page 3 of 13

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Wednesday, April 9, 2025 10:10 AM
**To:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Update on Arbitration for NW Success/SEIU

Good morning, Fallon. We're awaiting word back from an arbitrator. I'll keep you posted. Again, nothing from SEIU Local 49.

I'd like to address a related issue. Jeff Blade called Darvin Pierce, Coordinator of the Oregon Forward Program and Interim Director at DAS, to say that the City is going to cancel my client's contracts with the City if my client doesn't reach terms with SEIU Local 49. This is highly inappropriate and inconsistent with the dispute resolution/termination provisions of the relevant contracts. Can you please assure me that the City (1) will allow the process with the (uncooperative) union to play out per the express terms of the Labor Peace Requirement, and (2) will initiate grievances solely through the means specified in the relevant contract(s)? And could you also maybe update Mr. Blade on where things stand: we're doing all the things and the union isn't cooperating? I can call you later this week if you'd like to discuss.

Also, although Mr. Blade likely wasn't on your radar for this, could we please keep a single channel of communication on these issues as we previously discussed?

Thanks very much.

--Cliff

---

**From:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Sent:** Thursday, March 27, 2025 9:13 AM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Subject:** Re: Update on Arbitration for NW Success/SEIU

**[EXTERNAL]** fallon.niedrist@portlandoregon.gov

---

Thanks for the update, Cliff!

F

**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)

**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

2

Exhibit 5
Page 4 of 13

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Wednesday, March 26, 2025 8:21 AM
**To:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Update on Arbitration for NW Success/SEIU

Good morning, Fallon. Sorry for the delay. I will reach out to the arbitrator this week. We took some extra time figuring out who did the right kind of labor arbitration—something I needed help with, given that labor is not my primary area of practice. I will keep you posted! (Still nothing from SEIU on this, btw.)

--Cliff

---

**From:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Sent:** Tuesday, March 25, 2025 9:54 AM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Subject:** Re: Update on Arbitration for NW Success/SEIU

**[EXTERNAL]** **fallon.niedrist@portlandoregon.gov**

---

Hi Cliff -

I wanted to follow up again to see if there was any movement on scheduling so I can update my client.

Thanks!

F

**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)

**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

---

**From:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Sent:** Monday, March 10, 2025 8:06 AM

Exhibit 5
Page 5 of 13

**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Subject:** Re: Update on Arbitration for NW Success/SEIU

Doing okay over here too, if probably way too busy!

Thanks for the update. I'm sorry to hear SEIU has been non-responsive.

F


**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)

**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Sunday, March 9, 2025 6:19 PM
**To:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** Re: Update on Arbitration for NW Success/SEIU

Hi, Fallon. I'm doing a-okay, thanks. Hope you are, too. SEIU Local hasn't respond to our offer of arbitration other than to ask us to return to mediation (as you saw), so my side is finding an available arbitrator and will set a date. That should happen within the next week or so, I hope. I'll certainly keep you posted.

Best,
Cliff

On Mar 7, 2025, at 1:17 PM, Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov> wrote:


[EXTERNAL] fallon.niedrist@portlandoregon.gov<mailto:fallon.niedrist@portlandoregon.gov>

_____

Hi Cliff -

I hope you're doing well. I was hoping to get an update on where NW Success/DPI and SEIU are in scheduling binding arbitration? Has a date yet been selected?

Thanks!

F

Exhibit 5
Page 6 of 13

Fallon Niedrist de Guzman | Deputy Attorney (She/Her)

Portland Office of the City Attorney
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov<mailto:name@portlandoregon.gov>

Equal Access Notice: The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email
cityattorneysoffice@portlandoregon.gov<mailto:cityattorneysoffice@portlandoregon.gov> for assistance.

Exhibit 5
Page 7 of 13

## Johnson, Kaia

| | |
|---|---|
| **From:** | Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov> |
| **Sent:** | Thursday, May 1, 2025 1:54 PM |
| **To:** | Davidson, Clifford; Whitney Stark |
| **Cc:** | Nucci, Benjamin |
| **Subject:** | Re: Northwest Success/SEIU Local 49 -- Offer of arbitration |

**[EXTERNAL]** fallon.niedrist@portlandoregon.gov

Hi Cliff -

I have asked my client for an extension for NW Success to obtain an arbitration date, and they have declined.

Thank you,

Fallon

**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)
**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Thursday, May 1, 2025 12:55 PM
**To:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>; Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

Fallon:

I've been trading calls with the arbitrator who, as you might imagine, finds this situation highly irregular. I can have a date set by tomorrow. May I please have until then? As you can see, I was doing my best to get this worked out and arbitrators aren't exactly in the business of setting dates unilaterally.

**Clifford S. Davidson** (he/him/his)

**O:** 503.443.6099
csdavidson@swlaw.com

# SNELL

Exhibit 5
Page 8 of 13

**& WILMER**
swlaw.com | LinkedIn

**From:** Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Sent:** Thursday, May 1, 2025 12:50 PM
**To:** Davidson, Clifford <csdavidson@swlaw.com>; Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>
**Subject:** Re: Northwest Success/SEIU Local 49 -- Offer of arbitration

**[EXTERNAL]** <mark>fallon.niedrist@portlandoregon.gov</mark>

Hi Cliff, Whitney -

As I informed Cliff about a week and a half ago, the City is at crunch time to either receive assurances of NW Success completing the final steps needed for the exception (offering and participating in binding interest arbitration) before their contract expires, or to engage in an emergency procurement to ensure continuity of our Parks janitorial services. I let Cliff know that yesterday was the last day the City realistically had to wait for the former before we needed to start our emergency procurement. At this time, given the parties have not provided a date for an arbitration and assurances that the parties will, in fact, go through arbitration, NW Success's contract will expire on June 30, and the City will be immediately moving forward with an emergency procurement.

Thank you,

Fallon

**Fallon Niedrist de Guzman | Deputy Attorney** (She/Her)
**Portland Office of the City Attorney**
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-6418 (cell)
fallon.niedrist@portlandoregon.gov

**Equal Access Notice:** The City will provide translation, interpretation, and reasonable disability access.  Please ask me, call 311, or email cityattorneysoffice@portlandoregon.gov for assistance.

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Thursday, May 1, 2025 10:56 AM
**To:** Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

Thanks, Whitney. The City has said we have to set a date immediately, otherwise Northwest Success will be ineligible for renewal in June. If the City changes its position on that, then we'd be happy to discuss your proposals with our client. Otherwise, we have no choice but to do what the City requires—given that this is their policy in the first place.

2

Exhibit 5
Page 9 of 13

Fallon: what is the City's position on this?

Thanks,
Cliff

**Clifford S. Davidson** (he/him/his)

**O:** 503.443.6099
csdavidson@swlaw.com

**SNELL & WILMER**

swlaw.com | LinkedIn

**From:** Whitney Stark <whitney@albiesstark.com>
**Sent:** Thursday, May 1, 2025 10:49 AM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

**[EXTERNAL]** whitney@albiesstark.com

Cliff,

The Union continues to believe that arbitration is premature, as the Union has asked the employer to engage in mediation in good faith, but has not received a response.  It also has a proposal outstanding, and has not received a response to that.  We reiterate our request for a response to those.

That said, turning to your request to arbitrate, the Union has several concerns about Northwest Success's position.  As an initial matter, Northwest Success has no authority to unilaterally selected an arbitrator or impose limited dates without conferral with the Union.  I do not believe NW Success has the right to select an arbitrator without input or direction from the Union, nor impose a rigid timeline.  We propose instead, when the parties agree to arbitration, that NW Success request a list of seven arbitrators from the FMCS and we can strike arbitrators from that list.  We can then also agree to a time and date that works for all parties, but I do want to advise you that I am out of town May 2 (starting tomorrow) through May 7, then my firm is headed to trial, and the Union's representative is taking a protected leave of absence from May 21, 2025 to early July.  For that reason, the dates you propose in early June will not work on our end.  If you have a different proposal for a process, please let me know and we can set a time to confer over the process for moving to arbitration, but we need to reach an agreement on that.

Thanks,

Whitney

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Monday, April 28, 2025 8:25 AM
**To:** Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

Exhibit 5
Page 10 of 13

Good morning, Whitney. The City told me that Northwest Success needs to have an arbitration date in place no later than this week, otherwise Northwest Success's contract will not be renewed. So, we have no choice but to set a date—unilaterally if necessary. Please let me know by Wednesday which of the dates listed in my earlier email work for your client.

That said, I will present the alternative option to my client and get back to you. But we'll need to do this on a parallel track to setting the arbitration, which we can abandon if we reach an agreement before the hearing date.

--Cliff

**Clifford S. Davidson** (he/him/his)

**O:** 503.443.6099
csdavidson@swlaw.com

**SNELL**
**& WILMER**
swlaw.com | LinkedIn

---

**From:** Whitney Stark <whitney@albiesstark.com>
**Sent:** Friday, April 25, 2025 12:43 PM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

**[EXTERNAL]** whitney@albiesstark.com

---

Cliff,

It appears there has been a misunderstanding.  When I wrote on behalf of the Union on February 3, 2025, the Union's position was that there was more work to be done and continued mediation efforts would be worthwhile.  You wrote in response that you would discuss the substance of the proposal with our client, which I understood to mean that you would discuss the substance of the proposal to return to mediation.  We did not respond to the request for arbitration because we were waiting for a response to that proposal, which we never received.

The Union continues to believe the arbitration is premature, for the reasons explained in our February 3, email and we still have received a response to that.  Can you please let us know the employer's position?

Thanks,

Whitney

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Thursday, April 24, 2025 10:56 AM
**To:** Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

Exhibit 5
Page 11 of 13

Hi, Whitney. To be sure we're on the same page, I attach the thread between us and the CAO on February 3. 20 minutes after I emailed you on February 3, you emailed the City Attorney accusing us of mediating in bad faith. That didn't exactly make our client inclined to return to mediation. We proposed arbitration and didn't hear from your client, so we're now setting one. Please let me know by the end of this week which dates work for you.

I'm happy to take other proposals to my client. On February 3, you wrote: "SEIU's current position is that it would agree to the same process as is available under PECBA for this group to organize, which is the same process as direct employees of the City of Portland." Is that still SEIU's position? If we agree to something without arbitration, great, but we need to set a date.

Thanks,
Cliff

---

**From:** Whitney Stark <whitney@albiesstark.com>
**Sent:** Tuesday, April 22, 2025 1:26 PM
**To:** Davidson, Clifford <csdavidson@swlaw.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** RE: Northwest Success/SEIU Local 49 -- Offer of arbitration

[EXTERNAL] whitney@albiesstark.com

---

Cliff,

Thank you for reaching out regarding this matter.  As you know, the Union made a request on February 3, asking the Northwest Success return to mediation because of concerns that the Union articulated about the mediation. In that same email, we also conveyed an update regarding the Union's position that we think is likely to make a mediation more successful.
 We have not heard back in response to that request and the concerns we raised.  Please provide a response to that request.

Thanks,

Whitney


Whitney Stark
**ALBIES & STARK**
1500 SW First Avenue, Suite 1000 | Portland, Oregon 97201
T:  503-308-4773  | F:  503-427-9292
*Pronouns:  she/her*

---

**From:** Davidson, Clifford <csdavidson@swlaw.com>
**Sent:** Monday, April 21, 2025 11:48 AM
**To:** Whitney Stark <whitney@albiesstark.com>
**Cc:** Nucci, Benjamin <bnucci@swlaw.com>; Niedrist de Guzman, Fallon <Fallon.Niedrist@portlandoregon.gov>
**Subject:** Northwest Success/SEIU Local 49 -- Offer of arbitration

Exhibit 5
Page 12 of 13

Hi, Whitney. I hope you're well notwithstanding the demise of the Republic.

Pursuant to the City's labor peace requirement, Northwest Success offers binding interest arbitration before Eric Lindauer on June 5, 6, or 16. Please let me know this week which of these dates would work for you, or please propose additional ones. We then can let Mr. Lindauer know and schedule a preliminary conference to discuss logistics and such.

Thanks,
Cliff

**Clifford S. Davidson** (he/him/his)

**O:** 503.443.6099
csdavidson@swlaw.com

## SNELL
## & WILMER

swlaw.com | LinkedIn

601 SW 2nd Avenue | Suite 2000 | Portland, OR 97204

Albuquerque | Boise | Dallas | Denver | Las Vegas | Los Angeles | Los Cabos | Orange County | Palo Alto | Phoenix | Portland | Reno | Salt Lake City | San Diego | Seattle | Tucson | Washington, D.C.

This email and any attachments may be confidential and protected by legal privilege. If you have received this message in error, please do not disclose the contents to anyone. Please notify the sender by return email and delete this email as well as any attachments from your system.

Exhibit 5
Page 13 of 13