FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST SUCCESS, INC.,** | **3:25-cv-00970-AR** |
| Plaintiff, | **DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS** |
| v. | |
| **CITY OF PORTLAND,** a municipal corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ........................................................................................... 1

MOTION ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

    I.      INTRODUCTION .......................................................................... 1

    II.     FACTUAL BACKGROUND ......................................................... 1

    III.    LEGAL STANDARD ..................................................................... 4

    IV.    ARGUMENT ................................................................................... 4

          1.       The NLRA does not preempt the City's procurement requirement ............ 4

          2.       The City's labor peace requirement is not a regulation and therefore is not subject to preemption by the NLRA. ........................................................ 5

               a.      The City acted as a market participant in contracting for janitorial services. ................................................................................. 6

               b.      The NLRA does not evince an intent to preempt the City's labor peace requirement. ...................................................................... 10

          3.       City councilmembers' purported motivations are not relevant to NLRA preemption analysis. .................................................................................. 10

          4.       The City's procurement requirement does not violate the Oregon Forward Program ..................................................................................................... 11

          5.       The City may set the requirements for City contracts. ............................. 12

          6.       The City's requirement governs "labor standards" and is thus allowable under the Oregon Forward program. ........................................................ 13

          7.       The City's labor peace requirement does not violate Oregon's Privileges and Immunities Clause ............................................................................. 18

          8.       City contractors and third-party unions are not "similarly situated"; therefore, the Privileges and Immunities Clause is inapplicable. ............. 19

          9.       The City has a rational basis for treating janitorial contractors differently than other contractors .............................................................................. 20

          10.     The City's labor peace requirement does not violate the first amendment. .................................................................................................. 22

          11.     The City's labor peace requirement is not unconstitutionally vague ........ 26

CONCLUSION .......................................................................................................... 29

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

# TABLE OF AUTHORITIES

Page(s)

Cases

*Airline Service Providers Ass'n* v. *Los Angeles World Airports,*
    873 F.3d 1074 (9th Cir. 2017)....................................................... 4, 5, 6, 7, 8, 9, 10, 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................... 4

*Bhd. of Locomotive Engineers v. Louisville & N. R. Co.,*
    373 U.S. 33 (1963) ......................................................................................... 17

*Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of*
    *Mass./R.I., Inc. (Boston Harbor),*
    507 U.S. 218 (1993) ....................................................................................... 5, 10

*Cardinal Towing & Auto Repair, Inc. v. City of Bedford,*
    180 F.3d 686 (5th Cir. 1999)......................................................................... 6

*Casala v. Kotek,*
    2025 WL 1442792 (D. Or. May 20, 2025)..................................................... 25

*Chamber of Com. of U.S. v. Brown,*
    554 U.S. 60 (2008) ......................................................................................... 5, 8

*City of Klamath Falls v. Winters,*
    619 P.2d 217 (Or. 1980)................................................................................. 19

*Comcast Corp. v. Dept. of Rev.,*
    356 Or. 282 (2014) ......................................................................................... 16

*Ctrl Alt Destroy v. Elliott,*
    2025 WL 790963 (S.D. Cal. Mar. 12, 2025).................................................. 23

*DCBS v.Muliro,*
    359 Or. 736 (2016) ......................................................................................... 16

*DePaul Industries v. City of Portland,*
    Case No. 3:21-CV-01792-HL, 2022 WL 3683799 ......................................... 14, 16

*Diaz v. Kubler Corp.,*
    785 F.3d 1326 (9th Cir. 2015)........................................................................ 14

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
    498 F.3d 1031 (9th Cir. 2007) .................................................................... 5, 6, 10

*Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) .............................................................................................. 26

*Gateway Coal Co.* v. *United Mine Workers of Am.*,
    414 U.S. 368 (1974) .............................................................................................. 17

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ........................................................................................ 26, 27

*Halperin v. Pitts*,
    287 P.3d 1069 (Or. 2012) ...................................................................................... 15

*Hanlester Network v. Shalala*,
    51 F.3d 1390 (9th Cir. 1995) ................................................................................ 27

*HomeAway.com, Inc. v. City of Santa Monica*,
    918 F.3d 676 (9th Cir. 2019) ................................................................................ 23

*Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC*,
    390 F.3d 206 (3d Cir. 2004) .................................................................................... 9

*Human Serv. Council of New York v. City of New York*,
    2024 WL 4792004 (S.D.N.Y. Nov. 14, 2024) ................................................ 23, 24

*In re Marriage of Crocker*,
    22 P.3d 759 (Or. 2001) .......................................................................................... 20

*Int'l Franchise Ass'n v. City of Seattle*,
    803 F.3d 389 (2015) .............................................................................................. 23

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. N.L.R.B.*,
    *834 F.2d 816 (9th Cir. 1987)* .............................................................................. 22

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
    623 F.3d 1011 (9th Cir. 2010) ..................................................................... 6, 7, 9, 11

*Kramer v. City of Lake Oswego*,
    446 P.3d 1 (Or. 2019) ............................................................................................ 20

*Matter of Marriage of Perlenfein*,
    848 P.2d 604 (Or. 1993) ........................................................................................ 14

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Metro. Life Ins. Co. v. Massachusetts,*
  471 U.S. 724 (1985) ........................................................................ 5

*Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cnty.,*
  431 F.3d 277 (7th Cir. 2005) .......................................................... 8, 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
  540 F.3d 1049 (9th Cir. 2008) ........................................................ 4

*MSP Small Business Concessions Alliance v.Metropolitan Airports Comm'n,*
  *2025* WL 1295615 (D. Minn. May 5, 2025) .................................. 24, 25

*N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin,*
  431 F.3d 1004 (7th Cir. 2005) ........................................................ 11

*N.L.R.B. v. Radio & Television Broad. Eng. Union,*
  364 U.S. 573 (1961) ........................................................................ 17

*NLRB v. Gissel Packing Co.,*
  395 U.S. 575 (1969) ........................................................................ 23

*NW Metals, Inc. v. Driver & Motor Vehicle Servs. Div.,*
  498 P.3d 869 (Or. Ct. App. 2021) .................................................. 15

*Parker v. Levy,*
  417 U.S. 733 (1974) ........................................................................ 27

*PGE v. Bureau of Labor & Indus.,*
  859 P.2d 1143 (Or. 1993) .............................................................. 14, 15

*Plummer v. Donald M. Drake Co.,*
  320 P.2d 245 (Or. 1958) ................................................................ 20

*Rose* v. *Locke,*
  423 U.S. 48 (1975) .......................................................................... 26

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
  547 U.S. 47 (2006) .......................................................................... 23

*Ryman v. Sears, Roebuck & Co.,*
  505 F.3d 993 (9th Cir. 2007) .......................................................... 14

*S. Wasco Cnty. Ambulance Serv., Inc. v. State,*
  968 P.2d 848 (Or. Ct. App. 1998) .................................................. 20, 22

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Loc. Union No.*,
   680 F.2d 594 (9th Cir. 1982) ........................................................................... 17

*Sherwood Sch. Dist. 88J v. Wash. Cnty. Educ. Serv. Dist.*,
   6 P.3d 518 (Or. Ct. App. 2000) ............................................................... 20, 22

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...................................................................................... 22

*State v. Dickerson*,
   356 Or. 822 (2015) ........................................................................................ 16

*State v. Gaines*,
   206 P.3d 1042 (Or. 2009) ....................................................................... 14, 15

State v. *Goacher*,
   466 P.3d 1047 (Or. Ct. App. 2020) .............................................................. 20

*Tomlin v. Boeing Co.*,
   650 F.2d 1065 (9th Cir. 1981) ..................................................................... 14

*U.S. West Communications v. City of Eugene*,
   81 P.3d 702 (Or. 2003) ................................................................................. 15

*United States v. Lucero*,
   989 F.3d 1088 (9th Cir. 2021) ..................................................................... 26

*United States v. Powell*,
   423 U.S. 87 (1975) ........................................................................................ 27

*Van Susteren v. Jones*,
   331 F.3d 1024 (9th Cir. 2003) ..................................................................... 19

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 ........................................................................................... 27, 28

*Wisconsin Dep't of Industry v. Gould Inc.*,
   475 U.S. 282 (1986) ................................................................................... 8, 9

*Wright v. Incline Vill. Gen. Improvement Dist.*,
   665 F.3d 1128 (9th Cir. 2011) ..................................................................... 19

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Statutes

29 U.S.C. §152(5) ............................................................................................ 2, 17, 25

29 U.S.C. § 151 ...................................................................................................... 4

29 U.S.C. § 158(b)(4) ........................................................................................... 18

42 U.S.C. § 1983 .................................................................................................... 4

Oregon Constitution, art. I, § 20 ........................................................................... 4

Oregon Revised Statutes §] 663.110 .................................................................. 25

ORS 279.835(6) ..................................................................................................... 3

ORS 279.840 ........................................................................................................ 12

ORS 279.845(1)(c) ............................................................................................... 15

ORS 279.850 ........................................................................................................ 18

ORS 279.850(1)(a) ............................................................................................... 12

ORS 279.850(1)(b)(A) ................................................................................... 13, 14

ORS 279.850(2) .................................................................................................... 14

ORS 279.850(2)(a) ..................................................................................... 14, 15, 16

Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 4

LR. 7-1 ................................................................................................................... 1

Regulations

OAR 125-055-0010(1) .......................................................................................... 12

OAR 125-055-0040(8) ........................................................................... 15, 16, 17, 18

Other Authorities

Black's Law Dictionary (11th ed. 2019) ............................................................... 16

Merriam-Webster Dictionary ......................................................................... 16, 17

Page  vii  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

## LR 7-1 CERTIFICATION

On July 9, 2025, counsel for Defendant City of Portland ("the City") conferred in good faith with counsel for Plaintiff Northwest Success, Inc. ("NW Success") about the subject of this motion. The issue could not be resolved without the assistance of the Court.

## MOTION

The City moves the Court to dismiss Claims 1 and 2 of NW Success's Complaint ("Complaint"), including all counts therein, for failure to state a viable claim for relief. In support of this motion, the City relies upon Fed. R. Civ. P. 12(b)(6), the points and authorities below, the files and record of this case, and such other matters as the Court may properly consider in ruling on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Portland City Council ("City Council") adopted a labor peace agreement requirement for City contracts for security, janitorial, and industrial laundry services. Pursuant to that procurement requirement, the City will not award a contract for those services unless (1) the contractor has an agreement with a labor organization that requires the labor organization to refrain from any economic interference with the contractor's performance of the contracted services, or (2) one of the specified exceptions to the labor peace requirement is satisfied. NW Success challenges the legality of the City's procurement requirement. As will be demonstrated below, NW Success's claims should be dismissed.

### II.    FACTUAL BACKGROUND

In 2003, the City Council adopted a Sustainable Procurement Policy, codified as ADM-1.09. Complaint ¶ 8. The procurement policy provides guidelines for City purchases of goods and services. In 2020, the City Council amended the procurement policy to provide that the City will award janitorial, security, and industrial laundry service contracts only to contractors that meet a labor peace agreement requirement. Complaint ¶ 9. That labor peace requirement was further

Page 1  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

amended in 2022 to include a good faith exception. Complaint ¶ 12. The City's stated reason for its labor peace requirement is as follows:

> The City has proprietary interests in avoiding picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational. Therefore, for janitorial, security, and industrial laundry service contracts, a contractor shall, as a condition of being awarded a contract, provide written documentation of "Labor Peace" with a labor organization that represents employees providing similar services in the states of Oregon or Washington and that represents or seeks to represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services to carry out a contract with the City.

Complaint ¶ 12, Ex. 1, p. 1. The policy defines "labor peace" as "a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services." *Id.*

That good faith exception requires contractors to take the following steps to be exempt from obtaining a labor peace agreement:

> A contractor's good faith efforts to obtain Labor Peace with a labor organization must include an offer by the contractor to submit its dispute with the labor organization about the terms of Labor Peace to immediate mediation before a neutral mediator and its participation in that mediation and, if the mediation is unsuccessful, an offer by the contractor to submit the dispute about the terms of Labor Peace to prompt resolution thorough binding interest arbitration before a neutral dispute resolution organization, and its participation in that arbitration. The contractor must demonstrate that it has a written plan for continuation of services in the event of economic interference by a labor organization.

*Id.* at p. 2.

Page 2 – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

NW Success is a company that provides custodial services to the City. Complaint ¶ 17. NW Success also qualifies for the State's Oregon Forward program, which requires public agencies to give priority to contractors that have a specified percentage of their work performed by people experiencing disabilities. Complaint ¶ 1; *see* ORS 279.835(6). NW Success originally contracted with the City for custodial services on October 1, 2023, after the City had determined NW Success had met good faith exception to the City's labor peace requirement. Complaint ¶¶ 16–17. The contract initially expired on June 30, 2024, and the parties extended the contract to June 30, 2025. Complaint ¶ 18. The contract has since been extended to August 31, 2025. *Id.*

On October 4, 2024, the City sent a letter to NW Success and SEIU Local 49 regarding a dispute between the parties about engaging in the requirements for the City's good faith exception to the labor peace requirement. Complaint ¶ 19, Ex. 4. In that letter, the City provided the following direction to NW Success to comply with the City's policy:

> To assist the parties in meeting these requirements by providing additional guidance on the City's expectations under this policy, the City expects the parties to engage in mediation within the next 90 days. If mediation fails, the City expects the parties to engage in interest arbitration within 90 days following the failed mediation.

*Id.* at p. 2.

NW Success and SEIU Local 49 engaged in mediation on or before December 23, 2024, which was within 90 days of the City's letter, and offered binding arbitration to SEIU Local 49 that same day. Complaint ¶ 21. NW Success again offered binding interest arbitration to SEIU Local 49 on April 21, 2025. Complaint ¶ 23. The City provided NW Success a deadline of April 30, 2025 (a week and a half from April 21) to set a date for arbitration, which NW Success did not do. Complaint ¶¶ 25, 27. On May 1, 2025, the City informed NW Success that it would not renew the company's contract. Complaint ¶ 27.

NW Success then filed this lawsuit on June 5, 2025, alleging, *inter alia*, that the labor peace requirement was preempted by federal and state law and violated the federal and state constitutions. Complaint ¶¶ 34–81. NW Success's first claim for relief seeks a declaratory

Page 3  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

judgment that the labor peace agreement requirement is invalid for three reasons. First, NW Success alleges that the requirement is preempted by the National Labor Relations Act ("NLRA"). Complaint ¶¶ 34–40. Second, NW Success contends that the requirement violates Oregon law by placing an "impermissible condition on Oregon Forward contractors." Complaint ¶¶ 41–52. Third, NW Success contends that the requirement violates the Privileges and Immunities Clause of the Oregon Constitution, art. I, § 20, because the requirement "privilege[s] labor unions over other private organizations." Complaint ¶¶ 53–63. NW Success's second claim contains two counts for relief and is brought under 42 U.S.C. § 1983. First, NW Success claim alleges that the labor peace requirement violates the First Amendment to the U.S. Constitution by chilling expressive activity. Complaint ¶¶ 64–71. Second, NW Success contends that the labor peace requirement violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because the requirement is impermissibly vague. Complaint ¶¶ 72–81.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion will be granted if the factual allegations in a complaint, taken as true, do not state a viable claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the Court may consider the complaint's allegations as well as "materials incorporated into the complaint by reference[] and matters of which the court may take judicial notice*." Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

## IV.    ARGUMENT

### 1.    The NLRA does not preempt the City's procurement requirement.

NW Success claims that the NLRA, 29 U.S.C. § 151 *et seq.*, preempts the City's labor peace agreement requirement. Complaint ¶ 27. NW Success's claim fails because the preemption doctrine only applies to local government *regulation*, and here, the City is acting in its capacity as a market participant in placing conditions on the award of City contracts. The Ninth Circuit upheld a nearly identical labor peace requirement against an NLRA preemption challenge under the "market participant" presumption in *Airline Service Providers Ass'n* v. *Los Angeles World*

*Airports,* 873 F.3d 1074, 1079–80 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 2740 (2019). This Court should hold the same and dismiss NW Success's Claim 1, Count 1 with prejudice.

  **2.    The City's labor peace requirement is not a regulation and therefore is not subject to preemption by the NLRA.**

The NLRA regulates labor-management relations for most private-sector employees and employers. In deciding whether a federal law preempts a state or local statute, the court's task is to ascertain Congress's intent in enacting the federal statute at issue. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 738 (1985). While the NLRA "contains no express pre-emption provision," the Supreme Court has interpreted the NLRA to preempt state or local regulation of "activity that the NLRA protects, prohibits, or arguably protects or prohibits" and of "conduct that Congress intended [to] be unregulated because left to be controlled by the free play of economic forces." *Chamber of Com. of U.S. v. Brown,* 554 U.S. 60, 65 (2008) (internal quotation marks omitted).

The Supreme Court has emphasized that, generally, "pre-emption doctrines apply only to state [or local] *regulation*." *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc. (Boston Harbor)*, 507 U.S. 218, 227 (1993) (emphasis added). Thus, when a local government buys services or manages property as a private party would, it acts as a "market participant," not as a regulator, and courts are to presume that its actions are not subject to preemption. *Id.* at 229; *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1079 (9th Cir. 2017). Only if a federal statute evinces an intent to preempt such proprietary actions by a local government is the presumption overcome, and the local government action preempted. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1041–42 (9th Cir. 2007). Here, the City acted as a market participant in soliciting janitorial services for its parks, and therefore it is subject to the presumption that its Labor Peace Requirement is not preempted. The NLRA does not evince an intent to preempt the City's proprietary actions, and thus, the City is entitled to the presumption against preemption.

Page 5  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

        *a. The City acted as a market participant in contracting for janitorial services.*

To decide whether a local government is acting as a "market participant" or as a regulator, courts apply the two-prong test first articulated in *Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999). *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1023 (9th Cir. 2010); *accord, e.g., Engine Mfrs. Ass'n*, 498 F.3d at 1041. Under that test, the first prong questions if the challenged governmental action is undertaken in pursuit of the "efficient procurement of needed goods and services," as one might expect of a private business in the same situation. *Johnson*, 623 F.3d at 1023 (quoting *Cardinal Towing,* 180 F.3d at 693). The second prong asks, "[D]oes the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than [to] address a specific proprietary problem?" *Id.* at 1023–24 (quoting *Cardinal Towing,* 180 F.3d at 693). If the answer to *either* question is "yes," the governmental entity is acting as a market participant, and the government entity is afforded a presumption that federal preemption does not apply. *Id.* at 1024.

Importantly, a policy aimed at minimizing service disruptions—like a labor peace requirement—is not necessarily "regulatory" in nature just because it is a poor fit for the intended goal. Instead, evidence that an alternative strategy could more effectively or cheaply accomplish the same goals "bears only on whether [a local government] made a good business decision, not on whether it was pursuing regulatory, as opposed to proprietary, goals." *Johnson*, 623 F.3d at 1025. Further, a local government may entertain non-economic purposes in its policies and yet still rely on the market participant doctrine. *Los Angeles World Airports,* 873 F.3d at 1084; *Engine Mfrs. Ass'n*, 498 F.3d at 1046 ("That a state or local governmental entity may have policy goals that it seeks to further through its participation in the market does not preclude the doctrine's application, so long as the action in question is the state's own market participation.")

*Los Angeles World Airports* is illustrative in applying the *Cardinal Towing* analysis to a city's contractual labor peace agreement requirement. In that case, the City of Los Angeles

Page 6  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

operated Los Angeles International Airport ("LAX") and required third-party businesses which refueled and loaded planes, took baggage and tickets, helped disabled passengers, and provided similar services to enter into a labor peace agreement with any employee organization which requested one. *Los Angeles World Airports*, 873 F.3d at 1077. The City of Los Angeles required any labor peace agreement to be "binding and enforceable" and include provisions prohibiting picketing, boycotting, stopping work, or "any other economic interference." *Id.* Further, the policy required that if agreement was not reached in sixty days, then the dispute must be submitted to mediation, and if mediation is unsuccessful, to binding arbitration. Two trade associations challenged the labor peace agreement requirement, arguing that because City of Los Angeles owned LAX, the contract conditions were effectively municipal regulations which were preempted by, *inter alia*, the NLRA. *Id.*

The Ninth Circuit applied the *Cardinal Towing* test and found that the City of Los Angeles was acting as a market participant, and therefore their labor peace agreement requirement was not preempted. First, under the "efficient procurement" prong, the Ninth Circuit found that the City of Los Angeles was "attempting to avoid disruption of its business" and explained:

> If a private entity operated LAX, that entity would have a pressing interested to avoid strikes, picket lines, boycotts, and work stoppages. Those interests are not any less pressing simply because the City rather than a private business operates the airport, and labor peace agreements are one way to protect those interests.

*Id.* at 1080.

Under the "narrow scope" prong, the Ninth Circuit found that the City of Los Angeles' labor peace agreement requirement was "narrowly tied to a 'specific proprietary problem': service disruptions at LAX, which the City manages as proprietor." *Id.* at 1082 (*quoting Johnson*, 623 F.3d at 1024). The Ninth Circuit also found that the labor peace agreement requirement did not "hamper service providers' operations elsewhere." *Id.* The Ninth Circuit relied on numerous factors to distinguish the City of Los Angeles' regulation from similar regulations found to be preempted in other cases. First, the City of Los Angeles' requirement did not "govern all of the City's contractual

Page 7 – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

relationships, and the City [had] a clear proprietary interest in avoiding labor disruptions of airport services." *Id.* at 1082–83 (distinguishing from *Wisconsin Dep't of Industry v. Gould Inc.*, 475 U.S. 282 (1986)). Second, the Ninth Circuit approved that the City of Los Angeles' requirement was "limited to addressing the needs of LAX and [did] not announce any sort of regulatory policy, require complicated recordkeeping, or create litigation risks." *Id.* at 1083 (distinguishing from *Chamber of Commerce of the United States of Am. v. Brown*, 554 U.S. 60 (2008)). Finally, the Ninth Circuit distinguished the City of Los Angeles' policy from labor peace requirements which "impose[] several additional conditions favorable to union organizing and do little to avoid service disruptions." *Id.* (distinguishing from *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cnty.,* 431 F.3d 277 (7th Cir. 2005)).

Here, the City is acting as a market participant under either prong of the *Cardinal Towing* test. Under the "efficient procurement" prong, the City, like the City of Los Angeles in *Los Angeles World Airports*, is attempting to avoid disruption of its business by requiring labor peace to avoid work stoppages. The labor peace requirement applies only to three specific industries—janitorial, industrial laundry, and security—which the City deemed as "essential" to keeping all other City services operational. Complaint ¶ 12, Ex. 2, p. 1. In this particular scenario, the City would have to close a vital public service—publicly available restrooms—should janitorial services be disrupted by labor unrest. *See* Complaint ¶ 17, Ex. 3, pp. 25. The City's need for janitorial services mirrors that of any private entity which operates facilities that are public-facing. For this reason, the City is a "market participant" under the "efficient procurement" prong.

Similarly, the City is a "market participant" under the "narrow scope" prong of the *Cardinal Towing* test. Like the City of Los Angeles in *Los Angeles World Airports*, the City's labor peace requirement is "narrowly tied to a 'specific proprietary problem'": in this case, service disruptions at City parks and other properties of which the City manages as proprietor. Importantly, the labor peace requirement does not apply to all contractual relations with the City; instead, it is narrowly tailored to three industries which are key for continuity of all City services. The City's

Page 8 – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

labor peace requirement does not announce any regulatory requirements, and in fact, specifically indicates that the City has no interest in the labor and management relations of contractors. Complaint ¶ 12, Ex. 2, p. 1 ("Nor is this section intended to enact or express any generally applicable policy regarding labor/management relations, or to regulate those relations in any way, or to provide a preference for any outcome in the determination of employee preference regarding union representation."). The labor peace requirement does not provide favorable terms to unions, and instead, like the City of Los Angeles' policy, only requires a bar on labor disruptions during the course of the contract. As such, "[n]othing in the text of [the labor peace requirement] or in the Complaint's allegations suggests that [the labor peace requirement] will be enforced" beyond contracts for these specific services "or that [the labor peace requirement] will hamper service providers' operations elsewhere." *Los Angeles World Airports,* 873 F.3d at 1082; *see also Hotel Emps. & Rest. Emps. Union, Loc. 57 v. Sage Hosp. Res., LLC,* 390 F.3d 206, 217–18 (3d Cir. 2004) (upholding municipality's "specifically tailored" labor neutrality requirement for a public financed development project).[1]

While NW Success may argue that the City's policy is not well-suited to halting work disruptions, the Ninth Circuit already has held that ill-fitting policies are not, in and of themselves, indicative that the policy is regulatory. The City's conduct is identical in almost all respects to the City of Los Angeles' conduct, where the Ninth Circuit held the City of Los Angeles to be a "market participant" in *Los Angeles World Airports*; thus, the City here is a "market participant" under the "narrow scope" prong.

---

[1] By contrast, the NLRA preempted the county ordinance in *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County,* 431 F.3d 277 (7th Cir. 2005), because the ordinance imposed requirements that applied *regardless* of whether employees worked on county contracts. Id. at 279. Likewise, the NLRA preempted the statute in *Wisconsin Department of Industrial, Labor & Human Relations v. Gould Inc.,* 475 U.S. 282 (1986), because the state government was seeking to control "private parties' conduct unrelated to the performance of contractual obligations to the state." *See Johnson*, 623 F.3d at 1026 (discussing *Gould*). This is not the case for the City's labor peace requirement.

Page 9  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

Because the City is a "market participant" under either prong of the *Cardinal Towing* test, the City's labor peace requirement is entitled to the presumption that it is not preempted by federal law.

        b.   *The NLRA does not evince an intent to preempt the City's labor peace requirement.*

Because the City is acting as a market participant in this case, the court must next consider whether there is "any express or implied indication" that Congress intended the NLRA to preempt actions taken by states and local governments in their capacity as market participants. *Engine Mfrs*. *Ass'n.,* 498 F.3d at 1042 (quoting *Boston Harbor*, 507 U.S. at 231 (1993)). Absent such an indication, the presumption that a local government's proprietary actions are not preempted prevails. *Id.;* Los Angeles World Airports, 873 F.3d at 1085.

In *Boston Harbor*, the Supreme Court held that the NLRA does not preempt state or local government actions taken as a market participant. 507 U.S. at 231–32. The Supreme Court explained, "In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its purely proprietary interests, and where analogous private conduct would be permitted, this Court will not infer such a restriction." Further, the Supreme Court noted, "We have held consistently that the NLRA was intended to supplant state labor regulation, not all legitimate state activity that affects labor." *Id.* at 227.

The Ninth Circuit in *Los Angeles World Airports* relied on the Supreme Court's analysis and conclusion in *Boston Harbor* to summarily conclude that "because the City is acting as a market participant here, Plaintiffs have thus not stated a claim for preemption under the NLRA." 873 F.3d at 1085. The same conclusion applies here: because the City is acting as a market participant when it requires labor peace of its janitorial contractors for its parks, NW Success cannot state a claim for preemption under the NLRA.

**3.    City councilmembers' purported motivations are not relevant to NLRA preemption analysis.**

NW Success alleges that a City policy advisor who was the purported "architect" of the

Page 10  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

City's labor peace requirement enacted the requirement to "allow[] unions to build in roads into non-unionized shops. . . ." Complaint ¶ 11. NW Success does not allege that any City *elected official* made such comments and concedes that the email mentioning such "in roads" was not even drafted by the policy advisor in question. Complaint ¶ 11, n. 3). Regardless, legislative action that is not otherwise preempted by the NLRA does not become preempted because of individual legislators' (alleged) political motivations for voting for that action; thus, NW Success's allegations about union "in roads" should be treated for what it is: a red herring.

The Ninth Circuit has held that "Congress did not intend for the NLRA's . . . preemptive scope to turn on state [or local] officials' subjective reasons for adopting a regulation or agreement." *Johnson,* 623 F.3d at 1026; *see also N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin,* 431 F.3d 1004, 1007 (7th Cir. 2005) ("*Lavin"*) ("Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment.") (emphasis in original). In *Los Angeles World Airports,* the Ninth Circuit quoted with approval the Seventh Circuit's observation "that lurking political motives are an inevitable part of a public body's actions and are not 'a reason for invalidity.'" 873 F.3d at 1084 (quoting *Lavin*, 431 F.3d at 1007). The Ninth Circuit upheld the airport labor peace requirement even though "at least one organization of service employees advocated for inclusion of [the labor peace requirement] when the City was revising its standard . . . licensing contract." *Id.* at 1077. As such, the alleged motivations of city councilmembers are irrelevant.

For the foregoing reasons, this Court should hold that the City's labor peace requirement is not preempted by the NLRA and dismiss Claim 1, Count 1 with prejudice.

### 4. The City's procurement requirement does not violate the Oregon Forward Program.

NW Success asserts that the City's labor peace requirement places an "impermissible condition on Oregon Forward contractors" because the requirement is not a "local ordinance or resolution that governs labor standards." Complaint at p. 7 & ¶¶ 48–49. This argument fails for

Page 11  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

two independent reasons. First, the requirement imposes a specification for City contracts that applies to all prospective contractors, so it is permissible under the Oregon Forward contracting scheme whether or not it governs "labor standards." Second, the labor peace requirement *does* govern "labor standards."

### 5.    The City may set the requirements for City contracts.

The Oregon Forward program is a statutory scheme with the purpose of providing job opportunities to individuals with disabilities by requiring public agencies to first determine whether Oregon Forward-qualified non-profit organizations can provide for the procurement needs of the public agency before going through a full procurement process. ORS 279.840; ORS 279.850(1)(a). However, public agencies are only required to procure goods and services through Oregon Forward contractors "provided that the product or service is of the *appropriate specifications*." *Id.* (emphasis added). The Oregon Department of Administrative Services ("DAS") administers the regulations governing the Oregon Forward program, and those regulations similarly recognize that a public agency must procure a service from an Oregon Forward contractor only if the service is "of specifications appropriate to the Agency's procurement needs." OAR 125-055-0010(1). The only substantive limit the DAS regulations place on public agencies' discretion in adopting specifications for the award of contracts is that specifications may not be "develop[ed]" to "inhibit or tend to discourage Public Contracting with [Oregon Forward] providers for the acquisition of Oregon Forward-produced products or services." OAR 125-055-010(1)(a). Otherwise, nothing in the Oregon Forward statutes or regulations prohibit a public agency from specifying that service contractors must protect the agency from service disruptions or limit contract liability, whether by meeting bonding, insurance, and indemnity requirements, or by meeting a labor peace agreement requirement as in the case of the City.

Here, the City's labor peace requirement for contractors in specific industries is a "specification appropriate to the [City's] procurement needs." As the City's labor peace

Page 12  –  DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

requirement itself explains, the City needs to "avoid[] picketing, work stoppages, boycotting, strikes, and other economic interference with the performance of contracted janitorial, security, and industrial laundry services because these services are essential to keep the City's other functions operational." Complaint ¶ 12, Ex. 2, p. 1. The City imposes the same requirement on *all* contractors providing the covered services. This requirement is no different in terms of safeguarding execution of the contract than the City's extensive indemnity and insurance requirements within its contracts, to which NW Success readily agreed. Complaint ¶ 17, Ex. 3, pp. 20–22. Further, NW Success does not allege that the labor peace agreement requirement was developed to inhibit or discourage contracting with Oregon Forward contractors. There is no logical reason why Oregon Forward contractors would be less able than other contractors to meet the City's requirement.

Thus, these contracting requirements—including the labor peace requirement—are of the type of "specifications appropriate to the Agency's procurement needs" expressly contemplated by the Oregon Forward scheme. NW Success's Claim 1, Count 2 should be dismissed with prejudice.

**6.　　The City's requirement governs "labor standards" and is thus allowable under the Oregon Forward program.**

The Oregon Forward program, in addition to recognizing that public agencies can adopt specifications for the award of contracts, also expressly provides that public agencies need not contract with Oregon Forward contractors that do not comply with "applicable local ordinances or resolutions that govern labor standards." ORS 279.850(1)(b)(A). The statute states specifically:

> [a]ll of the qualified nonprofit agencies for individuals with disabilities on the procurement list that applies to the public agency have a record in the previous three years of repeatedly violating, or *are not now in compliance with, applicable local ordinances or resolutions that govern labor standards* . . . .

Page 13　– DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

ORS 279.850(1)(b)(A) (emphasis added). Further, a public agency may require "that the qualified nonprofit agency for individuals with disabilities comply with applicable local ordinances or resolutions that govern labor standards." ORS 279.850(2).

NW Success argues that the City's labor peace requirement is not a "local ordinance[] or resolution[] that govern[s] labor standards" under ORS 279.850(2)(a), and therefore, the City may not condition its contract awards on compliance with, or disqualify Oregon Forward contractors who do not comply with, the City's labor peace requirement. This court already had occasion to interpret whether the City's labor peace requirement is a "local ordinance[] or resolution[] that govern[s] labor standards" in *DePaul Industries v. City of Portland,* Case No. 3:21-CV-01792-HL, 2022 WL 3683799 at *6–7, in the context of determining whether the City's labor peace requirement was preempted by the Oregon Forward program. In that case, this Court held that, at a very minimum, the statute and regulation were "ambiguous" as to whether a labor peace agreement is a "local ordinance[] or resolution[] that govern[s] labor standards." *Id.* The City now urges this court to hold that labor peace agreement requirements, like the City's are definitively "local ordinances or resolutions that govern labor standards" under ORS 279.850(2).

Oregon courts[2] interpret statutes by following the approach laid out in *PGE v. Bureau of Labor & Indus.,* 859 P.2d 1143 (Or. 1993) (superseded in part by statute), and *State v. Gaines,* 206 P.3d 1042 (Or. 2009), and the principles of statutory construction apply equally to administrative rules. *Matter of Marriage of Perlenfein*, 848 P.2d 604, 606 (Or. 1993).The "paramount goal" of that approach is "discerning the legislature's intent." *Gaines,* 206 P.3d at 1050. Because "there is no more persuasive evidence of the intent of the legislature than the words by which [it] undertook

---

[2] When federal courts interpret state law, federal courts "are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Diaz v. Kubler Corp.,* 785 F.3d 1326, 1329 (9th Cir. 2015) (cleaned up). "We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law," *Tomlin v. Boeing Co.,* 650 F.2d 1065, 1069 n.7 (9th Cir. 1981), "unless the federal court finds convincing evidence that the state's supreme court likely would not follow it," *Ryman v. Sears, Roebuck & Co.,* 505 F.3d 993, 994 (9th Cir. 2007).

Page 14  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

to give expression to its wishes," the analysis looks primarily to statutory text and context. *Id.* (internal quotation marks and citations omitted). In so doing, words of common usage are given their plain, natural, and ordinary meaning. *PGE,* 859 P.2d at 1146. Courts may also look to unchallenged implementing regulations which define terms of the statute as evidence of the meaning of statutory terms. *See NW Metals, Inc. v. Driver & Motor Vehicle Servs. Div.,* 498 P.3d 869, 872 (Or. Ct. App. 2021).

Courts also may consider legislative history "where that legislative history appears useful to the court's analysis." *Gaines*, 206 P.3d at 1050. While legislative history cannot be used to "rewrite" a statute, it may be used either "to identify or resolve ambiguity in legislation." *Halperin v. Pitts,* 287 P.3d 1069, 1076 (Or. 2012) (citing *U.S. West Communications v. City of Eugene,* 81 P.3d 702, 705 (Or. 2003)). Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 206 P.3d at 1051.

Here, the language requiring interpretation is, "local ordinance[] or resolution[] that govern[s] labor standards." ORS 279.850(2)(a). The Oregon Department of Administrative Services ("DAS") was tasked by the Legislature to, *inter alia*, "make such rules regarding specifications, time of delivery and other relevant matters of procedure as shall be necessary to carry out the purposes" of the Oregon Forward Program. ORS 279.845(1)(c). Accordingly, DAS promulgated the following definition of "local ordinances or resolutions that govern labor standards" as "ordinances or resolutions, duly adopted by a local government body. . . that regulate employee working conditions." OAR 125-055-0040(8). DAS further defined "employee working conditions" as consisting of:

(a) Wage rates or salaries;

(b) Hours of labor, work days, leave, and workplace safety conditions;

(c) Health insurance or health care benefits;

(d) Retirement or pension benefits; and

Page 15  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

(e) *Dispute resolution procedures.*

OAR 125-055-0040(8)(e) (emphasis added).

This court in *DePaul Industries*, following the *PGE/Gaines* analysis, looked at the plain meaning of "dispute resolution procedures" in OAR 125-055-0040(8)(e):

> Absent a statutory definition, courts "ordinarily look to the plain meaning of the statute's text to determine what particular terms mean." *State v. Dickerson,* 356 Or. 822, 829 (2015). "When 'a term is a legal one, [Oregon courts] look to its "established legal meaning" as revealed by, for starters at least, legal dictionaries.'" *DCBS* v. *Muliro,* 359 Or. 736 (2016) (quoting *Comcast Corp. v. Dept. of Rev.,* 356 Or. 282, 296 (2014*)*). When afforded its legal meaning, the term "dispute resolution" is considered synonymous with the term "alternative dispute resolution," which means "[a]ny procedure for settling a dispute by means other than litigation...." See Dispute Resolution, Alternative Dispute Resolution, Black's Law Dictionary (11th ed. 2019). As Black's Law Dictionary further explains, this term is defined as "encompassing all legally permitted processes of dispute resolution other than litigation," including negotiation. *Id.* (emphasis added). *Thus, even considering dictionary definitions, the term dispute resolution procedures is broad enough to potentially encompass alternative means of preventing labor disputes, such as a labor peace agreement. . . . The rule broadly allows for ordinances or regulations that govern "employee working conditions," which could plausibly include actions such as "picketing, work stoppages, boycotting, [or] strikes[.]"*

2022 WL 3683799, at *7 (emphasis added).

There is no reason—textual, contextual, or historical—for this court to draw a different conclusion than it did in *DePaul Industries*—that the City's labor peace requirement is a "dispute resolution procedure," and thus a "local ordinance[] or resolution[] that govern[s] labor standards" under ORS 279.850(2)(a) as defined by OAR 125-055-0040(8)(e). Indeed, not only is this court's construction supported by legal definitions, but also common ones: "Dispute" is defined as "verbal controversy: debate" or "quarrel." Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/dispute. "Resolution" is defined as "the act or process of resolving: such as: the act of answering: solving; the act of determining." *Id.*, available

Page 16  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

at https://www.merriamwebster.com/dictionary/resolution. "Procedure" is defined as "a particular way of accomplishing something or of acting" or "a series of steps followed in a regular definite order." *Id.*, available at https://www.merriam-webster.com/dictionary/procedure. All put together, the plain, ordinary meaning of "dispute resolution procedures" would be "a particular way of resolving or determining a controversy."

The City's labor peace requirement—and indeed, any labor peace agreement—is just that: a particular way of preemptively resolving labor disputes. The labor peace requirement itself bolsters this interpretation, as it defines "labor peace" as "a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services." [cite]. The labor peace requirement goes on to state, "Any failure to comply with this requirement and any service disruption *as a result of a labor dispute* will subject a contractor to liquidated damages and possible termination of the service contract." (*Id.*) (emphasis added).

It is well-understood that picketing, work stoppages, and similar economic interferences are strategies labor organizations can use to apply pressure to employers to resolve disputes and often constitute a public statement of the dispute itself. *See, e.g., N.L.R.B. v. Radio & Television Broad. Eng. Union*, 364 U.S. 573, 580 (1961) (noting the historical context that "prior to the enactment of the Taft-Hartley Act, labor, business and the public in general had for a long time joined in hopeful efforts to escape the disruptive consequences of jurisdictional disputes and resulting work stoppages.") (emphasis added); *Bhd. of Locomotive Engineers v. Louisville & N. R. Co.,* 373 U.S. 33, 34–35 (1963) (involving union threat to call a strike where parties could not agree on meaning of a lost wages award); *Gateway Coal Co. v. United Mine Workers of Am.,* 414 U.S. 368, 390 (1974) (involving compelling arbitration of a safety dispute and enjoining a work stoppage related to that dispute); *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Loc. Union No. 1936*, 680 F.2d 594, 596 (9th Cir. 1982) (recognizing "a union may lawfully picket a primary

Page 17  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

employer with which it has a labor dispute"); *see also* 29 U.S.C. § 158(b)(4) (prohibiting the use of strikes and work stoppages for certain purposes, such as recognizing a particular bargaining unit). The City's labor peace requirement forestalls such strategies by altering the procedures by which the parties can resolve disputes: limiting economic interferences by a labor organization.

Thus, the express language of the labor peace requirement and its practical application demonstrate that it is a "local ordinance[] or resolution[] that govern[s] labor standards" by virtue of being a "dispute resolution procedure." ORS 279.850; OAR 125-055-0040(8). This Court should dismiss NW Success' Claim 1, Count 2 with prejudice.

### 7. The City's labor peace requirement does not violate Oregon's Privileges and Immunities Clause.

NW Success claims that the City's labor peace requirement violates NW Success's rights under the Oregon Constitution's Privileges and Immunities Clause, art. I, § 20. Complaint ¶¶ 53–63. That clause provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." NW Success alleges that "the City lacked legitimate justification for privileging unions over Plaintiff" and the labor peace requirement's effect is to "privilege labor unions over other private organizations by giving them 'in roads,' and by allowing them to effectively determine who may contract with the City." Complaint ¶ 55, 58. NW Success also alleges that the labor peace requirement unfairly privileges to contractors other than janitorial, industrial laundry, and security services by not requiring those contractors to obtain a labor peace agreement to contract with the City. Complaint ¶ 59. Finally, NW Success alleges that the City's requirement is arbitrary because it targets contractors, and not the unions who is the actual "threat to labor peace"; does nothing to stop other unions from disrupting work; and does not prevent the contractors' workforce from forming its own union. Complaint ¶ 60.

NW Success's claim should be dismissed because, at the outset, the Privileges and Immunities Clause is not implicated as to the City allegedly treating unions better than contractors,

Page 18 – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

because the two types of entities are not similarly situated. And, to the extent that the City treats janitorial contractors differently than other contractors, the City's labor peace agreement requirement has a rational basis and therefore does not violate the Privileges and Immunities Clause.

### 8.    City contractors and third-party unions are not "similarly situated"; therefore, the Privileges and Immunities Clause is inapplicable.

NW Success alleges that the City "privilege[ed] unions over Plaintiff" and the City's labor peace requirement's effect is to "privilege labor unions over other private organizations by giving them 'in roads,' and by allowing them to effectively determine who may contract with the City." Complaint ¶ 55, 58. The Privileges and Immunities Clause "does not require that a law shall affect all persons exactly alike, but there is a guaranty of like treatment to all persons *similarly situated*." *City of Klamath Falls v. Winters,* 619 P.2d 217, 228 (Or. 1980) (emphasis added). When a plaintiff has no evidence that similarly situated persons are treated differently, his equal protection claim[3] fails *ab initio." Wright v. Incline Vill. Gen. Improvement Dist.,* 665 F.3d 1128, 1140 (9th Cir. 2011); *see also Van Susteren v. Jones,* 331 F.3d 1024, 1026–27 (9th Cir. 2003) (finding no equal protection violation because two groups of candidates were not similarly situated). NW Success's Privileges and Immunities Clause claim fails as a matter of law because potential City contractors and third-party unions are not "similarly situated."

Here, NW Success has not pleaded any facts about how it is similarly situated to a labor union such as SEIU Local 49, nor can it. Service contractors such as NW Success enter into agreements with the City to perform services for the City, and agree to all kinds of contractual terms related to the performance of such services, including pricing, warranties of services, indemnification, etc. E.g., Complaint ¶ 17, Ex. 3. By contrast, third-party unions, such as SEIU

---

[3] The claim brought was an Equal Protection Clause claim under the U.S. Constitution. However, Oregon's Privileges and Immunities Clause triggers "substantially the same analysis" as the federal Constitution's Equal Protection Clause. *City of Klamath Falls v. Winters,* 619 P.2d 217, 227 (Or. 1980), and therefore the case is instructive.

Page 19  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

Local 49, do not enter into service contracts with the City and do not provide any paid-for services in which the City might have proprietary interests. Therefore, the City can treat the two types of groups differently without running afoul of the Privileges and Immunities Clause. NW Success's Claim 1, Count 3 therefore fails as a matter of law as to labor unions and should be dismissed with prejudice.

9.    **The City has a rational basis for treating janitorial contractors differently than other contractors.**

NW Success alleges that the labor peace requirement unfairly privileges contractors other than janitorial, industrial laundry, and security services by not requiring those other contractors to obtain a labor peace agreement to contract with the City. Complaint ¶ 59. To bolster its claim that the City's labor peace requirement does not have a rational basis, NW Success alleges that the City's requirement is arbitrary because it targets contractors, and not the unions who is the actual "threat to labor peace"; does nothing to stop other unions from disrupting work; and does not prevent the contractors' workforce from forming its own union. Complaint ¶ 60.

When no suspect class (such as race or sex) is involved in a Privileges and Immunities Clause claim, the plaintiff must show that "the differential treatment has no rational basis." *State v. Goacher,* 466 P.3d 1047, 1050 (Or. Ct. App. 2020); *see also Kramer v. City of Lake Oswego*, 446 P.3d 1, 22–23 (Or. 2019). In assessing whether there is a rational basis for differential treatment, courts must ask what a "legislator rationally could believe." *In re Marriage of Crocker,* 22 P.3d 759, 766 (Or. 2001). "Fundamentally, classification is a matter committed to the discretion of the legislature and the courts will not interfere with the legislative judgment unless it is palpably arbitrary." *Plummer v. Donald M. Drake Co.*, 320 P.2d 245, 248 (Or. 1958). The question is "whether there is *any* rational basis for the distinction drawn by the legislature, whether or not it was a basis that the legislature even considered." *Sherwood Sch. Dist. 88J v. Wash. Cnty. Educ. Serv. Dist.,* 6 P.3d 518, 528 (Or. Ct. App. 2000) (emphasis in original). The rational basis test is not a license for the courts to second guess legislative judgments. "[I]t is not for th[e] court to

Page 20  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

decide which legislative choice was the best one, or whether it, in fact, accomplished its goal." *S. Wasco Cnty. Ambulance Serv., Inc. v. State*, 968 P.2d 848, 853 (Or. Ct. App. 1998) (internal quotation marks omitted).

The City's basis for calling out janitorial services, separate from other types of contractors, is a rational one: as stated in the City's labor peace requirement, janitorial services (alongside industrial laundry and security) are "essential" to keeping all other City services operational. Complaint ¶ 12, Ex. 2, p. 1. This rationale is not only a logical one, but also rooted in complying with basic safety requirements: if City facilities are not cleaned, particularly spaces such as restrooms, not only would the City be unable to provide those facilities to the public, but also would not have employees report to unclean work facilities. There is a clear rational basis for the City to seek contractual measures to ensure against work stoppages for these kinds of services as opposed to other contractual services.

 NW Success challenges the City's labor peace requirement on several fronts as being arbitrary and irrational, and thus, not based on a rational basis. For example, NW Success alleges that even if a contractor has a labor peace agreement with one union, a different union might cause disruption or the contractor's employees could form a new union and foment disruption. Complaint ¶ 60. That the City's requirement may not foreclose *all* risk of labor disruption, however, does not show that it is arbitrary or irrational. The City Council rationally could conclude that the rival union scenario, a wildcat strike, or a sympathy strike are less likely than other scenarios. Further, as NW Success alleges in its own Complaint, only one union in the region represents janitorial, industrial laundry, and security services, making the alleged "rival union" scenario even less likely. Complaint p. 1.

NW Success also appears to allege that it is irrational for the City to require contractors, as a condition of obtaining one of the exceptions to the City requirements, to show that the contractor has notified all labor organizations in the area that represent the relevant type of workers and that no union responded. Complaint ¶ 61. According to NW Success, the notification would "increase[]

Page 21  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

the chance of labor disruption by essentially inviting unions to intervene." *Id*. But the City Council might rationally have concluded that the identity of City contractors will not be a secret during the performance of the contract and that it is better to ensure at the outset that the City is protected, to the extent feasible, from the risk of labor disruption.

It is not for this court to decide whether City Council's choice was the "best one," or even if the choice "in fact, accomplished its goal." *S. Wasco Cnty. Ambulance Serv., Inc.,* 968 P.2d at 853. Courts also "do not attempt to psychoanalyze the motives of legislators to determine whether the passage of a given bill actually was motivated by interest group politics." *Sherwood Sch. Dist.* 88J, 6 P.3d at 528. Instead, the sole determination is whether there is *any* rational basis for the City's decision. Here, the City rationally determined it needs added protection against possible work stoppages by unions in the City's essential services. NW Success's Privileges and Immunities Clause claim fails and should be dismissed with prejudice.

### 10.    The City's labor peace requirement does not violate the first amendment.

NW Success alleges that the City's labor peace requirement abridges its First Amendment right to "'express opinions or predictions, reasonably based in fact, about the possible effects of unionization on its company.'" Complaint ¶ 65 (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. N.L.R.B.,* 834 F.2d 816, 820 (9th Cir. 1987). NW Success alleges the City's requirement does so by requiring NW Success to "remain neutral regarding unionization, as neutrality is an essential component of a labor peace agreement." Complaint ¶ 67. However, NW Success's allegation fails on its face when examining the actual language of the City's labor peace requirement, which has no neutrality requirement.

The Supreme Court has held that "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 567 (2011). While the former is entitled to protection, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* Following *Sorrell*, the Ninth Circuit has held that consummating

Page 22  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

a business transaction is nonexpressive conduct unprotected by the First Amendment. *HomeAway.com, Inc. v. City of Santa Monica,* 918 F.3d 676, 685 (9th Cir. 2019) ("[T]he 'business agreement or business dealings' associated with processing a booking is not conduct with a 'significant expressive element.'" (quoting *Int'l Franchise Ass'n,* 803 F.3d at 408)).

Relying on these principles, district courts across the country have found that First Amendment challenges to labor peace agreement policies fail when the policies solely regulate conduct and not speech. For example, in *Ctrl Alt Destroy v. Elliott*, the court upheld the California's requirement that cannabis companies with more than 20 employees enter into a labor peace agreement as a condition of licensure. 2025 WL 790963, at *2 (S.D. Cal. Mar. 12, 2025). The Court found that:

> The LPA Sections do not impose unconstitutional content-based prior restraints because the requirement that Plaintiff not disrupt unionization efforts does not regulate protected speech, see *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617–18 (1969) (holding that "interference, restraint or coercion of employees in the exercise of their right to self-organization" is "without the protection of the First Amendment"), and the requirement that Plaintiff permit a bona fide labor organization to access areas in which Plaintiff's employees work regulates Plaintiff's conduct, not its speech, *see Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,* 547 U.S. 47, 60 (2006) (holding that a law that required schools to provide access to U.S. military recruiters regulated conduct, not speech).

Id. at *7, n 8.

Likewise, in *Human Serv. Council of New York v. City of New York,* the court upheld New York City's requirement [Local Law 87] that human services contractors enter into a labor peace agreement or attest that no union had sought to represent its employees as a prerequisite to enter into a contract with the city. 2024 WL 4792004, at *2 (S.D.N.Y. Nov. 14, 2024). The court found that the policy was constitutional under the First Amendment because the policy regulated conduct rather than speech:

> Local Law 87 does not require a City contractor to maintain "neutrality" with respect to the unionization of its employees. Indeed, the law imposes no restriction on a contractor's ability to express its views on unionization – or any other topic – in any forum, by any means, to any party. Plaintiffs, for their part, have cited no

> authority suggesting that the contractual relationship mandated by
> Local Law 87 involves speech protected by the First Amendment.
> Nor do Plaintiffs explain how the act of submitting an attestation to
> the City regarding the status of labor peace agreement negotiations
> could constitute compelled speech.

*Id.* at *25.

In *MSP Small Business Concessions Alliance v. Metropolitan Airports Comm'n*, the court considered a similar issue regarding the Minneapolis-St. Paul Airport's policy that contractors enter into a labor peace agreement before they could contract with the airport. In that case, the Airport's labor peace agreement policy mandated that if the contractor and its labor union could not reach an agreement, they would agree to binding arbitration, and the arbitrator would set the terms of the labor peace agreement. 2025 WL 1295615, at *1-2 (D. Minn. May 5, 2025). The plaintiff alleged that arbitrators in those roles would often include a so-called "neutrality agreement" requiring the contractor to remain neutral during a union organizing campaign, thereby restricting the contractor's First Amendment rights. *Id.* at *3.

The court dismissed the plaintiff's First Amendment challenge based on the plaintiff's lack of standing. The court found that the plaintiff's alleged injury was too speculative to confer standing because it required a series of events to occur, including plaintiff being unable to come to terms with its employees' labor union, the dispute going to arbitration, and the arbitrator using discretion to issue a neutrality agreement. *Id.* at *6. The court also found that the airport's policy itself was not susceptible to a First Amendment challenge because it did not include a neutrality requirement:

> The only source of the alleged First Amendment harm in this case
> is the specter of a neutrality provision, but MSBCA concedes that
> the Labor Policy does not explicitly require a neutrality term in a
> labor peace agreement. The terms that are mandated by the Policy—
> that employees agree not to picket, strike, engage in work stoppages,
> boycotts, or other forms of economic interference—do not prevent
> any MSBCA member from speaking about the benefits or
> drawbacks of worker unionization.

*Id.* at *7. Thus, the court in *MSP Small Business Concessions Alliance* reached the same finding as the *Ctrl Alt Destroy* and *Human Services Council of New York* courts: a policy that only regulates conduct rather than speech is constitutional under the First Amendment.[4]

Despite NW Success's allegations in its Complaint to the contrary, the City's labor peace requirement, like those found to be lawful in the above cases, contains no neutrality requirement whatsoever. As demonstrated in the exhibit to NW Success's Complaint, the City's actual labor peace requirement describes "labor peace" as: "a written provision in an agreement or contract whereby a labor organization (as defined by 29 U.S.C. §152(5)), for itself and its members, agrees to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services." Complaint ¶ 12, Ex. 1, p. 1. The City's policy further goes on to state:

> Nothing in this section requires a contractor or subcontractor to recognize a particular labor organization or to enter into a collective bargaining agreement establishing the substantive terms and conditions of employment. Nor is this section intended to enact or express any generally applicable policy regarding labor/ management relations, or to regulate those relations in any way, or to provide a preference for any outcome in the determination of employee preference regarding union representation.

*Id.* Thus, the City's labor peace requirement is thus constitutional because it only regulates the conduct of the City's potential contractors rather than their speech. Accordingly, the Court should find that NW Success has failed to state a claim under the First Amendment and dismiss the claim with prejudice.

---

[4] In a recent case out of this Court, *Casala v. Kotek*, this court found that the State of Oregon's policy requiring cannabis companies to enter into labor peace agreements as a condition of licensure [Measure 119] violated the First Amendment because it *explicitly* included a neutrality requirement. 2025 WL 1442792, at *21 (D. Or. May 20, 2025). ("Under Measure 119, Plaintiffs must 'remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the license about the rights afforded to such employees under [Oregon Revised Statutes §] 663.110.'"). The City's labor peace requirement is readily distinguishable from Measure 119 because there is no neutrality requirement or any other governance of the contractor's speech.

Page 25  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

11.    **The City's labor peace requirement is not unconstitutionally vague.**

NW Success alleges that the City's labor peace requirement is unconstitutionally vague for numerous reasons: First, "[t]here is no way for prospective contractors to know ahead of time what will satisfy the Labor Peace Requirement, including the Good Faith Exception, because the City effectively delegated that authority to the union." Complaint ¶ 74. Second, the good faith exception to the requirement allegedly "lacks the precision and guidance necessary to ensure that those enforcing the requirement do not act in an arbitrary or discriminatory manner." Complaint ¶ 75. Third, NW Success alleges "good faith" is not defined. Complaint ¶ 76. Fourth, NW Success complains that sole discretion to determine whether the exception is met is vested in the Mayor, with no written standard for making determinations. Complaint ¶ 77. And Fifth, NW Success alleges the liquidated damages penalty has no clear standard for a contractor to understand what would trigger the penalty. NW Success's claim fails because it cannot meet the heavy burden of demonstrating that the City's labor peace requirement specifies no standards at all.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). The void-for-vagueness doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012); *see also Grayned,* 408 U.S. at 108 (noting that vague laws violate the "basic principle of due process," including "fair warning" and "explicit standards for those who apply [the laws]").

However, a challenger seeking to invalidate a statute for vagueness carries a heavy burden: A statute is unconstitutionally vague only if it "specifie[s]" "no standard of conduct at all." *United States v. Lucero*, 989 F.3d 1088, 1101 (9th Cir. 2021). That is because the Supreme Court and the Ninth Circuit have recognized that "[m]any statutes will have some inherent vagueness" and that

Page 26  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

a certain quantum of vagueness is permissible—and even necessary. *See Rose v. Locke,* 423 U.S. 48, 49–50 (1975); *see also Grayned*, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language."); *United States v. Powell,* 423 U.S. 87, 94 (1975) (explaining that a statute is not void for vagueness even when a legislature "might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought" (cleaned up)). Consistent with that recognition, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Parker v. Levy,* 417 U.S. 733, 757 (1974).

Thus, to prevail on a challenge on vagueness grounds, "the complainant must prove that the enactment is vague, 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n 7 (1982) (quoting Parker, 417 U.S. at 756). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement— depends in part on the nature of the enactment." *Hoffman,* 455 U.S. at 498. In *Hoffman,* the Supreme Court articulated four factors (the *Hoffman* factors) relevant to whether a statute is unconstitutionally vague. A court must consider whether the statute: (1) involves only economic regulation; (2) contains only civil penalties; (3) includes a scienter requirement; and (4) threatens constitutionally protected rights. *See Hanlester Network v. Shalala,* 51 F.3d 1390, 1398 (9th Cir. 1995) (construing *Hoffman*). Discussing these factors, the Supreme Court in *Hoffman* explained:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the

Page 27  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

> adequacy of notice to the complainant that his conduct is proscribed.
>
> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

455 U.S. at 498–99 (footnote citations omitted).

Here, the City's labor peace requirement would be subject to a "less strict vagueness test" because the requirement is an economic regulation, is civil in nature, and (as described above) does not abridge any constitutionally protected rights. While NW Success attempts to argue "vagueness" on several grounds, the City's labor peace requirement is generally clear. The policy defines, specifically, what "labor peace" means: an agreement with a labor union "to refrain from engaging in any picketing, work stoppages, boycotting, strikes, or any other economic interference with the contractor's or subcontractor's performance of services." Complaint ¶ 12, Ex. 2, p. 1. Thus, NW Success knows exactly what is expected from it in terms of complying with the labor peace requirement.

Further, in terms of meeting the good faith exception, while "good faith" is not specifically defined, the steps needed to meet the exception are described in detail:

> A contractor's good faith efforts to obtain Labor Peace with a labor organization must include an offer by the contractor to submit its dispute with the labor organization about the terms of Labor Peace to immediate mediation before a neutral mediator and its participation in that mediation and, if the mediation is unsuccessful, an offer by the contractor to submit the dispute about the terms of Labor Peace to prompt resolution thorough binding interest arbitration before a neutral dispute resolution organization, and its participation in that arbitration. The contractor must demonstrate that it has a written plan for continuation of services in the event of economic interference by a labor organization.

*Id.* at p. 2. NW Success itself seemed to understand that it was required to engage in mediation and binding interest arbitration to meet the exception. Complaint ¶¶ 21–24 (describing NW Success going to mediation and offering arbitration).

Page 28  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS

NW Success also attacks the policy for being "arbitrary" because the Mayor has sole authority to determine whether the exception is met, and there is allegedly no "written standard" for how the decision is made. Complaint ¶ 77. However, the labor peace requirement is the written standard: did the contractor engage in mediation and binding interest arbitration? The answer to those questions can be objectively determined, and as NW Success admits, it did not engage in binding interest arbitration by the dates provided by the City. Complaint ¶ 27.

Finally, NW Success also attempts, and fails, to show the "liquidated damages" section is unconstitutionally vague because a contractor would have no way of knowing in advance what triggers the penalty. Complaint ¶ 78. Again, not so. The City's policy is clear that liquidated damages could be triggered by "any failure to comply with this requirement and any service disruption as a result of a labor dispute." Complaint ¶ 12, Ex. 2, p. 1.

NW Success's claim fails to meet the extremely high bar in showing that the City's labor peace requirement that "no standard of conduct is specified at all." Therefore, this court should dismiss with prejudice.

## **CONCLUSION**

For the foregoing reasons, the City's motion to dismiss should be granted.

DATED: July 9, 2025.


Respectfully submitted,


*/s/ Fallon Niedrist de Guzman*
FALLON NIEDRIST DE GUZMAN, OSB No. 145146
Deputy City Attorney
DANIEL SIMON, OSB No. 124544
Senior Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendant City of Portland*


Page 29  – DEFENDANT CITY OF PORTLAND'S PARTIAL MOTION TO DISMISS