Clifford S Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone: 503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Northwest Success, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST SUCCESS, INC., an Oregon domestic nonprofit corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND, a municipal corporation,<br><br>　　　　　　Defendant. | Case No. 3:25-CV-970-SI<br><br>PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

# MEMORANDUM

## I. Introduction

At oral argument on Defendant City of Portland's (the "City") motion to dismiss and plaintiff Northwest Success' motion for preliminary injunction, this Court requested supplemental briefing on the meaning of "purely" as used in *Building & Construction Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993) ("*Boston Harbor*"). As explained below, "purely," as in "purely proprietary interests," means exactly that; the market participant exception does not apply where any regulatory motive is found in an otherwise proprietary action. Put simply, a government action cannot be "purely proprietary" where regulatory motives are also involved.

In contrast to the Supreme Court's "purely proprietary" language, the Ninth Circuit has noted that, under the second prong of the market participant inquiry, the government's proprietary interest must be the "primary" (as opposed to "pure") motivation for the government action. *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1080 (9th Cir. 2017) ("LAX") ("[D]oes the narrow scope of the challenged action defeat an inference that its <u>primary goal</u> was to encourage a general policy rather than to address a specific proprietary problem?") (emphasis added). As discussed below, the difference in language can be reconciled as follows so as to avoid a contradiction between the Ninth Circuit and Supreme Court: where there is no direct evidence of a regulatory purpose, the Ninth Circuit instructs that if a government action has a narrow scope, then that defeats an inference that the primary motive was regulatory. The Ninth Circuit has described that second prong inquiry as giving the government the option to "prove a negative – that the action is *not* regulatory," as opposed to affirmatively proving that the action is proprietary. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1024 (9th Cir. 2010) (emphasis in original). But that is not in play here because there is actual evidence that the government action was regulatory; the inference is unnecessary, so that second prong of the Ninth Circuit inquiry is inapplicable.

In any event, here, Plaintiff's allegations and preliminary evidence satisfy both standards – "purely" and "primary." Accordingly, this Court should deny the City's motion to dismiss and grant Plaintiff's motion for preliminary injunction.

## II. Motive can distinguish regulatory action from proprietary action.

"When a State [or municipality] owns and manages property . . . it must interact with private participants in the marketplace." *Boston Harbor*, 507 U.S. at 227. When it does so, NLRA preemption turns on a "distinction between government as regulator and government as proprietor." *Id.* Accordingly, "the [municipality's] reason for such conduct" matters. *Id.* at 229 (emphasis added); *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 287 (1986) (use of spending power does not escape NLRA preemption where its purpose is to enforce the NLRA); *see, e.g., Air Transp. Ass'n of Am. v. City & Cnty. of San Francisco*, 992 F. Supp. 1149, 1179 (N.D. Cal. 1998) ("Defendants have not established that the City was motivated by proprietary concerns in enacting the Ordinance."), *aff'd and remanded*, 266 F.3d 1064 (9th Cir. 2001). Motivation matters even where a labor peace requirement applies only to certain private actors. Roger C. Hartley, *Preemption's Market Participant Immunity - A Constitutional Interpretation: Implications for Living Wage and Labor Peace Policies*, 5 U. PA. J. LAB. & EMP. L. 229, 251–52 (2003) ("Government is likely to have a difficult task persuading a court that its proprietary interest was the motivating force when it enacts an across-the-board requirement of a labor peace agreement from all those doing business with it (even if limited to transactions exceeding a certain dollar amount).").

As the Supreme Court explained, that motive-based "distinction between regulator and purchaser" applies in the private sphere too:

> "A private actor, for example, can participate in a boycott of a supplier on the basis of a labor policy concern rather than a profit motive. The private actor under such circumstances would be attempting to 'regulate' the suppliers and would not be acting as a typical proprietor."

*Boston Harbor*, 507 U.S. at 229 (emphasis added). Of course, private actors "may 'regulate' as they please" without the threat of preemption. *Id.* Not so for municipalities, which "have a

qualitatively different role to play from private parties" and are "more powerful than private parties." *Id.* But the Supreme Court has recognized that "[t]hese distinctions are far less significant when the [municipality] acts as a market participant with <u>no interest</u> in setting policy." *Id.* (emphasis added). More on that below.

## III. Government action must be "purely" proprietary to qualify for the market participant exception.

To qualify for the market participant exception, the Supreme Court has held that the government must prove it has "<u>no interest</u> in setting policy" and that it is, instead, acting pursuant to a "<u>purely</u> proprietary interest." *Boston Harbor*, 507 U.S. at 229 & 231-32. To that end, the Ninth Circuit applies a two-part test from the Fifth Circuit's decision in *Cardinal Towing*. *LAX*, 873 F.3d at 1080. The second prong of that test asks: "does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than to address a specific proprietary problem?" *LAX*, 873 F.3d at 1080 (internal quotations omitted). That is, the *Cardinal Towing* inquiry "offers two alternative ways to show that a state action constitutes non-regulatory market participation: (1) a state can affirmatively show that its action is proprietary by showing that the challenged conduct reflects its interest in efficiently procuring goods or services, or (2) it can prove a negative--that the action is not regulatory--by pointing to the narrow scope of the challenged action." <u>Johnson,</u> 623 F.3d at 1024. It is solely that second prong ("prove a negative") to which the "primary goal" inquiry applies. That second prong "protects narrow spending decisions that do not necessarily reflect a state's interest in the efficient procurement of goods or services, but that also lack the effect of broader social regulation." *Id.*

Of course, evidence of regulatory motive does not arise solely and inferentially from the scope of the challenged action – the subject of the prong 2 inquiry. *See Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 70 (2008) ("As the statute's preamble candidly acknowledges, the legislative purpose is not the efficient procurement of goods and services, but the furtherance of a labor policy."). Accordingly, other (non-scope related) evidence of regulatory motive can

prevent the government from carrying its burden under the market participant exception. Indeed, if government action is narrow in scope but there is other evidence of a regulatory purpose, courts do not ignore that evidence simply because the government action itself might be narrow in scope. *See Van-Go Transp. Co. v. New York City Bd. of Educ.*, 53 F. Supp. 2d 278, 288-89 (E.D.N.Y. 1999) (finding "post hoc attempts to disguise a regulatory policy" despite "defendants attempt to dress the issue in terms of a single, proprietary contract").

The *Boston Harbor* standard leaves no room for a mixed motive in government action. We know that because the Supreme Court used absolute terms in describing the governmental actions that fall within and without the market participant exception, emphasizing that the government must have a "purely proprietary interest" and, on the flipside, "no interest in setting policy." *Id.* at 227, 231; *See* Webster's Third New Int'l Dictionary 1845 (unabridged ed 2002) (defining "pure" as "unmixed with any other thing"); *id.* (defining "purely" as "without admixture of anything injurious, inharmonious, foreign, or otherwise undesirable or divergent"). That is why courts must examine the spending decisions of municipalities for concealed regulatory purposes. *See Gould*, 475 U.S. at 287 (state's use of spending power instead of regulatory power "seems to us a distinction without a difference" where challenged statute serves a regulatory purpose); *Milwaukee Ass'n of Com. v. Milwaukee Cnty.*, 431 F.3d 277, 278–79 (7th Cir. 2005) ("spending power may not be used as a pretext for regulating labor relations"; state acts as regulator when it conditions payment to contractor "on his agreeing to submit to a scheme of labor relations that the state considers an improvement over the National Labor Relations Act").

To be sure, "the presence of the state in the market cannot automatically be assumed to be motivated by a regulatory impulse." *Cardinal Towing & Auto Repair, Inc. v. City of Bedford, Tex.*, 180 F.3d 686, 693 (5th Cir. 1999) ("*Cardinal Towing*"). So, the two-prong *Cardinal Towing* inquiry "seek[s] to isolate a class of government interactions with the market that are so narrowly focused, and so in keeping with the ordinary behavior of private parties, that a <u>regulatory impulse can be safely ruled out</u>." *Cardinal Towing*, 180 F.3d at 693 (emphasis added).

That "ruled out" inquiry is in accordance with *Boston Harbor* because it aims to determine whether <u>any</u> regulatory motive exists in the challenged action; if so, the market participant exception does not apply. That makes sense because, as the Supreme Court has explained, a regulatory motive in municipal action is qualitatively different, and more powerful, than the same regulatory motive in private action. *Boston Harbor*, 507 U.S. at 229.

For example, the Seventh Circuit held in *Milwaukee* that "the inference of pretext arising from the terms of the ordinance and the spillover effect on private labor relations that the ordinance creates has not been rebutted" – or, in *Cardinal Towing* terms, a regulatory motive was not "ruled out." *Milwaukee*, 431 F.3d at 282. In so holding, the Seventh Circuit explained that, while there were proprietary aspects of the government action, it was not purely proprietary. There, the ordinance, "supported by and tilted in favor of unions," required a "mandatory labor-peace agreement" while imposing sanctions on employers for a violation but "no sanction is specified for a union that violates this provision." *Id.* at 278. As the Seventh Circuit explained,

> "The County has a legitimate interest in avoiding interruptions in the services it furnishes its residents, but there is nothing to suggest that ordinary contract remedies are inadequate or if so that labor-peace agreements are a reasonable means to the end of preventing such interruptions. On the contrary, we have seen that such agreements might well increase the frequency of service interruptions. The claim that the County is requiring labor-peace agreements in order to further its interest as a buyer of services cannot withstand scrutiny. On this record, it is a pretext to regulate the labor relations of companies that happen, perhaps quite incidentally, to do some County work."

*Id.* at 282. That is, any regulatory interest in an otherwise proprietary action can take the action outside of the market participant exception. Other examples of that proposition include the following:

- *Allied Const. Indus. v. City of Cincinnati*, No. 1-14-CV-450, 2014 WL 2931421, at *13 (S.D. Ohio June 30, 2014) (granting preliminary injunction): "Here, the record suggests that the City acted in what is 'characteristically' a governmental role when it adopted the RBO provisions at issue. Those provisions of the RBO <u>do not appear to be aimed solely and neutrally at protecting the City's private interests</u> in the efficient use of its resources.

Rather, it appears to reach further to control the way in which contractors generally conduct their businesses. To that end, the RBO provisions at issue may be a tool to promote a labor policy rather than the City's proprietary interests. The City's conduct thus appears to be distinguishable from the type of proprietary conduct at issue in *Boston Harbor*." (emphasis added).

- *Council of City of New York v. Bloomberg*, 6 N.Y.3d 380, 395 (2006): "The Equal Benefits Law is much more like the statute involved in *Gould* than the contract specification at issue in *Boston Harbor*. In enacting the Equal Benefits Law the Council was obviously 'setting policy.' As we pointed out above, <u>it was not acting just as a manager or owner of property</u> concerned with assuring the cheap and efficient performance of contracts. The Equal Benefits Law, as its name implies, is designed to induce contractors to treat domestic partners and spouses equally, just as the Wisconsin statute in *Gould* was designed to induce contractors to avoid unfair labor practices. Thus the market participant exception does not apply here, and the Equal Benefits Law, except to the extent that the benefits it governs are not provided through ERISA plans, is preempted by ERISA." (emphasis added).

- *Aeroground, Inc. v. City & Cnty. of San Francisco*, 170 F. Supp. 2d 950, 958 (N.D. Cal. 2001) (granting preliminary injunction): "The airport commission may have intended the rule solely as a device for increasing the airport's revenues, but simply addressing the financial interests of a public entity does not make such efforts those of a market participant. If that were the case, then every effort by a government entity to increase its revenues could be characterized as market participation. The exception to NLRA preemption established by *Boston Harbor* is much narrower."

The above cases show that any amount of regulatory purpose, even if paired with a proprietary purpose, takes government action outside of the market participant exception. But it appears that the Northern District of California is the only federal court that has addressed a

mixed motive argument labeled as such.[1] That is not surprising, given that governments know that *Boston Harbor* provides a safe harbor for purely proprietary action; rarely is there such strong preliminary evidence of regulatory motive as there is here. In *Hotel Emps. & Rest. Emps. Union, Loc. 2, AFL-CIO v. Marriott Corp.*, No. C-89-2707 MHP, 1993 WL 341286 (N.D. Cal. Aug. 23, 1993) ("*Marriott*"), the defendant pointed to *Boston Harbor* in arguing that "a governmental entity must act *solely* out of its proprietary interest to evade preemption" and, accordingly, "in 'mixed-motive' cases, where the municipality acts to further its proprietary interests as well as certain policy goals, state action is preempted." *Id*. at *8 (emphasis in original). The Northern District of California rejected that argument. *Id.* The court explained that "the 'no interest' and 'purely proprietary' language in the [*Boston Harbor*] opinion is merely dicta because [*Boston Harbor*] was not treated as a 'mixed motive' case." *Id.* Instead, that court explained, "to determine whether the preemption doctrines apply in a given case, the court must look to the state's purpose in adopting the policy at issue and decide whether the government was acting <u>primarily</u> as a regulator or as a proprietor." *Id.* at *9 (emphasis added). There, the court found that the evidence in the record showed that pro-union political interests "were clearly secondary to the Agency's proprietary motivations" and, on that basis, held that the action at issue was not preempted by federal labor law. *Id.*

The *Marriott* court's disregard of the "no interest" and "purely proprietary" language from *Boston Harbor* as supposed dicta is unpersuasive – it also predates the *Cardinal Towing* test. The central issue in *Boston Harbor* was "whether a State may act without offending the preemption principles of the NLRA when it acts as a proprietor and its acts therefore are not tantamount to regulation or policymaking." *Boston Harbor*, 507 U.S. at 229 (internal quotations

---

[1] A mixed motive approach to the market participant exception is also expressly recognized in legal scholarship. *See* Roger C. Hartley, *Preemption's Market Participant Immunity - A Constitutional Interpretation: Implications for Living Wage and Labor Peace Policies*, 5 U. Pa. J. Lab. & Emp. L. 229, 252 n. 131 (2003) ("The causality inquiry can result in the conclusion that the government had a mixed motive: both a proprietary interest and a desire to respond to political pressure. Then the likely resolution will be that government has the burden of showing that it would have taken the same action for proprietary reasons regardless of the political pressure.").

omitted). The Supreme Court "answer[ed] this question in the affirmative." *Id.* at 229-30. The "no interest" and "purely proprietary" language is directly related to that issue; it is not dicta. *See id.* ("These distinctions [between private actor and state actor] are far less significant when the State acts as a market participant with no interest in setting policy."). Ironically, the *Marriott* court labeled the "purely" language as dicta because *Boston Harbor* "was not treated as a mixed motive case" and then went on to reject Marriott's application for interlocutory appeal on the basis that "the 'mixed motive' concept is inapplicable here." *Hotel Emps. & Rest. Emps. Union, Loc. 2, AFL-CIO v. Marriott Corp.*, No. C-89-2707, 1993 WL 13956975, at *3 (N.D. Cal. Nov. 12, 1993). So, by the *Marriott* court's own reasoning, its rejection of that absolutist language from *Boston Harbor* is itself dicta. It's also unclear why that court did not consider *Marriott* to be a mixed motive case when it acknowledged there were some pro-union political interests at play but "those interests were clearly secondary to the Agency's proprietary motivations." *Id.*

Ultimately, whether the *Boston Harbor* inquiry requires that the government's proprietary interest be the "pure" or, at the very least, "primary" driver of the government action is of no consequence here. That is because Plaintiff has alleged and offered preliminary evidence that the City cannot satisfy either standard. The City might have a legitimate interest in avoiding labor interruptions (which is a proprietary interest in the abstract), but there are allegations and at least some evidence of the City's regulatory motive here – not to mention an admission that, at least as of 2022, the City was unable to identify even a single labor-related disruption or work stoppage involving a contractor over the last ten years. Plaintiff at a minimum has alleged sufficient facts to get to discovery, and has offered preliminary evidence supporting a finding that the market participant exception is unlikely to shield the City from NLRA preemption.

## IV. Conclusion

In *Boston Harbor*, the Supreme Court's use of the term "purely proprietary interests" means exactly that; the market participant exception does not apply where any regulatory purpose is found in an otherwise proprietary action. Here, Plaintiff has alleged and offered preliminary evidence of the regulatory purpose of the City's labor peace requirement.

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Accordingly, this Court should deny the City's motion to dismiss and grant Plaintiff's motion for preliminary injunction.

Dated: August 6, 2025                 SNELL & WILMER L.L.P.

*/s/ Drew L. Eyman*
Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com

Attorneys for plaintiff Northwest Success, Inc.