FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST SUCCESS INC.,** an Oregon domestic nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND,** a municipal corporation,<br><br>Defendant. | 3:25-cv-00970-SI<br><br>**DEFENDANT CITY OF PORTLAND'S SUPPLEMENTAL BRIEFING** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

At the August 1, 2025, hearing on Defendant City of Portland's Motion to Dismiss (ECF[6]) and Plaintiff Northwest Success Inc.'s Motion for Preliminary Injunction (ECF[8]), the Court requested supplemental briefing on the meaning of the word "purely," in the phrase "purely proprietary interests," from the US Supreme Court's majority opinion in *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc. (Boston Harbor)*, 507 U.S. 218, 227 (1993) ("*Boston Harbor*"). In *Boston Harbor*, the Supreme Court held that the National Labor Relations Act ("NLRA") does not preempt state or local

Page 1 –     DEFENDANT CITY OF PORTLAND'S SUPPLEMENTAL BRIEFING

government actions taken as a market participant, thus creating the "market participant" exception to NLRA preemption. 507 U.S. at 231–32. The Supreme Court explained, "In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its **purely proprietary interests**, and where analogous private conduct would be permitted, this Court will not infer such a restriction." *Id*. at 227 (emphasis added). Further, the Supreme Court noted, "We have held consistently that the NLRA was intended to supplant state labor regulation, not all legitimate state activity that affects labor." *Id*. However, the Court in *Boston Harbor* did not contemplate how this test would apply to a "mixed motive" scenario where the government had a proprietary interest that also happened to coincide with a political interest. Instead, that analysis has been left to Circuit Courts.

## II. ARGUMENT

The City could not find caselaw where the U.S. Supreme Court, or any Circuit Court, shed additional light on the meaning of the word "purely" as used in its *Boston Harbor* opinion. No U.S. Supreme Court opinion has used that phrase since the Court issued its *Boston Harbor* opinion in 1993. And, within the context of the *Boston Harbor* opinion itself, the "purely proprietary interest" phrase confirms that a when a government is acting *only* as a private corporation would when faced with a choice of whom to contract with, the government is clearly acting as a market participant. The issue in *Boston Harbor* was whether the NLRA preempted enforcement by a state authority, acting as the owner of a construction project, of an otherwise lawful prehire labor agreement negotiated by private parties. *Id*. at 220. There were not facts in the case suggesting that the state had any motives, such as political ones, other than specifically proprietary interests in cleaning up the Boston Harbor. Under those facts, the Court found that the NLRA did not preempt the state requirement because is the state was acting as a proprietor rather than a regulator:

> To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a prehire agreement, a public entity as

Page 2 –   DEFENDANT CITY OF PORTLAND'S SUPPLEMENTAL BRIEFING

> purchaser should be permitted to do the same. Confronted with such a purchaser, those contractors who do not normally enter such agreements are faced with a choice. They may alter their usual mode of operation to secure the business opportunity at hand, or seek business from purchasers whose perceived needs do not include a project labor agreement. In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its purely proprietary interests, and where analogous private conduct would be permitted, this Court will not infer such a restriction. *See, e.g., Maryland v. Louisiana*, 451 U.S., at 746, 101 S.Ct., at 2129 ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law").

*Id* at 231–32. Thus, the Court in *Boston Harbor* did not involve or examine the case of a mixed motive scenario; that issue was left undecided.

Since *Boston Harbor*, the Ninth Circuit and others have faced the "mixed motive" fact pattern and held that a government body may still act as a market participant even if it also has a political motive. A local government may entertain non-economic purposes in its policies and yet still rely on the market participant doctrine. *Airline Service Providers Ass'n v. Los Angeles World Airports,* 873 F.3d at 1084; *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 498 F.3d at 1046 ("That a state or local governmental entity may have policy goals that it seeks to further through its participation in the market does not preclude the doctrine's application, so long as the action in question is the state's own market participation.").

The Ninth Circuit has adopted the *Cardinal Towing* test from the Fifth Circuit, which asks (1) if the challenged governmental action is undertaken in pursuit of the "efficient procurement of needed goods and services," as one might expect of a private business in the same situation; and (2) "[D]oes the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than [to] address a specific proprietary problem?" *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1023-24 (9th Cir. 2010), *quoting Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686, 693 (5th Cir. 1999). *See Engine Mfrs. Ass'n*, 498 F.3d at 1041. If the answer to *either* question is "yes," the governmental entity is acting as a market participant, and the government entity is

afforded a presumption that federal preemption does not apply. *Johnson*, 623 F.3d at 1024. This test allows for a more nuanced examination than the "purely proprietary" language the U.S. Supreme Court used in *Boston Harbor*, and the Court should look to *Cardinal Towing* as the operative test in this matter. No Ninth Circuit or U.S. Supreme Court has overturned the *Cardinal Towing* test.

In another case, the Seventh Circuit directly examined the U.S. Supreme Court's *Boston Harbor* decision and found that the NLRA did not preempt a state law requiring labor agreements, even if the state had political reasons for that requirement. *N. Illinois Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004 (7th Cir. 2005). The issue in *Lavin* was whether the NLRA preempted the state's requirement that renewable-fuel companies who wished to be eligible for a subsidiary grant from the state have a labor agreement establishing wages and benefits, and including a no-strike clause. "As a practical matter such agreements [could] be achieved only by employers that recognize and bargain with labor unions." *Lavin*, 431 F.3d at 1005. Thus, the state's labor agreement requirement appeared to inherently promote labor unions. The Court found that even if Illinois's goal was to assist organized labor, the NLRA did not preempt the labor agreement requirement under the *Boston Harbor* approach:

> If (as seems likely) Illinois has taken the approach in this law because state officials want to assist organized labor as well as the farmers who supply the grain to be made into ethanol and the owners of ethanol plants, that is neither a surprise nor a reason for invalidity. Most legislation is the product of coalitions among interest groups. Boston wanted to clean up its harbor, but there can be little doubt that it also wanted to shower benefits on workers who were the incumbents' political supporters. Many a public project is bigger or more expensive than it need be, in order to enlist the support of multiple interest groups. Federal preemption doctrine evaluates what legislation does, not why legislators voted for it or what political coalition led to its enactment. This statute does not affect people who spurn the state's largesse.

*Id.* at 1007. Thus, the Seventh Circuit expressly considered how *Boston Harbor* (and, ostensibly, the "purely proprietary interests" language) applied to a case involving mixed government

Page 4 – DEFENDANT CITY OF PORTLAND'S SUPPLEMENTAL BRIEFING

motives, and found the case to support the notion that a government could still be a market participant, in spite of other political interests being present. The Ninth Circuit relied on similar reasoning in *Los Angeles World Airports*, citing to *Lavin's* observation that "lurking political motives are an inevitable part of a public body's actions and are not 'a reason for invalidity.'" 873 F.3d at 1084 (quoting *Lavin*, 431 F.3d at 1007)."

Additionally, in a previous case, this Court has also cited the *Cardinal Towing* test and found that a government is acting as a market participant if it is motivated *in part* by financial interest. *Int'l Longshore and Warehouse Union ("ILWU") v. Port of Portland et. al.,* No. 3:12–CV–01494–SI, 2013 WL 1412882, at *7 (D Or Apr. 8, 2013) (emphasis added), *citing Am. Trucking Ass'ns v. City of Los Angeles*, 660 F.3d 384, 401 (9th Cir.2011); *Boston Harbor*, 507 U.S. at 231–32. In *ILWU*, the Port of Portland established two programs to financially compensate its tenant, ICTSI Oregon, Inc., whose operations had been halted by a labor dispute between ICTSI and its union, the ILWU. Though the programs could have an influence on the ongoing labor dispute, the Court found that Port of Portland was acting as a market participant in pursuit of a proprietary interest:

> The fact that the Programs may influence ILWU's labor dispute is not proof that the Programs are regulatory. Defendants have a valid proprietary interest in protecting their tenant from the financial costs of a labor dispute. *Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hospitality Res., LLC,* 390 F.3d 206, 217 (3d Cir.2004) ("[T]he City has an interest in ensuring that labor strife does not damage the development."). It makes no difference if, absent application of the market participant doctrine, the Programs might be subject to NLRA preemption. The NLRA simply "does not preempt actions taken by a state when it is [*sic*] acts as a mere proprietor or market participant." *Dillingham Constr.,* 190 F.3d at 1037.

*ILWU*, 2013 WL 1412882, at *8. Thus, under the *Cardinal Towing* test this Court found that the Port was a market participant despite the potential presence of mixed motives, and that a local government's action in furtherance of its public mission does not defeat application of the market participant doctrine. *ILWU*, 2013 WL 1412882, at *2 n. 3, *citing Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1046 (9th Cir 2007) ("that a state or local governmental

Page 5 –   DEFENDANT CITY OF PORTLAND'S SUPPLEMENTAL BRIEFING

entity may have policy goals that it seeks to further through its participation in the market does not preclude the doctrine's application").

## **CONCLUSION**

In sum, there has been no further elaboration on the meaning of a "purely proprietary interest" as the U.S. Supreme Court mentioned in the *Boston Harbor* case. However, *Boston Harbor* did not turn on a set of facts involving a mixed government motive. Conversely, the Ninth Circuit and others have adopted the *Cardinal Towing* test and used it to evaluate cases where the government may have mixed motives. If a government action has both proprietary and political motives, the government is still acting as a market participant if its action meets one of the prongs of the *Cardinal Towing* test.

The Court should find that the City of Portland acted as a market participant in this case under the *Cardinal Towing* test because the City has a valid and narrowly tailored proprietary interest in keeping janitorial, laundry and security services free from labor disputes to ensure the continued operation of essential City services.

Dated: August 6, 2025.

Respectfully submitted,

*/s/ Daniel Simon*
FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*