FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST SUCCESS INC.,** an Oregon domestic nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND,** a municipal corporation,<br><br>Defendant. | 3:25-cv-00970-SI<br><br>**DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING** |

Defendant City of Portland responds to NW Success, Inc.'s Supplemental Briefing [ECF(31)] as follows:

In response to the Court asking for the parties to brief whether the Supreme Court has ever further defined the "purely proprietary interest" language it used in the *Boston Harbor* case, plaintiff NW Success, Inc. has taken the opportunity to propose that the Court use an entirely new formulation of the *Cardinal Towing* test that would fundamentally change the Court's analysis. Plaintiff bases their new test on the presumption that "the market participant exception does not apply where any regulatory motive is found in an otherwise proprietary action (See

Page 1 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL BRIEFING

ECF(31), at p. 1)." That presumption has no support from the Ninth Circuit and other circuits that have adopted the *Cardinal Towing* test, all of whom have found that regulatory motives may be inherent in government actions and are not singularly dispositive of the market participant analysis.

Plaintiff's Supplemental Briefing both acknowledges that mixed motives are relevant ("Motive can distinguish regulatory action from proprietary action") and argues that mixed motives are irrelevant under *Boston Harbor*. ("The *Boston Harbor* standard leaves no room for a mixed motive in government action."). *Id*. at p. 2, 4. Moreover, plaintiff offers no support that *Boston Harbor* eliminated the need for any consideration of mixed motives in the Ninth Circuit or that any Ninth Circuit court has applied *Boston Harbor* in that manner. Rather, Ninth Circuit courts have acknowledged the presence of inherent mixed motives in any government action, including this own Court in *Int'l Longshore and Warehouse Union ("ILWU") v. Port of Portland et. al.*, No. 3:12–CV–01494–SI, 2013 WL 1412882, at *7 (D Or Apr. 8, 2013) (See Defendant's Supplemental Briefing, ECF(32), at p. 5). Plaintiff further acknowledges that the language used in the second prong of *Cardinal Towing* is whether "the narrow scope of the challenged action defeat[s] an inference that its primary goal was to encourage a general policy rather than to address a specific proprietary problem," but plaintiff argues without precedential or logical support that there is no meaningful difference between the word "primary" and the word "pure." *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1080 (9th Cir. 2017).

In the absence of any precedent, plaintiff also attempts to argue that the Court should simply disregard the second prong of the *Cardinal Towing* test; i.e. decline to consider *any* evidence of the government's proprietary motives while only acknowledging plaintiff's alleged evidence of a regulatory motive. ("[T]hat is not in play here because there is actual evidence that the government action was regulatory; the inference is unnecessary, so that second prong of the

Page 2 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF'S
            SUPPLEMENTAL BRIEFING

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Ninth Circuit inquiry is inapplicable"). *Id*. at p. 1. As the Court noted during oral argument on August 1, that "actual evidence" consists solely of an email briefing from a City staffer who wrote that the labor peace agreement would offer "in-roads" to unions; there is no evidence that any City elected official or policymaker made such comments. The Court should not disregard the declarations and evidence demonstrating a proprietary interest of the City in ensuring efficient and continuous janitorial, laundry and security services based on plaintiff's citing of a singular email as evidence of an alleged regulatory motive.

Plaintiff has cited cases that were not decided using the operative *Cardinal Towing* case as examples where courts found that the government's interest in enacting labor regulations was potentially founded by a policy motive over a proprietary motive, but none of those courts refused outright to consider the government's evidence of a proprietary motive as plaintiff seeks here. In the one case plaintiff cited that a Ninth Circuit court decided using *Cardinal Towing*, the Northern District of California evaluated whether the City and County of San Francisco could institute a "card check" requirement at its airport by which all airport contractors agreed to a process where a union would affirmatively ask the contractor's employees to designate the union as their bargaining representative. Aeroground, a cargo-handling operation, challenged the card check requirement. *Aeroground, Inc. v. City & County of San Francisco*, 170 F.Supp.2d 950, 952 (N.D. Cal 2001). The Northern District found that San Francisco's card check requirement exceeded the bounds of market participation into regulatory territory, but only after conducting an analysis of the motives and evidence both parties set forth to determine if the scope of the card check requirement was narrowly tailored to San Francisco's proprietary interest.

In that case, San Francisco conceded the first prong of the *Cardinal Towing* test and the Court found that "the card check rule operates essentially as a licensing scheme that controls the conditions under which Aeroground and other employers can contract with private third parties," meaning it was not narrowly tailored to San Francisco's proprietary interest in procuring services

Page 3 –    DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF'S
               SUPPLEMENTAL BRIEFING

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

for its airport. *Aeroground*, 170 F.Supp.2d at 957-58. The Court weighed the text of the resolution which stated that "[T]he sole purpose of this Rule is to protect the Airport Commission and its proprietary interest in the efficient operation of the Airport and the resulting revenues from those operations" with the practical scope of the card check, which "applie[d] to all non-exempt employers at the airport and ha[d] the effect of controlling the conduct of these employers in their dealings with third parties." *Id*. at 958. The overbroad scope of the card check, which applied uniformly to all non-exempt airport contractors and not just to cargo-handlers, led the Court to conclude in Aeroground's favor on the second *Cardinal Towing* prong. *Id*. at 959.

Thus, the Court's analysis and conclusion in *Aeroground* were far more nuanced than plaintiff's misleading interpretation that "*any* amount of regulatory purpose, even if paired with a proprietary purpose, takes government action outside of the market participant exception." ECF (31), at p. 6. Plaintiff cites to no case where a court took that shortcut through the *Cardinal Towing* analysis. Rather, *Aeroground* is an example of a Court weighing the government's proprietary and regulatory motives and coming to a conclusion. Moreover, the scope of the government action in *Aeroground* was plainly overbroad since it affected all non-exempt contractors at San Francisco's airport.

In contrast, the City of Portland has limited the labor peace requirement to three specific industries – janitorial, laundry, and security – whose continued operations are essential to maintaining consistent service at Portland properties, thereby limiting the scope of the requirement to reflect proprietary interests. Plaintiff has offered little to rebut that at the pleading stage, raising only a single email from a City staffer and a host of speculative and conclusory assertions about the requirement's effect on labor since its enactment. Plaintiff's attempt to convince the Court to shortcut through the proper *Cardinal Towing* analysis reflects plaintiff's weaker position in that test.

Plaintiff fails to support its argument that *Boston Harbor* foreclosed any consideration of the government's proprietary motives in a case where the government may have both proprietary and regulatory motives in taking an action. The proper analysis under *Cardinal Towing* is for the Court to take both of those motives into consideration and determine which is the primary motive rather than relying on what is a "pure" motive. Based on the submissions and arguments thus far, the Court should undertake that analysis and find in favor of the City on Plaintiff's Motion for Preliminary Injunction and the City's Motion to Dismiss.

Dated: August 8, 2025.

Respectfully submitted,

*/s/ Daniel Simon*
FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page 5 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL BRIEFING

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047