FALLON NIEDRIST DE GUZMAN, OSB #145146
Deputy City Attorney
fallon.niedrist@portlandoregon.gov
DANIEL SIMON, OSB #124544
Senior Deputy City Attorney
dan.simon@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST SUCCESS, INC.,** | **3:25-cv-00970-SI** |
| Plaintiff, | **DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| **CITY OF PORTLAND,** a municipal corporation, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

# TABLE OF CONTENTS

**LR 7-1 CERTIFICATION** ................................................................................................ 1

**MOTION** ........................................................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................................. 1

    I.     INTRODUCTION ................................................................................ 1

    II.    ADDITIONAL FACTS ....................................................................... 2

    III.   LEGAL STANDARD.......................................................................... 4

    IV.   ARGUMENT ....................................................................................... 5

          1.     The NLRA does not Preempt the City's Labor Peace Requirement. ......... 5

               a.     This Court has already determined most of the new facts pleaded by NW Success are not persuasive in determining the City's status as a "market participant"; therefore, the "market participant" exception still applies, and NW Success's First Claim should be dismissed.. 6

               b.     NW Success now alleges its employees are not subject to the jurisdiction of the NLRA; since the NLRA cannot preempt what it does not regulate, NW Success's claim should be dismissed......... 7

          2.     The City's Labor Peace Requirement is not Unconstitutionally Vague... 11

          3.     NW Success Failed to Adequately Plead a Promissory Estoppel Claim.. 15

          4.     NW Success Fails to Adequately Plead a Breach of the Implied Duty of Good Faith and Fair Dealing.................................................................. 19

          5.     Should this Court Dismiss NW Success's First and Second Claims with prejudice, the Third and Fourth Claims Should be Dismissed for Lack of Subject Matter Jurisdiction. ................................................................... 21

**CONCLUSION** ................................................................................................................ 21

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Arken v. City of Portland*,
263 P.3d 975 (Or. 2011) ................................................................ 15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 4

*Brevard Achievement Ctr., Inc.*,
342 NLRB 982 (2004) ................................................................. 8, 9, 11

*Chongris v. Bd. of Appeals of Town of Andover*,
811 F.2d 36 (1st Cir. 1987) ................................................................ 7

*Davenport v. Wash. Educ. Ass'n*,
551 U.S. 177, (2007) ....................................................................... 10

*Golden State Transit Corp. v. Los Angeles*,
475 U.S. 608 (1986) ......................................................................... 8

*Greene v. Dayton*,
81 F. Supp. 3d 747 (D. Minn. 2015) ..................................................... 9

*Greene v. Dayton*,
806 F.3d 1146 (8th Cir. 2015) ........................................................... 10

*Hampton Tree Farms, Inc. v. Jewett*,
892 P.2d 683 (Or. 1995) .................................................................. 19

*Holdner v. Columbia Cnty.*,
858 P.2d 901 (Or. Ct. App. 1993) ................................................. 16, 18

In *Chamber of Com. of the United States of Am. v. City of Seattle*,
890 F.3d 769 (9th Cir. 2018) ............................................................ 10

*Lacey v. Maricopa Cnty.*,
693 F.3d 896 (9th Cir. 2012) ............................................................ 21

*Machinists v. Wisconsin Employment Relations Comm'n*,
427 U.S. 132 (1976) ......................................................................... 9

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)........................................................................ 4

*N. Carolina Farm Bureau Fed'n, Inc. v. United States*,
781 F. Supp. 3d 455 (E.D.N.C. 2025)............................................................ 9

*Natkin & Co. v. H.D. Fowler Co.*,
876 P.2d 319 (Or. Ct. App. 1994) ................................................................ 15

*NLRB v. Nash–Finch Co.*,
404 U.S. 138 (1971)........................................................................................ 9

*Pacific First Bank v. New Morgan Park Corp.*,
876 P.2d 761 (Or. 1994)................................................................................ 19

*Parker v. Levy*,
417 U.S. 733 (1974)...................................................................................... 12

*Safeco Ins. Co. v. Masood*,
330 P.3d 61 (Or. Ct. App. 2014) .................................................................. 19

*Snowden v. Hughes*,
321 U.S. 1 (1944)............................................................................................ 7

*U.S. National Bank v. Boge*,
814 P.2d 1082 (Or. 1991).............................................................................. 19

*United Farm Workers of Am. v. Ariz. Agric. Emp't Relations Bd.*,
669 F.2d 1249 (9th Cir. 1982)...................................................................... 10

*United States v. Lucero*,
989 F.3d 1088 (9th Cir. 2021)...................................................................... 12

*Uptown Heights Assoc. v. Seafirst Corp.*,
891 P.2d 639 (Or. 1995)................................................................................ 19

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489.................................................................................................. 12

*W. Hills Dev. Co. v. Doughman*,
432 P.3d 292 (Or. Ct. App. 2018) ................................................................ 16

*Wiggins v. Barrett & Assoc., Inc.*,
669 P.2d 1132 (Or. 1983)........................................................................ 16, 18

Page iv –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

*Wisconsin Dept. of Industry v. Gould Inc.*,
   475 U.S. 282 (1986) ................................................................................................ 8

Statutes

28 U.S.C. § 1331 ........................................................................................................ 21

28 U.S.C. § 1332 ........................................................................................................ 21

28 U.S.C. § 1337(a) .................................................................................................... 21

28 U.S.C. § 1367(a) .................................................................................................... 21

29 U.S.C. § 151 ............................................................................................................ 5

42 U.S.C. § 1983 .................................................................................................... 2, 21

Oregon Constitution, Art. I, Section 20 ....................................................................... 1

Rules

LR 7-1 ...................................................................................................................... ii, 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 4

Other Authorities

Cox, *Labor Law Preemption Revisited*,
   85 Harv. L. Rev. 1337 (1972) ................................................................................. 9

PCC 3.06.020 ............................................................................................................. 18

Page v –   DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
                  FIRST AMENDED COMPLAINT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

On September 23, 2025, counsel for Defendant City of Portland ("the City") conferred in good faith with counsel for Plaintiff Northwest Success, Inc. ("NW Success") about the subject of this motion. The issue could not be resolved without the assistance of the Court.

## MOTION

The City moves the Court to dismiss with prejudice all claims in NW Success's First Amended Complaint ("FAC") for failure to state a claim for relief. In support of this motion, the City relies upon Fed. R. Civ. P. 12(b)(6), the points and authorities below, the files and record of this case, and such other matters as the Court may properly consider in ruling on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

NW Success filed a lawsuit challenging the legality of the City's Labor Peace Requirement, which provides that the City will not award a contract for janitorial, industrial laundry, or security services unless: (1) the contractor has an agreement with a labor organization that requires the labor organization to refrain from any economic interference with the contractor's performance of the contracted services, or (2) one of the specified exceptions to the labor peace requirement is satisfied. ECF #1. NW Success sought a preliminary injunction on its first two claims, encompassing the following five theories of relief: (1) NLRA Preemption; (2) Impermissible Condition on Oregon Forward Contractors; (3) violation of the Oregon Constitution, Art. I, Section 20; (4) violation of the First Amendment of the U.S. Constitution; and (5) violation of the Fourteenth Amendment of the U.S. Constitution. ECF #8. The City moved to dismiss the same claims. ECF #6.

After a combined hearing on the parties' two motions, this Court granted the City's motion to dismiss with leave for NW Success to amend its complaint. ECF #36. NW Success filed its First Amended Complaint on September 12, 2025, in which it now makes the following claims: (1)

Page 1 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NLRA Preemption; (2) 42 U.S.C. § 1983 – Violation of Due Process Clause of the Fourteenth Amendment; (3) Promissory Estoppel; and (4) Implied Duty of Good Faith and Fair Dealing. ECF #38, pp. 7–17. NW Success's First Amended Complaint should be dismissed in its entirety with prejudice.

## II.   ADDITIONAL FACTS[1]

The City's Labor Peace Requirement, as amended in 2022, requires all contractors for janitorial, industrial laundry, and security services to either provide evidence a labor peace agreement with a labor organization, or meet a stated exception to the requirement. ECF #38, ¶ 12, Ex. 2, p. 1. Two exceptions to the Labor Peace Requirement are: (1) the labor organization rejects labor peace ("Rejection Exception"), or (2) if the contractor makes good faith efforts to obtain labor peace ("Good Faith Exception"). *Id.* at ¶ 12. The City's Labor Peace Requirement does not apply to a single discrete project, but instead applies to three specific industries which with the City contracts: janitorial, industrial laundry, and security services. *Id.* at ¶ 40. The Labor Peace Requirement also contains a notice that if a contractor fails to comply, the contractor "will be subject to liquidated damages." *Id.* at ¶ 51. NW Success alleges that there is only one local union— SEIU—which represents all three subject industries. *Id.* NW Success further alleges that the City was "interested in passing the Labor Peace Requirement in time for SEIU to 'capture' an upcoming 'RFP' for a janitorial contract," as purportedly evidenced by an email from a City employee, on which an SEIU representative was copied, stating, "We want to make sure Labor Peace comes before council in time to capture that contract." *Id.*

NW Success, having previously been determined to have met the Good Faith Exception, currently has janitorial services contract with the City, and has undergone negotiations with SEIU to obtain the "Good Faith Exception" for a new contract with the City. *Id.* at ¶¶ 14–18, 21–26. Ultimately, NW Success did not set an arbitration date as required for the Good Faith Exception

---

[1] The City hereby incorporates its recitation of fact from its Motion to Dismiss, ECF #6 to the extent relevant to this motion to dismiss.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

by the deadline provided by the City. The City informed NW Success its contract would expire, and the City would have to perform an emergency procurement. *Id*. at ¶ 27. NW Success then sent a letter to the Mayor asking for a determination that NW Success met the Good Faith Exception, to which the Mayor did not respond. *Id.* at ¶ 31.

The City informed NW Success at that time that the company would be eligible for the regular procurement, but it would not be eligible for the "emergency, gap-filling procurement." *Id.* at ¶ 33. The City ran an emergency procurement alongside a regular procurement and selected Relay Resources for its emergency janitorial contract, which already had its employees represented by SEIU. *Id.* The City at the same time went through its normal procurement process, which included first seeking qualified contractors through the Oregon Forward Program ("OFP"). *Id.* NW Success alleges that the filing of a declaration in this litigation was the first it had heard about the regular procurement. *Id.* at ¶ 34.

For its First Claim, NW Success alleges additional facts about whether the City is acting within a "private market" for NLRA preemption purposes. According to NW Success, the "City's spending power in government contracting is limited by the Oregon Forward Program," and "private parties who seek to procure janitorial services are not subject to the requirements of the OFP." *Id.* at ¶¶ 41, 43. Further, NW Success alleges that employees who have a "rehabilitative" relationship with their employer, such as "individuals with disabilities performing janitorial work for non-profit entities operating under government programs," are not "statutory employees under the NLRA." *Id.* at ¶¶ 46–47. According to NW Success, such a relationship "exactly describes Plaintiff and other OFCs." *Id.* at ¶ 47.

For its Second Claim, NW Success alleges the new following particulars about why the Labor Peace Requirement is unconstitutionally vague: (1) the Rejection Exception does not specify what constitutes a labor organization's response that "they do not wish to negotiate Labor Peace"; (2) "good faith" is not objectively defined; (3) "arbitration" is not objectively defined, because the

Page 3 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
             FIRST AMENDED COMPLAINT

City's insistence that "arbitration" can mean "participation of less than two parties renders the term vague and subject to arbitrary application"; (4) a lack of timelines for the Good Faith Exception; and (5) the facts of this scenario should have triggered either the Good Faith Exception or the Rejection Exception, and the fact that neither were triggered evidences the vagueness of the policy. *Id.* at ¶¶ 56–59, 61.

NW Success alleges in its Third Claim that the City should be liable for damages under a promissory estoppel theory because the "City's communications to Plaintiff expressly or impliedly promised that Plaintiff would receive a waiver under the Good Faith Exception, for purposes of renewal or extension of the Contract, if Plaintiff acted in accordance with the exception." *Id.* at ¶¶ 67. NW Success relies on the letter the City sent in response to complaints levied by SEIU, where the City provided direction to NW Success for engaging in mediation and arbitration, as well as follow-up communications the City sent asking about the status of those actions. *Id.* at 67–68.

Finally, NW Success alleges in its Fourth Claim that the City violated its implied duty of good faith and fair dealing by "informing Plaintiff that the City expected Plaintiff to participate in the Good Faith Exception process and, when Plaintiff satisfied the Good Faith Exception unilaterally to the best of its ability, the City declined to make that determination, resulting in the expiration of the Contract and the prospect of being ineligible to contract with the City going forward." *Id.* at ¶ 85.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion will be granted if the factual allegations in a complaint, taken as true, do not state a viable claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the Court may consider the complaint's allegations as well as "materials incorporated into the complaint by reference[] and matters of which the court may take judicial notice*." Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

## IV.   ARGUMENT

### 1.   The NLRA does not Preempt the City's Labor Peace Requirement.

NW Success claims that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, preempts the City's Labor Peace Requirement. ECF #38, pp. 7–11. This claim was previously dismissed, with this Court finding that the City met the "market participant" exception to NLRA preemption. ECF #36, pp. 11–22. To bolster its claim upon repleading, NW Success has added the following facts to its FAC: (1) the Labor Peace Requirement does not apply to a discrete project, but instead "broadly regulates three entire industries for any contract entered into with the City"; (2) SEIU is the "only union" that represents workers in all three industries; (3) the City wanted to pass its Labor Peace Requirement before an "RFP" for a janitorial contract went out in order to "capture that contract"; (4) the City must procure services through the Oregon Forward Program ("OFP"), whereas private parties do not; (5) the Labor Peace Requirement imposes liquidated damages; and (6) the NLRA does not apply to workers who are in a "primarily rehabilitative relationship" with an employer, and NW Success is one such employer where its employees are not subject to the NLRA. ECF #38, ¶¶ 40–51.

These new facts do not state a claim for NLRA preemption. First, most of these "new" facts were already considered by this Court and found to be unpersuasive in determining that the City meets the "market participant" exception to NLRA preemption. Thus, the City, even with the "new" facts pleaded by NW Success, is still a "market participant." Second, and more importantly, NW Success's new fact that they only employ rehabilitative employees not subject to the NLRA conclusively determines that NLRA preemption does not apply, regardless of whether the City is a "market participant."[2] Therefore, NW Success has still failed to state a claim on which relief can be granted, and this claim should be dismissed with prejudice.

---

[2] The City herein incorporates the arguments it made in its Motion to Dismiss, Reply in Support of the City's Motion to Dismiss, and Response to NW Success's Motion for Preliminary Injunction, in support of this Motion. ECF #6, 18, and 25.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

     *a. This Court has already determined most of the new facts pleaded by NW Success are not persuasive in determining the City's status as a "market participant"; therefore, the "market participant" exception still applies, and NW Success's First Claim should be dismissed.*

NW Success appears to plead "new" facts in an attempt to knock the City out of the "market participant" exception to NLRA preemption, by making a case that the OFP (from which the City begins its selection of janitorial contractors) is not a private market. ECF #38, ¶¶ 50. However, these "new" facts were considered by this Court and deemed unpersuasive:

- This Court held that even if the City "were only contracting with Oregon Forward contractors, the City would still be acting as a market participant." ECF #36, p. 18.

- This Court already knew and considered that the Labor Peace Requirement does not apply to a discrete project, but instead applies to any janitorial, industrial laundry, and security services contracts: "The LPR applies only to janitorial, industrial laundry, and security industries, which the City deemed 'essential' to keeping City services operational." ECF #36, p. 15.

- Concerning the allegation that the City wanted to pass its Labor Peace Requirement before an "RFP" for a janitorial contract went out to "capture that contract," this statement was made by a single, non-elected individual. ECF #38, ¶ 40. This Court deemed the similar "inroads" comment, "involving the staff of one of the five then-City Commissioners," did not "show that the City had a regulatory goal in enacting the LPR." ECF #36, pp. 20–22. This new comment is no different, and in fact, is even more innocuous, considering the context could simply be that the City wanted to be sure a new contract for services would be protected from economic disruptions.

- Similarly, concerning whether SEIU is the "only union"[3] which represents workers

---

[3] The City feels compelled to address that this alleged "fact" is not accurate and should be exempted from consideration: even a cursory search of the Internet yields that Industrial Workers of the World represents janitorial workers and has a local Portland branch; UFCW 3000 and Unite Here Local 8 are local unions

in all three industries, this Court already considered NW Success's arguments that the LPR "serves the policy goal of aiding unions," and did not find it persuasive. ECF #36, p. 19. Furthermore, even if SEIU is the only union uniquely "benefiting" from the Labor Peace Requirement, that is not a relevant fact in the NLRA preemption analysis, but rather, sounds as a Privileges and Immunities Clause claim (which this Court already dismissed, and NW Success did not replead).

- Finally, NW Success already argued that the Labor Peace Requirement's liquidated damages term was a "civil penalty," and this Court disagreed: The LPR here does not impose any fines, but merely provides for a typical breach of contract remedy. Accordingly, this provision is not a civil penalty." ECF #36, p. 17.

Thus, none of the new facts alleged by NW Success alter the outcome of the prior Opinion and Order: the City is acting as a "market participant," and therefore its Labor Peace Requirement is not preempted by the NLRA. NW Success's First Claim should be dismissed with prejudice.

      *b.*  *NW Success now alleges its employees are not subject to the jurisdiction of the NLRA; since the NLRA cannot preempt what it does not regulate, NW Success's claim should be dismissed.*

NW Success claims in its FAC that the City cannot fall under market participant exception to NLRA preemption because the City is not acting in a private market by virtue of almost always hiring Oregon Forward Contractors. ECF #38, ¶ 47. To explain why Oregon Forward Contractors are not part of a private market, NW Success alleges that its employees are not statutory employees under the NLRA, because NW Success has a "rehabilitative" relationship with its employees, rather than a "typically industrial" relationship. *Id.* at ¶¶ 46–47. In other words, NW Success alleges that the NLRA preempts the City's Labor Peace Requirement because the NLRA *does not*

---

which represent laundry workers; and United Federation LEOS-PBA has an Oregon local which represents security workers. *See Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 37 (1st Cir. 1987) ("We exempt, of course, those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'") (quoting *Snowden v. Hughes*, 321 U.S. 1, 10 (1944)).

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

regulate NW Success's employees. This theory of preemption is not born out by the NLRA preemption doctrines. Further, to allege that NW Success's workforce is not regulated by the NLRA makes whether the City is a "market participant" irrelevant, because neither *Garmon* nor *Machinists* preemption would apply. The claim should be dismissed with prejudice.

Although the NLRA itself contains no express preemption provision, the Supreme Court has held that Congress implicitly mandated two types of preemption as necessary to implement federal labor policy: *Garmon* preemption and *Machinists* preemption. *Garmon* preemption "is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA." *Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 613 (1986) (*Golden State I*). To this end, *Garmon* preemption forbids states from "regulat[ing] activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 286 (1986).

*Garmon* preemption does not apply here, because the NLRA does not "protect, prohibit, or arguably protects or prohibits" union activity for rehabilitative employees; rather, the NLRB has determined conclusively that it does not have jurisdiction over rehabilitative employees. *Brevard Achievement Ctr., Inc.*, 342 NLRB 982, 983 (2004) ("For nearly half a century, the Board has declined to assert jurisdiction over employment relationships, such as sheltered workshops or rehabilitative vocational programs, which are primarily rehabilitative in nature."). As the NLRB explained in *Brevard*, Congress's intent was for the NLRA to not apply to such a relationship:

> [T]he Board has held that if disabled individuals are in a "primarily rehabilitative" relationship with their putative employer, they are not statutory employees. That approach is consistent with the overall purpose and aim of the Act. In Section 1 of the Act, Congress found that the strikes, industrial strife and unrest that preceded the Act were caused by the "inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract and employers who are organized in the corporate or other forms of ownership …." To remove the burden on interstate commerce caused by this industrial unrest, Congress extended and protected the right of employees, if they so choose, to organize

Page 8 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

and bargain collectively with their employer," encouraging the "friendly adjustment of industrial disputes arising out of differences as to wages, hours or other conditions. . . ." [T]he Act thus contemplates a primarily economic relationship between employer and employee, and provides a mechanism for resolving economic disputes that arise in that relationship. Thus, if the relationship is not primarily an economic one, the Act is not intended to apply.

*Id.* at 984–85.

In other words, the NLRA does not *prohibit* union activities with rehabilitative employees; rather, it simply does not apply. Indeed, NW Success even includes such an example in its FAC, alleging that Relay Resources, the Oregon Forward Contractor which the City selected as its new janitorial contractor (and ostensibly, like NW Success, has a "rehabilitative relationship" with its employees by virtue of being an OFC), has its employees represented by SEIU. ECF #38, ¶ 33. Because the NLRA neither protects nor prohibits union activity related to rehabilitative employees, *Garmon* preemption is inapplicable. *Cf. Greene v. Dayton*, 81 F. Supp. 3d 747, 750–51 (D. Minn. 2015), *aff'd*, 806 F.3d 1146 (8th Cir. 2015) (holding that because homecare providers (like rehabilitative workers) are excluded from the NLRA definition of "employee," *Garmon* preemption is not applicable); *N. Carolina Farm Bureau Fed'n, Inc. v. United States*, 781 F. Supp. 3d 455, 481 (E.D.N.C. 2025) (same for agricultural workers).

*Machinists* preemption also does not apply in these circumstances. *Machinists* preemption forbids both the NLRB and states from regulating conduct that Congress intended "be unregulated because left 'to be controlled by the free play of economic forces.'" *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976) (quoting *NLRB v. Nash–Finch Co.*, 404 U.S. 138, 144 (1971)). *Machinists* preemption is based on the premise that "'Congress struck a balance of protection, prohibition, and laissez-faire in respect to union organization, collective bargaining, and labor disputes.'" *Id.* at 140, n. 4 (quoting Cox, *Labor Law Preemption Revisited*, 85 Harv. L. Rev. 1337, 1352 (1972)).

Page 9 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The Ninth Circuit has already determined that *Machinists* preemption does not apply in a nearly identical scenario. In *Chamber of Com. of the United States of Am. v. City of Seattle*, 890 F.3d 769 (9th Cir. 2018), the Ninth Circuit considered whether the NLRA preempted a Seattle ordinance which authorized collective bargaining between "driver coordinators"—like Uber and Lyft—and independent contractors who work as for-hire drivers. *Id.* at 775. The plaintiff challenged the ordinance under, *inter alia*, a *Machinists* preemption theory, arguing that because independent contractors were excluded from the NLRA statutory definition of "employee," Congress intended that economic activity to remain unregulated and left to the forces of the free market. *Id.* at 791. The Ninth Circuit disagreed, explaining:

> [T]he fact that a group of workers is excluded from the definition of "employee" in § 152(3), without more, does not compel a finding of *Machinists* preemption. As the Chamber acknowledges, § 152(2)–(3) excludes agricultural laborers, domestic workers, and public employees, all of which have been subject to state regulation. *E.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 181, (2007) ("The National Labor Relations Act leaves States free to regulate their labor relationships with their public employees."); *Greene v. Dayton*, 806 F.3d 1146, 1149 (8th Cir. 2015) ("Although Congress exempted domestic service workers from the NLRA, Congress did not demonstrate an intent to shield these workers from all regulation."). Indeed, we concluded with respect to the exclusion of agricultural laborers from § 152(3):

> "[W]here, as here, Congress has chosen not to create a national labor policy in a particular field, the states remain free to legislate as they see fit, and may apply their own views of proper public policy to the collective bargaining process insofar as it is subject to their jurisdiction. We find nothing in the National Labor Relations Act to suggest that Congress intended to preempt such state action by legislating for the entire field. Indeed, we draw precisely the opposite inference from Congress's exclusion of agricultural employees from the Act." *United Farm Workers of Am. v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982). We find no reason to treat independent contractors differently than these other excluded categories of workers.

*Id.* at 793.

Page 10 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The same rationale applies here. The NLRB has excluded "rehabilitative" workers from the statutory definition of "employee" for decades. *Brevard*, 342 NLRB at 983. Rather than drawing the conclusion from that exclusion that Congress meant for rehabilitative workers to be left unregulated at all (either by the NLRA or any other federal, state, or local legislation), instead, the appropriate inference to draw is that states (and cities) remain free to legislate in that area. *Machinists* preemption is inapplicable.

For the foregoing reasons, NW Success's First Claim should be dismissed with prejudice.

**2.    The City's Labor Peace Requirement is not Unconstitutionally Vague.**

NW Success again alleges that the Labor Peace Requirement is unconstitutionally vague, adding the following facts in its FAC: (1) "good faith" is not objectively defined; (2) "arbitration" is not objectively defined, because the City's insistence that "arbitration" can mean "participation of less than two parties renders the term vague and subject to arbitrary application"; (3) a lack of timelines for the Good Faith Exception; (4) the Rejection Exception does not specify what constitutes a labor organization's response that "they do not wish to negotiate Labor Peace"; and (5) the facts of this scenario should have triggered either the Good Faith Exception or the Rejection Exception, and the fact that neither were triggered evidences the vagueness of the policy. *Id.* at ¶¶ 56–59, 61. This Court previously determined that the Good Faith Exception is not unconstitutionally vague (which is inclusive of the definition of "arbitration" found therein, and its lack of specified timelines). ECF #36, p. 39. However, NW Success tries to get a second bite at this argument by now asserting that the City's interpretation and application of the word "arbitration" was arbitrary, therefore demonstrating the vagueness of the policy. The City addresses this argument below. The only new issue before this Court is the alleged vagueness of the Rejection Exception and its interplay with the Good Faith Exception. For the reasons set forth below, the Rejection Exception is not unconstitutionally vague.

Page 11 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

The City hereby incorporates its recitation of the legal standards for unconstitutional vagueness from its prior Motion to Dismiss. ECF #6, pp. 26. In summary, a challenger seeking to invalidate a statute for vagueness carries a heavy burden: A statute is unconstitutionally vague only if it "specifie[s]" "no standard of conduct at all." *United States v. Lucero*, 989 F.3d 1088, 1101 (9th Cir. 2021). To prevail on a challenge on vagueness grounds, "the complainant must prove that the enactment is vague, 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n 7 (1982) (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). As this Court determined in its Order and Opinion, the City's Labor Peace Requirement is subject to a "less strict vagueness test" because the policy is economic in nature. ECF #36, p. 37.

Even though this Court already determined the Good Faith Exception is not unconstitutionally vague, the City addresses the allegations that the City arbitrarily applied a definition of "arbitration" to include a "one-party" arbitration and applied arbitrary deadlines for NW Success to obtain an arbitration date. However, the facts in the FAC simply do not support these allegations. First, the City's communications demonstrate that the expectation was for the *parties* to engage in arbitration. In the City's October 4, 2024 letter, the City stated, "If mediation fails, the City expects *the parties* to engage in interest arbitration within 90 days following the failed mediation." ECF #38-1, Ex. 4, p. 2 (emphasis added). Additionally, in the email where the City notified NW Success that it would be letting NW Success's contract lapse, the City stated, "At this time, given *the parties* have not provided a date for arbitration and assurances that *the parties* will, in fact, go through arbitration, NW Success's contract will expire on June 30 . . . ." *Id.*, Ex. 5, p. 9 (emphasis added). Thus, in no exhibit attached to the FAC does the City ever communicate that the expectation that NW Success arbitrate with itself, but instead, that NW Success successfully set an arbitration date with SEIU, which it did not do. That NW Success

Page 12 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

interpreted the City's actions and policies as requiring such does not render the City's policy unconstitutionally vague.

As for allegedly arbitrary timelines, again, the facts do not bear out that the City acted unfairly or arbitrarily in enforcing the Labor Peace Requirement such as to render the policy unconstitutionally vague. While the Labor Peace Requirement does not have specific timelines for accomplishing an exception, the facts in the FAC demonstrate the City gave NW Success as much time as reasonably possible to meet the Good Faith Exception. In the City's October 4, 2024 letter, the City provided guidance to NW Success that it should engage in mediation no later than 90 days after the date of the letter, and if mediation was unsuccessful, arbitration should occur no later than 90 days after the failed mediation. ECF #38-1, Ex. 4, p. 2. NW Success did not meet that timeline, and yet, the City continued to offer time to NW Success to complete the Good Faith Exception.

The emails NW Success included in its FAC demonstrate that it was well-aware of the need to set an arbitration date: on March 9, 2025, NW Success communicated to the City, "[M]y side is finding an available arbitrator and will set a date. That should happen within the next week or so, I hope." *Id.*, Ex. 5, p, 6. NW Success did not set a date within a week of that email. The City followed up on March 25, 2025, asking for a status update, and NW Success's response revealed they had not even yet contacted an arbitrator: "I will reach out to the arbitrator this week." *Id.*, Ex. 5, p. 5. By April 9, 2025, NW Success was still "awaiting word back from an arbitrator." *Id.*, Ex. 5, p. 4. Thus, by the time the City provided the alleged "week and a half notice" to set an arbitration date, the City had in fact given months of notice, and NW Success simply had not acted upon that notice.

As far as the April 30, 2025 deadline to set an arbitration date, the FAC states the City's rationale for this date: "[T]he City is at crunch time to either receive assurances of NW Success completing the final steps needed for the exception (offering and participating in binding interest arbitration) before their contract expires, or to engage in an emergency procurement to ensure

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

continuity of our Parks janitorial services." *Id.*, Ex. 5, p. 9. Rather than showing the City acted arbitrarily, the facts pleaded in the FAC demonstrate the City gave NW Success as much notice and time as feasible to obtain the Good Faith Exception before determining it would let the contract lapse. Neither the language of the Good Faith Exception itself, nor the acts of the City in interpreting and applying that exception, render the Labor Peace Requirement unconstitutionally vague.

NW Success also cannot demonstrate the Rejection Exception is unconstitutionally vague.[4] The Rejection Exception provides that when "the contractor follows notification procedures set out in Exception 1, and the labor organization(s) respond that they do not wish to negotiate labor peace," then the contractor may be awarded the contract so long as it can provide a written plan for continuation of services in the event of economic disruption. ECF #38-1, Ex. 2, p. 1. The notification procedures in "Exception 1" are as follows:

> The contractor . . . gave written notice to any and all labor organizations that represent employees providing similar services in the states of Oregon or Washington or that represent any group of the contractor's or subcontractor's employees who are or will be involved in providing such services of its desire to jointly develop Labor Peace, and the applicable labor organizations failed to respond within three (3) weeks or the applicable labor organizations represented that they are not seeking to become the exclusive representative of the contractor's employees . . . .

*Id.*

Put together, the Rejection Exception is readily understood to mean that, when a contractor provides notice to local labor organizations about the desire to negotiate labor peace, and the labor organization(s) respond within the three-week timeline that they do not wish to negotiate labor peace, then the Rejection Exception is met. With this understanding in mind, it makes sense why

---

[4] At no point did NW Success ever request that the City determine whether the Rejection Exception was applicable to their circumstance; instead, NW Success focused solely on whether it had met the Good Faith Exception. EFC #38-1, Ex. 5 (letter to the City requesting determination as to Good Faith Exception).

Page 14 – DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

the City did not determine NW Success met the Rejection Exception—NW Success was outside the three-week-from-notification timeline, and therefore, the Rejection Exception was inapplicable to the circumstances. NW Success alleges the Labor Peace Requirement is vague in what is a required showing that a labor organization "do[es] not wish to negotiate Labor Peace," but how much clearer could the exception language be to describe a labor organization turning down the offer to negotiate labor peace? On its face, the exception is meant to capture the scenario where a labor organization simply has no interest in negotiating such an agreement. Definitions or examples would not add clarity to the exception.

For these reasons, NW Success's claim fails to meet the extremely high bar in showing that the City's Labor Peace Requirement that "no standard of conduct is specified at all." Therefore, this Court should dismiss the claim with prejudice.

### 3. NW Success Failed to Adequately Plead a Promissory Estoppel Claim.

NW Success alleges that the City should be held liable for damages on a promissory estoppel theory because NW Success relied on the City's communications about the Good Faith Exception to its detriment. Promissory estoppel claims generally require the following elements: "(1) a promise; (2) which the promisor could reasonably foresee would induce conduct of the kind that occurred; (3) actual reliance on the promise; and (4) a substantial change in position by the party seeking to enforce the promise." *Natkin & Co. v. H.D. Fowler Co.*, 876 P.2d 319, 321 (Or. Ct. App. 1994).

However, promissory estoppel against a governmental entity "can be applied only in limited circumstances." *Arken v. City of Portland*, 263 P.3d 975, 992–93 (Or. 2011). Those limited circumstances are met if:

> (a) the municipality clothes the agent with apparent authority, (b) the promise is one which the municipality could lawfully make and perform, (c) there is no statute, charter, ordinance, administrative rule, or public record that puts the agent's act beyond his authority, (d) the person asserting the authority has no reason to know of the

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

want of actual authority, and (e) the municipality has accepted and retained the benefit received by the municipality in return for the promise.

*Id.* (quoting *Wiggins v. Barrett & Assoc., Inc.*, 669 P.2d 1132, 1136 (Or. 1983)).

In determining whether a plaintiff has "no reason to know" of the want of actual authority, the Oregon Court of Appeals has held, "Persons dealing with agents of a municipality must, at their peril, ascertain the scope of the agent's authority." *Holdner v. Columbia Cnty.*, 858 P.2d 901, 903–04 (Or. Ct. App. 1993). To that end, express provisions of a public entity's local code or ordinances which demonstrate a lack of authority negate a plaintiff's claim that they had "no reason to know" about a want of actual authority. *See, e.g.*, *W. Hills Dev. Co. v. Doughman*, 432 P.3d 292, 296–97 (Or. Ct. App. 2018) (holding that when express provisions of a county code stated who had authority to make a decision, the plaintiff "could not simply assume that 'county staff' had authority to enter into an oral agreement that would bind the county despite those provisions").

Here, the facts which NW Success alleges to support its promissory estoppel claim are not sufficient to state a claim for relief. Regarding the alleged "promise" made by the City, NW Success asserts that the first communication on which it relied was the City's October 4, 2024 letter, sent from the City Attorney's Office, where "the City communicated to Plaintiff and the Union that it 'expect[ed]' the parties to comply with the Good Faith Exception by going to mediation within the next 90 days and, if mediation fails, arbitration within 90 days after that." ECF #38, ¶ 19. However, when reading the letter in its entirety, it is obvious the City is not making any "promise" about awarding NW Success the Good Faith Exception. Instead, the letter was sent in response to complaints by SEIU that NW Success had violated the City's Labor Peace Requirement, and the purpose of the letter was to provide "additional guidance on the City's expectations under this policy" to "assist the parties in meeting these requirements." ECF #38, Ex. 4, p. 2. In other words, the letter is not, and cannot, be construed as a "promise" to NW Success that it would receive a contract, but rather, the letter provided guidance how to comply with the Labor Peace Requirement, should NW Success choose to do so.

Page 16 –  DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NW Success also alleges that further City communications "reinforced" the alleged "promise" from the October 4, 2024 letter, such as a May 1, 2025 email which stated, "The City is at crunch time to either receive assurances of [Plaintiff] completing the final steps needs for the exception (offering and participating in binding interest arbitration) before their contract expires, or to engage in an emergency procurement to ensure continuity of our Parks janitorial services." ECF #38, ¶ 68. Again, on its face, this is not a statement of "reinforcement" or promise, but instead, quite obviously an ask about whether NW Success actually intended to complete the steps required by the Good Faith Exception. Indeed, the rest of the email reads as follows:

> I let Cliff know yesterday was the last day the City realistically had to wait for the former [arbitration date and assurances] before we needed to start our emergency procurement. At this time, given the parties have not provided a date for an arbitration and assurances that the parties will, in fact, go through arbitration, NW Success's contract will expire on June 30, and the City will be immediately moving forward with an emergency procurement.

ECF #38-1, Ex. 5, p. 9. NW Success's own pleading highlights that the City indeed never made a promise to grant the Good Faith Exception; rather, the City merely was trying to assess, realistically, whether NW Success would meet the Good Faith Exception requirements, or if the City would have to procure services elsewhere on a short timeline. NW Success's promissory estoppel claim thus fails, as the City never made a "promise" to NW Success.

Regardless, even if the City had made such a promise to grant the Good Faith Exception (it did not), NW Success still cannot show that they had "no reason to know" that the individuals make the alleged "representations"—individuals from the City Attorney's Office—had actual authority to enter into a promise to grant the Good Faith Exception, per the *Wiggins* factors. NW Success's own pleadings defeat this claim—they allege that "sole authority to determine whether a contractor meets an exception is vested in the Mayor's Office." ECF #38, ¶ 60. And, to the extent NW Success is alleging that they believed the City Attorney's Office had some sort of contracting authority, a cursory search of the City's Charter and Code would have easily ended that

Page 17 – DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

assumption. Section 8-104 of the City's Charter states, "The City of Portland shall not be bound by any contract not in any way liable thereon, unless the same is made in writing and signed by some person or persons duly authorized." The City's Code provides who is authorized to sign for contracts: the City Administrator, as delegated by the Mayor. PCC 3.06.020 ("In addition to any other assigned responsibilities, the City Administrator, without limitations, may: . . . F. Upon delegation by the Mayor, and consistent with the budget, authorize, negotiate, and execute all contracts, legally binding agreements, and intergovernmental agreements."). Thus, NW Success, failed, "at their peril, [to] ascertain the scope of the agent's authority," and the City cannot be held liable for such a failure. *Holdner*, 858 P.2d at 903–04.

NW Success's claim also fails in two other respects under the *Wiggins* factors. The Charter and Code provisions noted above "put[] the agent's act beyond his authority," because the provisions make clear that the City Attorney's Office could not make a promise to grant the Good Faith Exception. *Wiggins*, 669 P.2d at 1136. And finally, while NW Success alleges that they detrimentally relied on the City's alleged "promise" by paying attorney fees and spending time away from their non-profit mission to attempt to negotiate labor peace, they fail to plead that the *City* received any benefit from NW Success relying on the alleged promise. ECF #38, ¶ 71, *Wiggins*, 669 P.2d at 1136. Indeed, it was to the City's *detriment* to continue to wait on NW Success to meet the elements of the Good Faith Exception: as pleaded by NW Success, the City had to engage in an emergency procurement because NW Success failed to set an arbitration date, and the City could not issue a new contract. ECF #38-1, Ex. 5, p. 9.

For these reasons, NW Success has failed to adequately plead a claim for promissory estoppel, and the claim should be dismissed with prejudice.

/ / /

/ / /

/ / /

Page 18 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT

### 4. NW Success Fails to Adequately Plead a Breach of the Implied Duty of Good Faith and Fair Dealing.

NW Success alleges that the City violated its implied duty of good faith and fair dealing "by informing Plaintiff that the City expected Plaintiff to participate in the Good Faith Exception process and, when Plaintiff satisfied the Good Faith Exception unilaterally to the best of its ability, the City declined to make that determination, resulting in the expiration of the Contract and the prospected of being ineligible to contract with the City going forward." ECF #38, ¶ 85. While it is undisputed that the City and NW Success had a contract with the City for janitorial services, NW Success's claim fails because the duty of good faith and fair dealing does not attach to the actions of the City as pleaded by NW Success.

Every contract includes an implied duty of good faith and fair dealing, which "serves to effectuate the objectively reasonable expectations of the parties." *Hampton Tree Farms, Inc. v. Jewett*, 892 P.2d 683, 693 (Or. 1995). However, that duty cannot "be construed in a way that changes or inserts terms into a contract. Instead, the law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract." *Safeco Ins. Co. v. Masood*, 330 P.3d 61, 65 (Or. Ct. App. 2014), *rev. den.*, 342 P.3d 1024 (Or. 2014) (cleaned up); *U.S. National Bank v. Boge*, 814 P.2d 1082, 1092 (Or. 1991) ("The obligation of good faith does not vary the substantive terms of the bargain . . . , nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract . . . ."). The reasonable contractual expectations of the parties are shown by the express terms of the contract. *Pacific First Bank v. New Morgan Park Corp.*, 876 P.2d 761, 767–68 (Or. 1994). Put another way, a party never violates the duty of good faith and fair dealing by "invoking its express, written contractual right." *Uptown Heights Assoc. v. Seafirst Corp.*, 891 P.2d 639, 643 (Or. 1995).

The parties' contract only contained one term regarding renewal of the contract: the contract had an initial expiration date of June 30, 2024, "with the City's option to extend up to 1

additional 1-year period." ECF #38-1, Ex. 3, p. 1. The City exercised that option, and the contract was set to expire on June 30, 2025. *Id.* at ¶ 18. Contractually, NW Success was not entitled to any further extensions (with the first extension expressly only at the *City's* option), and the City was entitled to let NW Success's contract end on June 30, 2025, regardless of circumstances. Because NW Success was not contractually entitled to any renewal of their contract after June 30, 2025, there is no claim against the City that it failed to act in good faith when it chose to let the contract expire.

NW Success may argue that the City was obligated to make a determination in good faith as to the application of the Good Faith Exception, because the parties' contract incorporates the Labor Peace Requirement as a contractual term in relevant part:

> Contractor shall comply with the City's Labor Peace Agreement policy . . . by providing written documentation of Labor Peace with a labor organization that represents employees providing similar services in the states of Oregon or Washington and that represents or seeks to represent an [sic] group of Contractor's or subcontractor's employees who are or will be involving [sic] in providing such services to carry out this Contract. In lieu of written documentation of Labor Peace, this Contract may be awarded upon the Mayor's or elected delegee's satisfaction that Contractor met one or more of the three exceptions provided in the Labor Peace Agreement Policy.

ECF #38-1, Ex. 3, p. 12. However, this language is inapposite, because it applies to the City determining whether "*this* contract may be awarded," not whether a future contract may be awarded. *Id.* (emphasis added). As pleaded by NW Success, the City *did* make a determination, and thus, the current contract was awarded. *Id.* at ¶ 16. Therefore, the City completed its contractual obligation as the Labor Peace Requirement under the terms of the parties' contract.

No contract term, express or implied, demonstrates that NW Success was entitled to any further extension of their contract past June 30, 2025, and the implied duty of good faith and fair dealing cannot be used to bootstrap such a term into the contract. The claim therefore fails and should be dismissed with prejudice.

Page 20 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS PLAINTIFF'S
              FIRST AMENDED COMPLAINT

**5. Should this Court Dismiss NW Success's First and Second Claims with prejudice, the Third and Fourth Claims Should be Dismissed for Lack of Subject Matter Jurisdiction.**

In the event this Court dismisses NW Success's First and Second Claims with prejudice, but not the Third and/or Fourth Claims, the court should exercise its discretion to dismiss remaining state law claims for only retaining supplemental jurisdiction. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012) ("[D]istrict court retains discretion over whether to exercise supplemental jurisdiction over state law claims even after all federal claims are dismissed.") NW Success has pleaded that this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), because of its federal law (Claim 1—NLRA Preemption) and U.S. Constitution (U.S.C. § 1983—Fourteenth Amendment Violation) claims. ECF #38, ¶¶ 3–4. NW Success also alleges this Court only has supplemental jurisdiction related to its state law claims under 28 U.S.C. § 1367(a). *Id.* at ¶ 5. There is no diversity jurisdiction in this case, as NW Success is an Oregon non-profit corporation, and the City is an Oregon municipal corporation. *Id.* at ¶¶ 1–2; 28 U.S.C. § 1332. Therefore, should NW Success's federal claims be dismissed, the City requests the Court exercise its discretion to also dismiss the state law claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the City's motion to dismiss should be granted.

DATED: October 3, 2025.

Respectfully submitted,

*/s/ Fallon Niedrist de Guzman*
FALLON NIEDRIST DE GUZMAN, OSB No. 145146
Deputy City Attorney
DANIEL SIMON, OSB No. 124544
Senior Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendant City of Portland*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047